# In the United States Court of Appeals for the Fifth Circuit

---

BRIAN KEITH UMPHRESS,

*Plaintiff-Appellant,*

v.

DAVID C. HALL, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE STATE COMMISSION ON JUDICIAL CONDUCT; JANIS HOLT, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE STATE COMMISSION ON JUDICIAL CONDUCT; DAVID M. PATRONELLA, DARRICK L. MCGILL, SUJEETH B. DRAKSHARAM, RONALD BUNCH, VALERIE ERTZ, FREDERICK C. TATE, M. PATRICK MAGUIRE, DAVID SCHENCK, STEVE FISCHER, AND CLIFTON ROBERSON, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE STATE COMMISSION ON JUDICIAL CONDUCT,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Case No. 4:20-cv-00253-P

---

## OPENING BRIEF OF APPELLANT BRIAN KEITH UMPHRESS

---

H. DUSTIN FILLMORE III
CHARLES W. FILLMORE
The Fillmore Law Firm, LLP
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF INTERESTED PERSONS

Counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff | Plaintiff's Counsel |
| --- | --- |
| • Brian Keith Umphress | Jonathan F. Mitchell<br>MITCHELL LAW PLLC<br><br>H. Dustin Fillmore<br>Charles W. Fillmore<br>THE FILLMORE LAW FIRM LLP |

| Defendants | Defendants' Counsel |
| --- | --- |
| • David C. Hall<br>• Janis Holt<br>• David M. Patronella<br>• Darrick L. McGill<br>• Sujeeth B. Draksharam<br>• Ronald Bunch<br>• Valerie Ertz<br>• Frederick C. Tate<br>• M. Patrick Maguire<br>• David Schenck<br>• Steve Fischer<br>• Clifton Roberson | John J. McKetta III<br>GRAVES, DAUGHERTY, HEARON & MOODY<br><br>Douglas S. Lang<br>DORSEY & WHITNEY LLP<br><br>David Schleicher<br>SCHLEICHER LAW FIRM, PLLC<br><br>Roland K. Johnson<br>HARRIS FINLEY & BOGLE, P.C.<br><br>Ross G. Reyes<br>LITTLER MENDELSON, PC |

| Former Defendant | |
| --- | --- |
| • Ruben Reyes | |

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff-Appellant*

i

## STATEMENT REGARDING ORAL ARGUMENT

The plaintiff-appellant respectfully requests oral argument, as the issues presented in this appeal are sufficiently complex and important to warrant argument time.

# TABLE OF CONTENTS

Certificate of interested persons .............................................................i

Statement regarding oral argument .........................................................ii

Table of contents.............................................................................iii

Table of authorities ........................................................................vi

Statement of jurisdiction ..................................................................2

Statement of the issues.....................................................................2

Statement of the case .......................................................................3

    I.    Judge Umphress's lawsuit against the Commissioners........................3

        A.    Judge Umphress seeks a declaratory judgment that nothing in *Obergefell* or the U.S. Constitution requires judges to officiate at same-sex marriage ceremonies..................4

        B.    Judge Umphress seeks a declaratory judgment that the First Amendment protects his right not to officiate at same-sex marriage ceremonies ................5

        C.    Judge Umphress seeks a declaratory judgment that Canon 4A(1), as interpreted by the State Commission On Judicial Conduct, is unconstitutionally vague ...........8

        D.    Judge Umphress seeks a declaratory judgment that the Commissioners are violating the Free Exercise Clause by threatening judges who recuse themselves from officiating at same-sex marriage ceremonies on account of their religious faith ..................8

    II.    The district court dismisses Judge Umphress's claims for lack of subject-matter jurisdiction .............9

Summary of argument.......................................................................10

Standard of review ........................................................................12

Argument ...................................................................................12

    I.    The district court erred in dismissing the case for lack of subject-matter jurisdiction .................12

A. The district court erred in holding that Judge Umphress lacks standing to challenge the Commissioners' interpretation and enforcement of Canon 4A(1) ..................... 15

1. Judge Umphress intends to engage in conduct that is "arguably affected with a constitutional interest" ...................... 16

2. The conduct that Judge Umphress intends to engage in is "arguably proscribed" by Canon 4A(1) ..... 16

3. The threat of future enforcement is substantial ............ 17

a. The district court erred by requiring Judge Umphress to allege a threat of enforcement action directed at him ......................... 18

b. The district court erred by requiring Judge Umphress to self-censor or change his behavior in response to the Commission's discipline of Judge Hensley ............................... 26

c. Judge Umphress has alleged a substantial threat of future enforcement that supports both a facial and as-applied challenge to the Commission's enforcement of Canon 4A(1) ....... 29

B. The district court erred in holding that Judge Umphress's claims are unripe ................................. 33

II. The district court erred in concluding that *Pullman* abstention was warranted ....................................................... 34

A. *Pullman* abstention is heavily disfavored when First Amendment rights are at stake ................................ 37

B. *Pullman* abstention requires courts to weigh the importance of the asserted federal constitutional rights against the costs of delayed resolution ..................................... 45

III. The district court erred by dismissing the case "with prejudice" rather than entering a jurisdictional dismissal ................. 48

Conclusion ...................................................................... 51

Certificate of service ......................................................................... 52

Certificate of compliance .................................................................. 53

Certificate of electronic compliance .................................................. 54

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967) ............................................................ 33

*Alfaro v. Commissioner of Internal Revenue*,
    349 F.3d 225 (5th Cir. 2003) ............................................. 26

*Arizonans for Official English v. Arizona*,
    520 U.S. 43 (1997) .............................................................. 48

*Baggett v. Bullitt*,
    377 U.S. 360 (1964) ..................................................... passim

*Boudloche v. Conoco Oil Corp.*,
    615 F.2d 687 (5th Cir. 1980) ........................................ 48–49

*Center for Individual Freedom v. Carmouche*,
    449 F.3d 655 (5th Cir. 2006) ............................................. 28

*Chapman v. First Index, Inc.*,
    796 F.3d 783 (7th Cir. 2015) ............................................. 50

*Chevron U.S.A., Inc. v. Traillour Oil Co.*,
    987 F.2d 1138 (5th Cir. 1993) ........................................... 32

*Citizens United v. Federal Election Comm'n*,
    558 U.S. 310 (2010) ........................................................... 20

*City of Houston v. Hill*,
    482 U.S. 451 (1987) ............................................... 38, 40, 42

*Cohen v. Virginia*,
    19 U.S. 264 (1821) .............................................................. 47

*Courthouse News Service v. Planet*,
    750 F.3d 776 (9th Cir. 2014) ............................................. 47

*Doe v. Bolton*,
    410 U.S. 179 (1973) ........................................................... 32

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965) ................................................. 37, 38, 40

*Duncan v. Poythress*,
  657 F.2d 691 (5th Cir. 1981) ..................................................35, 39, 46

*Frederiksen v. City of Lockport*,
  384 F.3d 437 (7th Cir. 2004) ................................................................ 49

*High Ol' Times, Inc. v. Busbee*,
  621 F.2d 135 (5th Cir. 1980) ............................................................... 41

*Hill v. City of El Paso*,
  437 F.2d 352 (5th Cir. 1971) ........................................................ 35, 39

*Hill v. Colorado*,
  530 U.S. 703 (2000) ............................................................................. 8

*Hobbs v. Thompson*,
  448 F.2d 456 (5th Cir. 1971) ........................................................ 39, 41

*In re Complaint of Judicial Misconduct (Paine)*,
  664 F.3d 332 (U.S. Judicial Conference 2011) ................................. 6, 7

*Kirkland v. Wallace*,
  403 F.2d 413 (5th Cir. 1968) ............................................................... 40

*Konigsberg v. State Bar of California*,
  366 U.S. 36 (1961) .............................................................................. 43

*Lake Carriers' Ass'n v. MacMullan*,
  406 U.S. 498 (1972) ............................................................................ 45

*Louisiana Debating & Literary Ass'n v. City of New Orleans*,
  42 F.3d 1483 (5th Cir. 1995) .................................................... 40, 41, 47

*Masterpiece Cakeshop v. Colorado Civil Rights Commission*,
  138 S. Ct. 1719 (2017) ........................................................................ 16

*Moreno v. Henckel*,
  431 F.2d 1299 (5th Cir. 1970) .................................................35, 39, 44

*Nat'l Rifle Ass'n of Am. v. Magaw*,
  132 F.3d 272 (6th Cir. 1997) ............................................................... 31

*Nationwide Mutual Ins. Co. v. Unauthorized Practice of Law Committee*,
  283 F.3d 650 (5th Cir. 2002) ......................................................... 42, 43

*Nissan Motor Corp. in U.S.A. v. Harding*,
739 F.2d 1005 (5th Cir. 1984) ............................................ 39

*Obergefell v. Hodges*,
576 U.S. 644 (2015) ...................................................... 4, 16

*Procunier v. Martinez*,
416 U.S. 396 (1974) .......................................................... 37

*Railroad Commission of Texas v. Pullman Co.*,
312 U.S. 496 (1941) ................................................... 2, 9, 34

*Republican Party of Minnesota v. White*,
536 U.S. 765 (2002) ......................................................... 16

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (2020) ......................................................... 16

*Speech First, Inc. v. Fenves*,
979 F.3d 319 (5th Cir. 2020) ......................................passim

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) ...................................................... 34, 50

*Steffel v. Thompson*,
415 U.S. 452 (1974) .......................................................... 32

*Stenberg v. Carhart*,
530 U.S. 914 (2000) .................................... 15, 24, 25, 31

*Suhre v. Haywood County*,
131 F.3d 1083 (4th Cir. 1997) ......................................... 27

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .................................................passim

*Telescope Media Group v. Lucero*,
936 F.3d 740 (8th Cir. 2019) ......................................25, 31

*United Fence & Guard Rail Corp. v. Cuomo*,
878 F.2d 588 (2d Cir. 1989) ............................................ 47

*Virginia v. American Booksellers Ass'n, Inc.*,
484 U.S. 383 (1988) ...............................................27, 28, 32

*Whole Woman's Health v. Hellerstedt,*
  136 S. Ct. 2292 (2016) ................................................................20

*Wightman v. Texas Supreme Court,*
  84 F.3d 188 (5th Cir. 1996) .........................................................40

*Williams v. Seidenbach,*
  958 F.3d 341 (5th Cir. 2020) .......................................................50

*Word of Faith World Outreach Center Church, Inc. v. Morales,*
  986 F.2d 962 (5th Cir. 1993) .......................................................46

*Younger v. Harris,*
  401 U.S. 37 (1971) ........................................................................31

*Zwickler v. Koota,*
  389 U.S. 241 (1967) ...............................................................38, 45

**Statutes**

28 U.S.C. § 1291 ...............................................................................2

28 U.S.C. § 1331 ...............................................................................2

Tex. Gov't Code § 22.001(a) ........................................................36

Tex. Gov't Code § 22.007(a) ........................................................36

**Rules**

Fed. R. Civ. P. 54(c) .......................................................................20

Tex. R. App. P. 58.1 .......................................................................36

**Other Authorities**

Richard H. Fallon, *As-Applied and Facial Challenges and Third-Party
  Standing*, 113 Harv. L. Rev. 1321 (2000) ...................................20

Charles Alan Wright, et al., *Federal Practice and Procedure* (4th ed.) .......................49

The State Commission on Judicial Conduct is threatening judges in Texas with discipline if they refuse to officiate at same-sex marriage ceremonies, even when a judge is unable to participate in a same-sex wedding on account of his religious faith. On November 12, 2019, the State Commission on Judicial Conduct issued a "public warning" to Judge Dianne Hensley, a justice of the peace in McLennan County, Texas, because she declines to officiate at same-sex marriage ceremonies on account of her Christian faith and politely refers same-sex couples to nearby wedding officiants who are willing to perform such marriages. The Commission's actions against Judge Hensley threaten the religious freedom and free-speech rights of every judge in Texas, who must now decide whether to give in to the Commission's bullying or risk investigation and punishment for acting in accordance with their faith.

Plaintiff-Appellant Brian Keith Umphress is a county judge in Jack County, Texas. Judge Umphress (like Judge Hensley) is a Christian, and he does not officiate or participate in same-sex marriage ceremonies on account of his religious beliefs. At the same time, Judge Umphress continues to perform wedding ceremonies for opposite-sex couples, which is exposing him to potential disciplinary action from the Commission. After the Commission sanctioned Judge Hensley, Judge Umphress sued the Commissioners and sought declaratory and injunctive relief that would prevent them from taking disciplinary action against him. The district court, however, dismissed Judge Umphress's claims for lack of Article III standing. ROA.493-499. The district court held that Judge Umphress lacked standing because: (1) Judge

Umphress had failed to allege a threat of enforcement action directed at him personally;[1] and (2) Judge Umphress had not altered his conduct in response to the Commissioners' discipline of Judge Hensley.[2] The district court's ruling is mistaken and should be reversed.

## STATEMENT OF JURISDICTION

The district court's subject-matter jurisdiction rests on 28 U.S.C. § 1331 because this case arises under federal law.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the district court entered a final judgment after dismissing the plaintiff's claims for lack of subject-matter jurisdiction. ROA.488. The district court entered its judgment on November 10, 2020, and the plaintiff filed a timely notice of appeal on December 8, 2020. ROA.537.

## STATEMENT OF THE ISSUES

1.  Did the district court court err by dismissing Judge Umphress's claims for lack of Article III standing?

2.  Did the district court err by ruling, in the alternative, that it would have abstained under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 501 (1941), if it had found that Judge Umphress had standing to sue?

3. Did the district court err by dismissing the case "with prejudice" rather than entering a jurisdictional dismissal?

---

1.  ROA.496.
2.  ROA.497.

## STATEMENT OF THE CASE

On November 12, 2019, the State Commission on Judicial Conduct issued a "public warning" to Dianne Hensley, a justice of the peace who recuses herself from officiating at same-sex marriage ceremonies on account of her Christian faith. ROA.89; ROA.113-114. The Commission ruled that Judge Hensley had violated Canon 4A(1) of the Texas Code of Judicial Conduct, which states:

> A judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge.

ROA.114. The premise of the Commission's disciplinary action is that judges who express disapproval of same-sex marriage have violated Canon 4A(1)—and have cast "reasonable doubt" on their capacity to act impartially toward homosexual litigants who appear in their court. The Commission's actions against Judge Hensley and its interpretation of Canon 4A(1) threaten every judge in Texas who refuses to perform same-sex marriages, as well as those who publicly evince disapproval of same-sex marriage in their extra-judicial activities.

## I.  Judge Umphress's Lawsuit Against The Commissioners

On March 18, 2020, Plaintiff Brian Keith Umphress sued the Commissioners in federal district court over their interpretation and enforcement of Canon 4A(1). ROA.13-35. Judge Umphress serves as a county judge in Jack County, Texas, and he (like Judge Hensley) refuses to officiate at same-sex

weddings, even though he continues to perform opposite-sex marriage ceremonies. ROA.90. Judge Umphress is also engaged in other extra-judicial activities that evince disapproval of same-sex marriage. Judge Umphress is member and supporter of Christian Missions Church in Jacksboro, a Bible-believing church that adheres to longstanding Christian teaching that marriage exists only between one man and one woman, and that homosexual conduct of any sort is immoral and contrary to Holy Scripture. ROA.90. Judge Umphress will also seek re-election in 2022, and he intends to campaign for office as an opponent of same-sex marriage and the living-constitution mindset that produced *Obergefell v. Hodges*, 576 U.S. 644 (2015). ROA.91.

Judge Umphress's initial complaint asserted four claims for declaratory and injunctive relief.

### A. Judge Umphress Seeks A Declaratory Judgment That Nothing In *Obergefell* Or The U.S. Constitution Requires Judges To Officiate At Same-Sex Marriage Ceremonies

Judge Umphress's first claim sought a declaratory judgment that nothing in *Obergefell*—and nothing in the U.S. Constitution—requires judges to officiate at same-sex marriage ceremonies if they choose to officiate at opposite-sex weddings. ROA.21-22. Judge Umphress acknowledged that judges must respect and follow *Obergefell*'s interpretation of the Fourteenth Amendment when deciding cases or controversies, as Article III of the Constitution empowers the Supreme Court to decide "cases" and "controversies" and Con-

gress has given the Supreme Court appellate jurisdiction over state-court judgments. ROA.21. But when judges officiate at wedding ceremonies, they are not exercising judicial power, and they have no obligation to subordinate their State's marriage laws to a judicial opinion about what the Constitution means. *Obergefell* no more requires Judge Umphress to perform same-sex weddings than it requires members of the clergy do so. *See* Tex. Family Code § 2.202(a) (authorizing both clergy and judges to conduct marriage ceremonies).

### B. Judge Umphress Seeks A Declaratory Judgment That The First Amendment Protects His Right Not To Officiate At Same-Sex Marriage Ceremonies

Judge Umphress's second claim sought a declaratory judgment that the First Amendment protects his right to refuse to officiate at same-sex marriage ceremonies, even if he chooses to continue performing opposite-sex weddings. ROA.22-24. And Judge Umphress also sought a declaration that judicial "impartiality" canons may not be interpreted or enforced in a manner that violates a judge's First Amendment freedoms in this regard. ROA.22 (citing *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002)).

Judge Umphress acknowledged that the State of Texas may have a compelling interest in ensuring the impartiality of the state judiciary, as well as preserving the judiciary's appearance of impartiality—at least to the extent that "impartiality" refers to a lack of bias for or against a particular party to a court proceeding. ROA.22 (citing *Republican Party of Minnesota v. White*, 536

U.S. 765, 775 (2002)). And Judge Umphress acknowledged that the First Amendment would allow a state to discipline a judge who utters racist epithets or belongs to a racially discriminatory country club,[3] because speech and behavior of that sort may indicate that the judge is hostile to racial minorities and will apply the law differently when minority litigants appear in his courtroom. ROA.23.

But no such inference can be drawn when a judge expresses disapproval of same-sex marriage or homosexual behavior. Disapproval of an individual's sexual *behavior* does not evince bias toward that individual as a *person* when they appear in court. Almost every judge disapproves of at least some forms of sexual behavior. Most judges disapprove of adultery, a substantial number (though probably not a majority) disapprove of pre-marital sex, and nearly every judge disapproves of polygamy, prostitution, pederasty, and pedophilia. A judge who espouses these beliefs—either on religious or non-religious grounds—has not compromised his impartiality toward litigants who engage in those behaviors. And it is absurd to equate a judge's disapproval of an individual's behavior as undermining the judge's impartiality toward litigants who engage in that conduct. Otherwise no judge who publicly opposes murder or rape could be regarded as impartial when an accused murderer or rapist appears in his court.

---

3. *See In re Complaint of Judicial Misconduct (Paine)*, 664 F.3d 332, 335 (U.S. Judicial Conference 2011) (finding that a federal judge engaged in judicial misconduct by remaining a member of a country club that discriminated against blacks).

Judge Umphress also claimed that the Commissioners' interpretation of Canon 4A(1) threatens judges who belong to churches that oppose same-sex marriage or homosexual conduct. ROA.23-24. It has long been established that the canons of judicial ethics prohibit judges from belonging to country clubs that discriminate against blacks. *See In re Complaint of Judicial Misconduct (Paine)*, 664 F.3d 332, 335 (U.S. Judicial Conference 2011) ("'Membership of a judge in an organization that practices invidious discrimination gives rise to perceptions that the judge's impartiality is impaired.'" (quoting Commentary to Canon 2A of the Code of Conduct for United States Judges)). Yet if opposition to same-sex marriage or homosexual behavior is regarded as a display of bias against homosexual litigants, then no judge can belong to a church that opposes same-sex marriage or teaches that homosexual conduct is immoral. ROA.23-24. Judge Umphress therefore sought an additional declaratory judgment that the First Amendment protects his right to join, support, and worship at a church that teaches that marriage can exist only between one man and one woman and that homosexual conduct is contrary to the Bible. ROA.24.

Finally, the Commissioners' interpretation of Canon 4A(1) threatens the First Amendment freedoms of elected judges who intend to campaign for office as opponents of same-sex marriage and the Supreme Court's ruling in *Obergefell*. Judge Umphress intends to announce his opposition to same-sex marriage and *Obergefell* when seeking reelection in 2022, and he sought a de-

claratory judgment that protects his right to do so without the fear of discipline from the Commission on Judicial Conduct. ROA.24.

### C. Judge Umphress Seeks A Declaratory Judgment That Canon 4A(1), As Interpreted By The State Commission On Judicial Conduct, Is Unconstitutionally Vague

Judge Umphress's third claim sought a declaratory judgment that Canon 4A(1), as currently interpreted by the State Commission on Judicial Conduct, is unconstitutionally vague because the Commission's interpretation of the word "impartiality" both "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). ROA.24-25.

### D. Judge Umphress Seeks A Declaratory Judgment That The Commissioners Are Violating The Free Exercise Clause By Threatening Judges Who Recuse Themselves From Officiating At Same-Sex Marriage Ceremonies On Account Of Their Religious Faith

Judge Umphress's fourth claim sought a declaratory judgment that the Commissioners' actions against Judge Hensley—and their threatened actions against other judges who refuse to perform same-sex weddings—violate the Free Exercise Clause as applied to judges who object to same-sex marriage for sincere religious reasons. ROA.27-29.

\* \* \*

On June 1, 2020, Judge Umphress filed a first amended complaint that reiterated the four previous claims that he had asserted, and included an additional claim that *Obergefell* should be overruled. ROA.89-114.

## II. THE DISTRICT COURT DISMISSES JUDGE UMPHRESS'S CLAIMS FOR LACK OF SUBJECT-MATTER JURISDICTION

On August 28, 2020, the Commissioners moved to dismiss for lack of subject-matter jurisdiction. ROA.329-363. The Commissioners also filed a motion to abstain under *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 501 (1941). ROA.305-328. The district court granted the Commissioners' motion to dismiss for lack of subject-matter jurisdiction, and denied their motion to abstain as moot. ROA.506. At the same time, the district court ruled that it would have granted the motion to abstain if it had denied the Commissioners' motion to dismiss for lack of subject-matter jurisdiction. ROA.502-06.

The district court granted the Commissioners' motion to dismiss for two separate and independent reasons. First, the district court held that Judge Umphress had failed to allege Article III injury because "the Commission expressly stated that it has not and will not prosecute him" for the conduct in which he is engaged. ROA.494. The district court also observed that Judge Umphress "does not appear to be chilled in his current actions" because he

has not altered his behavior in response to the Commission's discipline of Judge Hensley. ROA.497.[4]

Second, the district court held that Judge Umphress's claims were unripe. ROA.499-501. The district court's ruling on this issue tracked its reasons for concluding that Judge Umphress lacked Article III standing. It found the claims unripe because: (1) the alleged injuries were "speculative"; (2) Judge Umphress "does not appear to be chilled in his current actions"; and (3) The Commission "repeatedly disclaimed any plans to investigate or discipline him if he chose to act in the manner he deems chilled." ROA.500.

The district court also held, in the alternative, that it would have abstained under *Pullman* even if Judge Umphress had established standing and ripeness. ROA.502-506.

Having ruled that it lacked subject-matter jurisdiction over the action, the district court proceeded to enter a "final judgment" under Rule 58 that purports to dismiss Judge Umphress's claims "with prejudice." ROA.488. Judge Umphress filed a timely notice of appeal. ROA.537-538.

## SUMMARY OF ARGUMENT

The district court was wrong to dismiss Judge Umphress's claims for lack of Article III standing. The district court held that Judge Umphress

---

4. *See also* ROA.497 ("Judge Umphress . . . continues to (1) attend the same church that he attended before he knew of the public warning to Judge Hensley and (2) engage in the same practice that he engaged in before concerning the performance of traditional wedding ceremonies but not same-sex ceremonies.").

lacked standing because: (1) He failed to allege a threat of enforcement action directed at him personally;[5] and (2) He has not altered his conduct in response to the Commissioners' discipline of Judge Hensley.[6] Neither of these reasons defeats Judge Umphress's standing to bring a pre-enforcement lawsuit against the Commissioners, and this Court's recent decision in *Speech First Incorporated v. Fenves*, 979 F.3d 319 (5th Cir. 2020), makes that abundantly clear. The district court was also wrong to assert that the Commissioners have promised not to bring future enforcement actions against Judge Umphress for the speech and conduct that he wishes to engage in. ROA.494; ROA.497; ROA.498 n.10. The Commissioners' statements are carefully crafted to say only that they are not *currently* investigating or disciplining Judge Umphress, and they have made no commitment to protect his rights of free speech or his rights of religious freedom with regard to the same-sex marriage issue.

The district court should have applied the test for pre-enforcement standing from *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159-67 (2014), which this Court applied in *Speech First*. Under that test, Judge Umphress has standing to bring a pre-enforcement lawsuit if: (1) he intends to engage in a course of conduct that is "arguably affected with a constitutional interest"; (2) his intended future conduct is "arguably proscribed" by Canon 4A(1); and (3) the threat of future enforcement is "substantial." *Speech First*, 979

---

5.    ROA.496.
6.    ROA.497.

F.3d at 330. Each of these prongs is easily satisfied. The district court tried to avoid this by distinguishing *Speech First* in a footnote,[7] but none of its efforts to escape the ruling in *Speech First* hold water.

## STANDARD OF REVIEW

Each of the issues in this case presents questions of law subject to de novo review.

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN DISMISSING THE CASE FOR LACK OF SUBJECT-MATTER JURISDICTION

The district court's analysis of standing and ripeness rests on a false premise: It repeatedly asserts that the Commissioners have promised not to take any future enforcement action against Judge Umphress. ROA.494 ("[T]he Commission expressly stated that it has not *and will not* prosecute him for his allegedly chilled behavior" (emphasis added)); ROA.497 ("[T]he Commission asserts . . . that they *will neither investigate nor discipline him* if he acts in the very way that he claims to be chilled against." (emphasis added)); ROA.498 n.10 (referring to "the Commission's multitude of assertions that *it will not discipline him*." (emphasis added)). These statements are untrue; the Commissioners have never said that they *will not bring* enforcement proceedings against Judge Umphress in response to the conduct described in his complaint. Their statements were carefully crafted to say only that they *have*

---

7.    ROA.498 n.6.

*not* taken action against Judge Umphress in the past, and that they *are not* doing so at present.

The Joint Status Report that the district court cites refers only to the Commission's past and present behavior. ROA.174-175; ROA.492-493. It makes no representation that the Commissioners *will not take* future enforcement action against Judge Umphress if he persists in the conduct described in his complaint:

> Defendants assert that Judge Umphress *is not, and has not been*, the subject of any investigation or disciplinary proceeding . . . . [N]either the Commission nor any Texas court *has—to date—* expressed the view that Canon 4A(1) would be violated by a judge's choice of church for worship, nor (without more), a judge's choice to decline to perform same-sex marriages, nor a judge's choice to campaign on a platform that opposes same-sex marriage and *Obergefell*.

ROA.174-175 (emphasis added); *see also* ROA.492-493. The Habersham declaration that the district court cites likewise refers only to the past and present, and it makes no commitment or promise that Judge Umphress will be immune from future disciplinary action:

> No investigation or disciplinary action concerning Judge Brian Keith Umphress *has been threatened or commenced*. If there *had* been any communication by the Commission with Judge Umphress concerning any potential disciplinary matter, I would have known of it.

ROA.63 (emphasis added); *see also* ROA.493.

Finally, the statements from Commission's counsel at the hearing of August 14, 2020, do not foreswear future enforcement proceedings against Judge Umphress. The relevant colloquy was as follows:

> THE COURT: Let me, really quickly, ask you a couple of questions. In the declaration of Jacqueline Habersham . . . she makes the following sworn statement, "No investigation or disciplinary action concerning Judge Brian Keith Umphress has been threatened or commenced." As far as you know is that statement true and accurate?
>
> MR. McKETTA: It's true even as of today, that's correct.
>
> THE COURT: Similar statement was made in the joint status report. . . . "Judge Umphress is not and has not been the subject of any investigation of disciplinary proceeding." I'm assuming that continues to be the case?
>
> MR. McKETTA: It is. Both of those are accurate.
>
> THE COURT: At this time you don't know of any investigation or disciplinary proceeding against the Judge?
>
> MR. McKETTA: Correct. . . .
>
> THE COURT: Nor do you — and as far as you know, do you anticipate one in the future?
>
> MR. McKETTA: No.

CR.569-570. This exchange reaffirms the content of the joint status report and the Habersham declaration, which make no representations concerning the Commission's *future* actions. ROA.63; ROA.174-175. And although counsel said that he does not "anticipate" a future investigation or disciplinary

proceeding against Judge Umphress, that does not in any way reflect a commitment or promise from the Commission that Judge Umphress can safely continue his behavior without exposing himself to future enforcement action.[8]

### A. The District Court Erred In Holding That Judge Umphress Lacks Standing To Challenge The Commissioners' Interpretation And Enforcement Of Canon 4A(1)

Judge Umphress has standing to bring a pre-enforcement lawsuit if: (1) he intends to engage in a course of conduct that is "arguably affected with a constitutional interest"; (2) his intended future conduct is "arguably proscribed" by Canon 4A(1); and (3) the threat of future enforcement is "substantial." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159-67 (2014);

---

8. Of course, Judge Umphress would have standing to challenge the Commission's interpretation of Canon 4A(1) *even if* the Commissioners had told the district court that they will not bring future enforcement proceedings against him. *See Speech First, Inc. v. Fenves*, 979 F.3d 319, 336 (5th Cir. 2020) (allowing student group to bring pre-enforcement challenge to university speech codes despite "declarations by University officials" that "the University lacks any intention to penalize the intended conduct of Speech First's members."); *Stenberg v. Carhart*, 530 U.S. 914, 938-46 (2000) (allowing abortion providers to bring pre-enforcement challenge to Nebraska's partial-birth abortion statute on the ground that it would prohibit the dilation and evacuation (D&E) procedure—despite the fact that the Attorney General of Nebraska had specifically disclaimed an intent to enforce the statute against any doctor who performed D&E abortions). Having enforced Canon 4A(1) against Judge Hensley over her refusal to perform same-sex weddings, the Commissioners cannot turn around and immunize themselves from pre-enforcement lawsuits by promising not to discipline *this* particular judge who has sued them.

*see also Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020). Each of these prongs is satisfied.

### 1. Judge Umphress Intends To Engage In Conduct That Is "Arguably Affected With A Constitutional Interest"

Judge Umphress has alleged that he: (1) Refuses to officiate at same-sex marriage or commitment ceremonies on account of his Christian faith, while continuing to perform weddings for opposite-sex couples; (2) Attends and supports a church that teaches that homosexual conduct of any sort is immoral and contrary to Holy Scripture; and (3) Intends to campaign for reelection in 2022 as an opponent of same-sex marriage and the living-constitution mindset that produced *Obergefell*. ROA.90-91. All of this behavior is "arguably affected" with a constitutional interest. *See Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2017) (refusal to participate in same-sex weddings); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (church attendance); *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) (campaign speech). And neither the district court nor the Commissioners have argued otherwise.

### 2. The Conduct That Judge Umphress Intends To Engage In Is "Arguably Proscribed" By Canon 4A(1)

The Commissioners have already sanctioned Judge Dianne Hensley for recusing herself from same-sex marriage ceremonies on account of her Christian faith. ROA.89; ROA.113-114. The Commission ruled that Judge

Hensley's conduct had violated Canon 4A(1) of the Texas Code of Judicial Conduct, which states:

> A judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge.

ROA.114. The Commission did not explain its reasoning behind that conclusion, and it did not explain how Canon 4A(1) applies to other types of activities that evince disapproval of same-sex marriage or homosexual conduct. But this much is clear: Canon 4A(1), as interpreted by the Commission, prohibits judges from refusing to officiate at same-sex marriage ceremonies if they continue to perform weddings for opposite-sex couples. It is equally clear that this "impartiality" canon will be implicated if a judge expresses disapproval of same-sex marriage or homosexual conduct in any of his extra-judicial activities. That makes it at least *arguable* that Canon 4A(1) prohibits the behavior that Judge Umphress intends to engage in.

### 3. The Threat Of Future Enforcement Is Substantial

The district court dismissed Judge Umphress's claims because it thought there was insufficient threat of future enforcement. ROA.493-499. But the district court's analysis is untenable.

The district court faulted Judge Umphress for failing to allege a credible threat of enforcement actions directed at him personally. ROA.496 ("Judge Umphress's complaint mentions neither a currently nor imminently pending judicial disciplinary proceeding or investigation *against him*." (emphasis added)). The district court also held that Judge Umphress lacked Article III inju-

ry because he had not altered his conduct in response to the Commissioners' discipline of Judge Hensley. ROA.497 ("Judge Umphress . . . does not appear to be chilled in his current actions."). All of this was error. A litigant who brings a pre-enforcement lawsuit is not required to allege or establish a threat of enforcement directed *at him*. *See Speech First*, 979 F.3d at 336 ("[A] plaintiff who mounts a pre-enforcement statutory challenge on First Amendment grounds need not show that the authorities have threatened to prosecute him" (citation and internal quotation marks omitted)). Nor is a litigant required to resort to self-censorship—or yield to the chilling effects of the Commission's actions against Judge Hensley—as a condition of establishing Article III standing in a pre-enforcement lawsuit. A litigant needs only to assert "a fear of prosecution that is not imaginary or wholly speculative." *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (internal quotation marks), regardless of whether he chooses to self-censor in response to that fear or forge ahead and expose himself to potential punishment. The Court should repudiate each of these district-court holdings.

a. **The District Court Erred By Requiring Judge Umphress To Allege A Threat Of Enforcement Action Directed At Him**

The district court insisted that Judge Umphress must allege or show an imminent or threatened disciplinary proceeding directed at him personally. ROA.496 ("Judge Umphress's complaint mentions neither a currently nor

imminently pending judicial disciplinary proceeding or investigation *against him*." (emphasis added)). But a litigant seeking pre-enforcement relief is not required to allege an imminent or threatened enforcement action directed *at him*. That much is clear from *Speech First*, where this Court allowed a student group to bring a pre-enforcement challenge to university speech codes despite "declarations by University officials" that "the University lacks any intention to penalize the intended conduct of Speech First's members." *Speech First*, 979 F.3d at 336; *see also id.* ("[A] plaintiff who mounts a pre-enforcement statutory challenge on First Amendment grounds need not show that the authorities have threatened to prosecute him" (citation and internal quotation marks omitted)).

The district court acknowledged *Speech First* in a footnote, but it tried to distinguish it by claiming that Judge Umphress had brought an "as-applied" challenge to Canon 4A(1), rather than a "facial" challenge of the sort presented in *Speech First*. ROA.498 n.6. That is untrue. Judge Umphress has brought a facial vagueness challenge to Canon 4A(1), and his complaint specifically asks for relief that would enjoin the enforcement of Canon 4A(1) in *any* situation until the Commissioners announce a clarifying interpretation. ROA.103 ("The Court should . . . enjoin the Commissioners from enforcing Canon 4A(1) until they announce a clarifying interpretation that explains when conduct that evinces disapproval of a person's sexual behavior violates the canon's impartiality requirement.").

Judge Umphress's complaint also refuses to characterize his First Amendment claims as "facial" or "as-applied," and the relief he requests on those claims can be granted as part of a facial or as-applied remedy. ROA.100 (requesting an injunction that "bars the defendants from investigating or disciplining judges for conducting their extra-judicial activities in a manner that evinces disapproval of same-sex marriage and homosexual conduct."); ROA.105 (asking the Court to "permanently enjoin the defendants from investigating or disciplining a judge who refuses to officiate at same-sex marriages for reasons rooted in sincere religious belief"). A litigant is not required to pigeonhole his claims as "facial" or "as-applied" in the pleadings, and courts may grant facial relief against the enforcement of an unconstitutional statute or policy even when the complaint explicitly states that is asserting only an "as-applied" challenge. *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016) ("Nothing prevents this Court from awarding facial relief as the appropriate remedy for petitioners' as-applied claims."); *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 333 (2010); Richard H. Fallon, *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1339 (2000) ("[O]nce a case is brought, no general categorical line bars a court from making broader pronouncements of invalidity in properly 'as-applied' cases"); Fed. R. Civ. P. 54(c) ("[A] final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." (emphasis added)). Unless and until the district court rules that Judge Umphress cannot obtain faci-

al relief on his First Amendment claims, it cannot avoid *Speech First* by passing off this case as an "as-applied" lawsuit. Nor can the district court dismiss the *entire case* on the ground that Judge Umphress lacks standing to seek as-applied relief. ROA.498 n.6. Because the district court held only that Judge Umphress lacks standing to pursue as-applied relief,[9] it had no basis for dismissing the vagueness claim—which indisputably asks for *facial* relief against the continued enforcement of Canon 4A(1). ROA.103. And the district court should have preserved the First Amendment claims to the extent Judge Umphress might ask for or obtain a facial remedy.[10]

The district court also claimed that *Speech First* was inapplicable because the university officials in that case had previously enforced the challenged policy in "hundreds of incidents," while Judge Umphress has identified only one instance in which the Commission disciplined a judge for refusing to officiate at same-sex weddings. ROA.498 n.6. This attempt to distinguish *Speech First* is nothing short of baffling. The Commission has surely enforced the "impartiality" requirement from Canon 4A(1) in "hundreds" of incidents, just as the university in *Speech First* had enforced its speech-code policies in "hundreds" of differing situations. And while the enforcement of Canon 4A(1) against Judge Hensley is the only incident in which the Com-

---

9. ROA.498 n.6.
10. This is not to say (or even suggest) that Judge Umphress will ultimately prevail on a facial First Amendment challenge to the enforcement of Canon 4A(1). It is only that he has Article III *standing* to pursue that relief.

mission has enforced the impartiality canon against conduct that resembles Judge Umphress's behavior, the plaintiffs in *Speech First* failed to allege *any* previous incident in which the university took adverse action against the type of speech or conduct that the plaintiffs wished to engage in. *See Speech First*, 979 F.3d at 336 (5th Cir. 2020) ("[B]oth Fenves and a former Dean of Students assert that they know of no instance in which the University speech policies have been enforced against the speech topics described by Speech First."). When determining the number of times the university in *Speech First* enforced the speech-code policies, the district court counted the total number of times those policies had *ever* been enforced, without any regard to whether they had been enforced against speech or conduct that resembled the plaintiffs' intended behavior. But when it comes to the Commission's enforcement of Canon 4A(1), the district court decided to count *only* the number of times the canon had been enforced against the type of conduct that Judge Umphress wishes to engage in. That is an apples-to-oranges comparison, and it lends no support to the district court's efforts to escape the holding of *Speech First*.

Finally, the district court observed that the plaintiffs in *Speech First* were students at a public university—and that universities are "important forums where free speech and debate take place." ROA.499 n.6. But that has nothing to do with the requirements of Article III standing, and it has nothing to do with the standard for bringing a pre-enforcement challenge. The only issues relevant to standing are: (1) whether the plaintiff intends to engage in a course of

conduct that is "arguably affected with a constitutional interest"; (2) whether the plaintiff's intended future conduct is "arguably proscribed" by Canon 4A(1); and (3) whether the threat of future enforcement is "substantial." *See Susan B. Anthony List*, 573 U.S. at 159-67; *Speech First*, 979 F.3d at 330. The application of these factors does not in any way turn on whether the plaintiff is a university student or a judge, and it is not affected by whether the plaintiff's speech occurs in a university or some other forum. The district court is surely right to observe that the First Amendment confers great *substantive* protections on students at a public university, as compared to judges who are subject to impartiality canons and other ethical rules that limit their freedom of speech. ROA.499 n.6. But that goes only to the *merits* of the underlying First Amendment claim; whether a plaintiff has *standing* to bring a pre-enforcement suit depends on whether the threat of future enforcement is "substantial," and that inquiry does not look to the identity of the parties or the substance of their First Amendment claims. The district court therefore erred and violated *Speech First* by insisting that Judge Umphress allege a threat of enforcement action directed at him specifically.

The district court's holding on this issue also contradicts the Supreme Court's pronouncements on pre-enforcement challenges outside the First Amendment context. In *Doe v. Bolton*, 410 U.S. 179 (1973), for example, the Court allowed doctors to bring a pre-enforcement challenge to Georgia's abortion law, "despite the fact that the record does not disclose that any one of them has been prosecuted, *or threatened with prosecution*, for violation of

the State's abortion statutes." *Id*. at 188 (emphasis added). It was enough for the doctors to show that the Georgia abortion statute was "recent and not moribund," and that it was the successor to another Georgia abortion statute under which *some* physicians were prosecuted. They did not need to allege or prove an "imminent or threatened" prosecution directed at them specifically. They needed only to establish a credible threat that the statute would be enforced against physicians generally, and that it was not a defunct or antiquated statute that was no longer being enforced against anyone.

And in *Stenberg v. Carhart*, 530 U.S. 914 (2000), the Court permitted abortion providers to challenge Nebraska's partial-birth abortion statute on the ground that it would prohibit the dilation and evacuation (D&E) procedure—despite the fact that the Attorney General of Nebraska had specifically disclaimed an intent to enforce the statute against any doctor who performed D&E abortions. *See id*. at 938-46. The Court allowed the doctors to raise this pre-enforcement challenge because "some present prosecutors and future Attorneys General *may choose to pursue* physicians who use D & E procedures, the most commonly used method for performing previability second trimester abortions. All those who perform abortion procedures using that method must fear prosecution, conviction, and imprisonment." *Id*. at 945 (emphasis added). The Court found that this mere *possibility* of future prosecution—even though it had been specifically disclaimed by the current Attorney General—not only imposed an Article III injury on abortion provid-

ers, but also violated the Constitution by imposing an "undue burden" on women seeking abortions. *See id.* at 945-46.[11]

Finally, the Eighth Circuit's ruling in *Telescope Media Group v. Lucero*, 936 F.3d 740 (8th Cir. 2019), allowed a Christian videography business (Telescope Media) to bring a pre-enforcement First Amendment challenge to the Minnesota Human Rights Act—even though Telescope Media had not yet entered the wedding-video business, and even though it was not facing any enforcement action (or any impending or threatened enforcement) from the state authorities. *See id.* at 749-50. The Eighth Circuit held that Telescope Media had alleged a "credible threat of enforcement" sufficient to establish standing under *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), because Minnesota had "publicly announced" that its statute would require wedding vendors to provide equal services for same-sex and opposite-sex weddings, and the state had already enforced the Act against one wedding vendor who refused to rent a venue for a same-sex wedding. *See id.* It was enough for Telescope Media to allege that it intended to violate the Minnesota Human Rights Act and that the state authorities have enforced the statute against a similar religious objector. The Court did not require Telescope Media to allege a threatened enforcement action directed at it specifically.

---

11. The district court's opinion did not acknowledge or address *Doe* or *Stenberg*, even though the plaintiff's district-court briefing had argued forcefully that *Doe* and *Stenberg* allow Judge Umphress to bring a pre-enforcement lawsuit without alleging a threat of prosecution directed at him personally. ROA.416-417.

If this Court accepts (or fails to repudiate) the district court's holding that Judge Umphress was required to allege a threatened enforcement action directed *at him*, it will at the very least create a circuit split with *Telescope Media*, and that is reason enough to reject the district court's analysis. *See Alfaro v. Commissioner of Internal Revenue*, 349 F.3d 225, 229 (5th Cir. 2003) ("We are always chary to create a circuit split."). But the far more serious problem is that the district court's holding on this issue is incompatible with this Court's binding pronouncement in *Speech First*, as well the Supreme Court's binding pronouncements in *Doe* and *Stenberg*. Litigants bringing pre-enforcement suits need not show a threat of enforcement directed at them personally, and the district court erred in concluding otherwise.

> **b.** **The District Court Erred By Requiring Judge Umphress To Self-Censor Or Change His Behavior In Response To The Commission's Discipline Of Judge Hensley**

The district court also held that Judge Umphress lacks standing because he has not altered his behavior in response to the Commission's discipline of Judge Hensley. ROA.497 ("Judge Umphress . . . does not appear to be chilled in his current actions." The district court observed that Judge Umphress "continues to (1) attend the same church that he attended before he knew of the public warning to Judge Hensley and (2) engage in the same practice that he engaged in before concerning the performance of traditional wedding ceremonies but not same-sex ceremonies." *Id.* But a litigant is not required to change his activities in response to a potential enforcement action before su-

ing to obtain pre-enforcement relief. *See Doe*, 410 U.S. at 188-89 (allowing abortion doctors to bring pre-enforcement challenge to abortion statute without requiring them to show that the law had caused them to stop performing abortions); *see also Suhre v. Haywood County*, 131 F.3d 1083, 1089 (4th Cir. 1997) ("[C]hanged behavior is not necessary for purposes of standing."). All that Judge Umphress needs to establish Article III injury is an "actual and well-founded *fear*" that the Commission might take action over his refusal to perform same-sex marriages—regardless of whether he changes his behavior in response to that fear. *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988); *see also id.* (the mere "*danger* . . . of self-censorship" (emphasis added) will suffice to confer Article III standing). And a plaintiff needs only to seek judicial relief that will eliminate this fear.

Once again, the ruling from *Speech First* shows how the district court went off track. The students in *Speech First* did not claim that they had changed their behavior or stopped speaking on controversial issues in response to the university's policies; they asserted only that were "afraid" and "feared" an investigation or punishment from the university if they expressed their views on controversial topics:

> Nicole Neily, the president of Speech First, stated in a sworn declaration that . . . Speech First's members at the University "want to be able to have open and robust intellectual debates and discussion about these issues in their dormitories, on campus, online, and in the City of Austin," but they are "afraid to voice their views out of fear that their speech may be considered 'offensive,' 'biased,' 'rude,' 'uncivil,' or 'harassing.'" That is,

> they "fear that they will be investigated or punished by the University for engaging in speech or expression that is protected by the First Amendment."

*Speech First*, 979 F.3d at 336. The Court held that this sufficed to confer standing to bring a pre-enforcement suit, without requiring the students to show that they had self-censored in response to those fears. The *fear* is what inflicts Article III injury—and that fear exists regardless of whether a student chooses to self-censor or chooses to continue speaking and risk the possibility of investigation and punishment.

Judge Umphress likewise has shown that he fears retaliation from the Commission given its disciplinary action against Judge Hensley and the inherent vagueness in the Canon 4A(1)'s "impartiality" requirement. And as long as that fear is "actual and well-founded,"[12] Judge Umphress is not required to self-censor before bringing a pre-enforcement lawsuit. Self-censorship is often *sufficient* to establish injury in fact,[13] but it is certainly not *necessary* to do so, as the holding of *Speech First* demonstrates. A plaintiff needs only to show that his speech has been *chilled* by the possibility of future enforcement proceedings. He does not to show that his speech has been *frozen* by the threatened adverse consequences.

---

12.  *American Booksellers Ass'n*, 484 U.S. at 393.

13.  *See Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006) ("[S]elf-censorship constitutes sufficient injury to confer standing to challenge the constitutionality of the CFDA on its face."). Self-censorship will not, however, confer injury in fact if it arises from a fear that is "'imaginary or wholly speculative.'" *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 302 (1979)).

### c. Judge Umphress Has Alleged A Substantial Threat Of Future Enforcement That Supports Both A Facial And As-Applied Challenge To The Commission's Enforcement Of Canon 4A(1)

The district court should have applied this Court's ruling from *Speech First* to Judge Umphress's claims, rather than attempting to distinguish that case on the dubious grounds that appear in footnote 6 of the court's opinion. ROA.498 n.6. And if the district court had done so, it would have concluded that Judge Umphress has done more than enough to allege a substantial threat of enforcement.

*Speech First* recognizes that the "substantial threat of enforcement" test is applied differently to facial and as-applied challenges. *See Speech First*, 979 F.3d at 334-35. For facial challenges, a credible threat of prosecution is "presumed" when a non-moribund statute "facially restricts expressive activity by the class to which the plaintiff belongs." *Id.* at 355. For as-applied challenges, "there must be some evidence that a rule would be applied to the plaintiff." *Id.* (cleaned up).

Judge Umphress's facial vagueness challenge to Canon 4A(1)—and any facial relief that he might obtain on his First Amendment claims—easily pass muster under this test. Judge Umphress belongs to a "class" whose activities are "facially restricted" by Canon 4A(1): judges in Texas who express disapproval of same-sex marriage or homosexual conduct. That alone is enough to trigger the "presumption" of threatened enforcement action described in *Speech First*, and the Commission's recent disciplinary actions against Judge

Hensley only amplify this threat. The district court tried to defeat this presumption of threatened enforcement by insisting that the Commissioners have forsworn any future discipline of Judge Umphress. ROA.494; ROA.497; ROA.498 n.10. But that is simply untrue. As we have already explained, the Commissioners have *never* said that they will not discipline Judge Umphress in the future; they have said only that have not disciplined him in the past and that they have no *current* plans to discipline him. *See supra* at 12-15. And even if the Commissioners *had* made an ironclad commitment to leave Judge Umphress alone, that would not eliminate a substantial threat of future enforcement. The university in *Speech First* insisted that it would not punish the affected students for their speech, yet the Court brushed aside these apparent commitments and conferred standing anyway. *See Speech First*, 979 F.3d at 336 (5th Cir. 2020) (noting the "declarations by University officials to support that the University lacks any intention to penalize the intended conduct of Speech First's members."); *id*. at 337 ("University officials' disavowals of any future intention to enforce the policies contrary to the First Amendment are compatible with, and simply reinforce, the open-ended language in those policies.").

Judge Umphress also has standing to seek pre-enforcement as-applied relief against the enforcement of Canon 4A(1), because there is "some evidence" that Canon 4A(1) would be applied to him. Judge Umphress has shown that the Commission recently disciplined a justice of the peace who refused to perform same-sex marriages while continuing to perform opposite-

sex marriages. That is all Judge Umphress needs to satisfy the "some evidence" test, and to establish an "actual and well-founded" fear of future investigation. *See Younger v. Harris*, 401 U.S. 37, 42 (1971) ("[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs"); *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 285 (6th Cir. 1997) ("Parties not yet affected by the actual enforcement of the statute are allowed to challenge actions under the First Amendment in order to ensure that an overbroad statute does not act to 'chill' the exercise of free speech and expression, a constitutionally protected right." (citation and some internal quotation marks omitted)). *Doe*, *Stenberg*, and *Telescope Media* make clear that a litigant who brings a pre-enforcement challenge is not required to allege a threat of enforcement directed at him specifically. He needs only to allege that the defendants are enforcing the challenged statute or policy against others who are similarly situated, *see Doe*, 410 U.S. at 188-89; *Telescope Media*, 936 F.3d at 749-50, or that the challenged statute or policy *could* be enforced by future government officials against the conduct that he is engaged in, *see Stenberg*, 530 U.S. at 945-46.

* * *

The Commission's actions against Judge Hensley threaten every judge in Texas who refuses to perform same-sex marriages while continuing to perform opposite-sex marriages—including Judge Umphress, who (like Judge Hensley) refuses to perform same-sex marriages while continuing to perform marriages for opposite-sex couples. The Declaratory Judgment Act and the

rules of Article III have long permitted litigants to seek pre-enforcement declaratory relief in situations of this sort, and they do not require Judge Umphress to wait until the Commission initiates or threatens enforcement action against him specifically. *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (allowing abortion providers to challenge a state abortion statute "despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes."); *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993) ("'The purpose of the Declaratory Judgment Act is to settle 'actual controversies' *before* they ripen into violations of law or breach of some contractual duty.'" (citation omitted)). Instead, Judge Umphress needs only to allege "an actual and well-founded fear" that the Commission might initiate proceedings over his refusal to perform same-sex marriages. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (allowing pre-enforcement suit to proceed when the plaintiffs "alleged an actual and well-founded fear that the law will be enforced against them."). The Commission's discipline of Judge Hensley is more than enough to strike "an actual and well-founded fear" into the heart of Judge Umphress and other judges throughout Texas who decline to participate in same-sex marriages while continuing to officiate at opposite-sex weddings.

**B. The District Court Erred In Holding That Judge Umphress's Claims Are Unripe**

The district court found Judge Umphress's claims unripe for the same reasons that it denied Article III standing. ROA.500 ("Judge Umphress does not appear to be chilled in his current actions and the Commission repeatedly disclaimed any plans to investigate or discipline him if he chose to act in the manner he deems chilled."). Neither of these rationales can support the Court's ripeness holding, for the same reasons that they cannot support its holding on the Article III standing issue. *See supra* at Part I.A.

We agree with the district court on this much: the Article III standing and constitutional ripeness issues largely merge when determining whether a plaintiff may bring a pre-enforcement lawsuit. *Susan B. Anthony List* indicates that the "ripeness" inquiry has little if any additional work to do after the Court has applied the Article III standing test for pre-enforcement challenges. *See Susan B. Anthony List*, 573 U.S. at 167. And application of the two-part ripeness test is straightforward once the Article III standing analysis has been completed.

In determining whether a claim is ripe, a Court must consider: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). A claim is "fit for judicial decision" if it presents a pure question of law. *See Susan B. Anthony List*, 573 U.S. at 167 (finding the "fitness" factor to be "easily satisfied" because "petitioners' challenge to the

Ohio false statement statute presents an issue that is 'purely legal, and will not be clarified by further factual development.'"). Each of Judge Umphress's claims presents pure questions of law, and the district court did not argue otherwise. Judge Umphress will also suffer "hardship" from delayed resolution for the same reason he has standing to seek pre-enforcement relief: The *in terrorem* effects of the Commission's disciplinary actions against Judge Hensley are forcing Judge Umphress to choose between self-censorship and risking future investigation and punishment. *See id.* at 167-68 ("Denying prompt judicial review would impose a substantial hardship on petitioners, forcing them to choose between refraining from core political speech on the one hand, or engaging in that speech and risking costly Commission proceedings and criminal prosecution on the other.").

## II. The District Court Erred In Concluding That Pullman Abstention Was Warranted

After concluding that Judge Umphress lacked Article III standing, the district court went on to say that it "would" have abstained under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 501 (1941), if it had reached a different conclusion on the jurisdictional issue. By providing this Court with a tentative and hypothetical ruling on the *Pullman* issue, the district court furthered judicial economy and reduced the need for an unnecessary remand or future appeal. We believe the district court's actions are consistent with *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), which abolished the practice of "hypothetical jurisdiction" and prohibited

courts from ruling on merits-related issues before jurisdiction is secure, because the district court merely stated how it *would* have ruled on the *Pullman* issue if the jurisdictional issue had gone the other way. This is (in our view) a sound judicial practice that comports with *Steel Co.*

At the same time, the district court was wrong to conclude that *Pullman* abstention would be appropriate. *Pullman* abstention is heavily disfavored when litigants bring First Amendment claims, as well as vagueness claims that allege a chilling effect on First Amendment freedoms. *See, e.g.*, *Moreno v. Henckel*, 431 F.2d 1299, 1309 (5th Cir. 1970) ("[A]bstention serves no legitimate purpose when the state action has a 'chilling effect' on First Amendment rights." (quoting *Dombrowski v. Pfister*, 1965, 380 U.S. 479 (1965)). And courts must weigh the costs of delaying adjudication of a litigant's constitutional claims against the benefits of abstaining. They are not to abstain whenever an issue of state law could be resolved in a manner that obviates the federal constitutional claim. *See Baggett v. Bullitt*, 377 U.S. 360, 375 (1964) ("The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law"); *Hill v. City of El Paso*, 437 F.2d 352, 357 (5th Cir. 1971) ("The question of when the doctrine of abstention ought to be invoked is a matter that involves the exercise of discretion, . . . and must be approached on a case by case rather than any general principle basis" (citing *Baggett*, 377 U.S. 360)); *Duncan v. Poythress*, 657 F.2d 691, 697 (5th Cir. 1981) (holding that *Pullman* abstention "requires a broad

inquiry which should include consideration of the rights at stake and the costs of delay pending state court adjudication.").

In this case, the federal constitutional rights at stake are of utmost importance, and they affect not only Judge Umphress but thousands of other judges and justices of the peace in Texas whose First Amendment rights have been chilled by the Commission's disciplinary actions against Judge Hensley. In addition, the costs of delay are high because the Supreme Court of Texas does not accept certified questions from federal district courts[14] and its appellate jurisdiction is entirely discretionary.[15] So a decision to abstain will not even lead to a binding state-law pronouncement on the meaning of Canon 4A(1) unless the state supreme court *chooses* to take up the issue, and it will take years for Judge Hensley's case (or any declaratory-judgment action filed by Judge Umphress) to wend its way through the state's appellate process. And the end result is likely to be nothing more than a regional appellate-court opinion that has no precedential effect outside the counties in that state appellate district. In the meantime, Judge Umphress—and every judicial officer in the state of Texas—will be forced to endure the *in terrorem* effects of the Commision's actions against Judge Hensley, without any protection of their constitutional rights of free speech and the free exercise of their religious beliefs. Abstention is wholly unwarranted under these circumstances.

---

14. *See* Tex. R. App. P. 58.1.
15. *See* Tex. Gov't Code §§ 22.001(a), 22.007(a).

### A. *Pullman* Abstention Is Heavily Disfavored When First Amendment Rights Are At Stake

The Supreme Court and the Fifth Circuit have held that *Pullman* abstention is heavily disfavored when litigants allege violations of the First Amendment. They have also held that *Pullman* abstention is disfavored when litigants allege that statutory vagueness will chill the exercise of First Amendment freedoms. Each of these propositions has been established in a long and distinguished list of cases.

We begin with the rulings of the Supreme Court. In *Baggett v. Bullitt*, 377 U.S. 360, 378-79 (1964), the Supreme Court recognized that *Pullman* abstention is "quite costly" whenever delay inhibits the exercise of First Amendment freedoms. *Id.* at 378-79 ("[A]bstention operates to require piecemeal adjudication in many courts, thereby delaying ultimate adjudication on the merits for an undue length of time, *a result quite costly where the vagueness of a state statute may inhibit the exercise of First Amendment freedoms*.") (emphasis added); *see also Procunier v. Martinez*, 416 U.S. 396, 404 (1974) ("[W]e are mindful of the high cost of abstention when the federal constitutional challenge concerns facial repugnance to the First Amendment." (citations omitted)). And in *Dombrowski v. Pfister*, 380 U.S. 479 (1965), the Court went further and held that:

> [A]bstention doctrine is inappropriate for cases such as the present one where . . . statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities.

*Id.* at 489-90. Judge Umphress's First Amendment claims fall squarely within this description. Judge Umphress is attacking Canon 4A(1) both on its face and as applied to judges who refuse to perform same-sex weddings, and he has alleged that the Commission is "discouraging" protected First Amendment activities by threatening to discipline judges who express disapproval of homosexual behavior.[16]

Finally, the Supreme Court has recognized that *Pullman* abstention may *itself* create a constitutionally forbidden "chilling effect" on First Amendment freedoms when it relegates a First Amendment claimant to state-court proceedings. In *Zwickler v. Koota*, 389 U.S. 241 (1967), the Court wrote:

> These principles have particular significance when, as in this case, the attack upon the statute on its face is for repugnancy to the First Amendment. In such case to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect.

*Id.* at 252; *see also City of Houston v. Hill*, 482 U.S. 451, 467-68 (1987) (same).

The Fifth Circuit has followed the Supreme Court's lead, holding in a repeated and unbroken line of cases that courts should avoid *Pullman* absten-

---

16. *See* ROA.97 ("Judge Umphress is suffering injury in fact because he must risk disciplinary action if he persists in his refusal to officiate at same-sex marriage ceremonies. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Judge Umphress is also risking disciplinary action by joining and supporting a church that opposes same-sex marriage and homosexual conduct, and he will risk disciplinary action if he announces his opposition to *Obergefell* and same-sex marriage when he seeks reelection in 2022.").

tion in First Amendment cases. *See, e.g.*, *Moreno v. Henckel*, 431 F.2d 1299, 1301 (5th Cir. 1970) ("Here, the plaintiff alleges that . . . he was deprived of his rights to freedom of speech and petition and association . . . . This action is one that is peculiarly appropriate for recognition of a litigant's right to choose a federal forum in which to litigate denial of federal rights."); *id.* at 1309 ("[A]bstention serves no legitimate purpose when the state action has a 'chilling effect' on First Amendment rights." (quoting *Dombrowski v. Pfister*, 1965, 380 U.S. 479 (1965)); *Hill v. City of El Paso*, 437 F.2d 352, 357 (5th Cir. 1971) ("[S]ome significant abridgement or chilling of First Amendment rights has been intimately entwined in prior decisions of this Circuit holding abstention discretion was abused. *See, e.g.*, *Davis v. Francois*, 395 F.2d 730 (5th Cir. 1968), *Hunter v. Allen*, 422 F.2d 1158 (5th Cir. 1970) and *Moreno v. Henckel*, 431 F.2d 1299 (5th Cir. 1970)."); *Hobbs v. Thompson*, 448 F.2d 456, 462 (5th Cir. 1971) ("While patience can sometimes be a jurisprudential virtue, courts have recognized that it must not be a frustrator or nullifier of First Amendment rights."); *Duncan v. Poythress*, 657 F.2d 691, 697 (5th Cir. 1981) ("'[W]hen voting rights, racial equality and First Amendment rights of expression have been at stake the (United States Supreme Court) has been reluctant to abstain.'" (quoting 1A J. Moore Federal Practice P 0.203(1), at 2111-12 (2d ed. 1976)); *Nissan Motor Corp. in U.S.A. v. Harding*, 739 F.2d 1005, 1011 (5th Cir. 1984) (acknowledging that *Pullman* abstention is improper "where lengthy state proceedings will chill first amendment rights"); *Louisiana Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1491

n.10 (5th Cir. 1995) (holding that district court did not abuse its discretion when denying abstention on the ground that "*Pullman* abstention is generally inappropriate where First Amendment or fundamental rights are at issue"); *Wightman v. Texas Supreme Court*, 84 F.3d 188, 190 (5th Cir. 1996) ("When, however, a state bar acts in bad faith or to retaliate against First Amendment protected activity, the courts should not abstain.").

Some of the cases that reject *Pullman* abstention involved facial rather than as-applied First Amendment claims. *See, e.g.*, *Kirkland v. Wallace*, 403 F.2d 413, 415 (5th Cir. 1968) (observing that the Supreme Court's ruling in *Zwickler v. Koota*, 389 U.S. 241 (1967), "emphasized the special duty of federal courts to vindicate federal rights, especially when the challenge is that a statute on its face is repugnant to the first amendment."); *City of Houston v. Hill*, 482 U.S. 451, 467 (1987) ("[W]e have been particularly reluctant to abstain in cases involving facial challenges based on the first amendment."). But Judge Umphress *is* bringing facial claims against Canon 4A(1),[17] and in all events the Supreme Court and the Fifth Circuit have each recognized that *Pullman* abstention is equally disfavored when litigants bring as-applied claims under the First Amendment. *See Dombrowski v. Pfister*, 380 U.S. 479, 489-90 (1965) ("We hold the abstention doctrine is inappropriate for cases such as the present one where . . . statutes are justifiably attacked on their face as abridging free expression, *or as applied for the purpose of discouraging*

---

17.   *See supra* at 19-21.

*protected activities*." (emphasis added)); *Louisiana Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1492 n.12 (5th Cir. 1995) ("Although *Red Bluff* involved a facial challenge to a statute, the court's recognition that abstention may result in a high cost to First Amendment rights is applicable in this case, despite being an as-applied challenge.").

Courts have also held that *Pullman* abstention should be avoided when litigants bring constitutional vagueness challenges, so long as the litigant asserts that the statutory vagueness creates a chilling effect on First Amendment rights. *Baggett* holds that abstention is inappropriate "where the *vagueness* of a state statute may inhibit the exercise of First Amendment freedoms." *Baggett*, 377 U.S. at 379 (emphasis added). And *Hobbs v. Thompson*, 448 F.2d 456, 462 (5th Cir. 1971), explains:

> Courts have long recognized that abstention is particularly inappropriate in an overbreadth or vagueness case grounded upon the First Amendment. *See, e.g.*, Dombrowski v. Pfister, *supra,* 380 U.S. at 492, 85 S. Ct. at 1124 ("abstention is at war with the purposes of the vagueness doctrine"). While, in contrast to the exhaustion principle, abstention merely postpones access to federal courts, the doctrine does contemplate considerable delay.

*Id.* at 462; *see also High Ol' Times, Inc. v. Busbee*, 621 F.2d 135, 140 n.6 (5th Cir. 1980) ("'The delay caused by abstention seems especially inappropriate in "fair notice" vagueness cases . . . [because] [a]bstention . . . would allow the state to continue to enforce a vague statute while its courts tried to work out the statute's meaning with sufficient definiteness.'" (quoting Note, *Fed-*

*eral-Question Abstention: Justice Frankfurter's Doctrine in an Activist Era*, 80 Harv. L. Rev. 604 (1967)).

Of course, there is no *categorical* prohibition on *Pullman* abstention when a litigant brings First Amendment claims or related vagueness challenges. And the defendants are right to observe that it is at least *possible* for *Pullman* abstention to apply when a litigant challenges a statute (or judicial canon) on First Amendment or vagueness grounds. *See* ROA.318-320 (citing *Nationwide Mutual Insurance Co. v. Unauthorized Practice of Law Committee*, 283 F.3d 650 (5th Cir. 2002)). But these situations are the exception and not the rule,[18] and they should be reserved for cases in which the asserted First Amendment claim is exceedingly weak or an afterthought to claims brought primarily under state law or other federal constitutional provisions. Those are the types of cases in which a court can safely abstain without aggravating the chilling effects that may be imposed on First Amendment freedoms.

In *Nationwide*, for example, the plaintiff sought a declaratory judgment that the Texas State Bar Act allowed it to employ salaried staff attorneys to represent its insureds in policy-related cases. *See Nationwide*, 283 F.3d at 651. In the alternative, the plaintiff argued that the Texas State Bar Act—if it indeed prohibits the employment and use of salaried staff attorneys in this manner—violates the due process clause because it bears no rational rela-

---

[18]. *See, e.g.*, *City of Houston v. Hill*, 482 U.S. 451, 467-68 (1987) ("Abstention is, of course, the exception and not the rule, and we have been particularly reluctant to abstain in cases involving facial challenges based on the first amendment." (citation omitted)).

tionship to a legitimate state interest, is unconstitutionally vague, and violates the First Amendment. *See id.*

The Fifth Circuit affirmed the district court's decision to abstain under *Pullman* — and rightly so. *See id.* at 652-55. The "First Amendment" claim was feeble. There is no constitutional right to practice law, *see Konigsberg v. State Bar of California*, 366 U.S. 36 (1961), and if attorney-licensing regimes implicate the First Amendment then every bar-admission and unauthorized-practice rule will become a constitutional question. More importantly, the plaintiff's First Amendment claim was a tangential and peripheral contention, as the plaintiff's principal claim was that the Texas State Bar Act, properly construed, should allow the disputed employment practices as a matter of state law, and the plaintiff had raised other constitutional claims that had nothing to do with the First Amendment. *See Nationwide*, 283 F.3d at 651. In this case, there was no risk of injuring *anyone's* First Amendment freedoms by requiring the plaintiffs to proceed in state court, and *Nationwide* therefore felt no need to cite (let alone discuss) the myriad cases that disfavor *Pullman* abstention when First Amendment claims have been brought.

The First Amendment claims in this case are more substantial—and a decision to abstain under *Pullman* will prolong and aggravate chilling effects on core First Amendment freedoms. Judge Umphress has alleged that the Commission's interpretation of Canon 4A(1) threatens judges with discipline for any speech or conduct that evinces disapproval of homosexual behavior, including speech or conduct that occurs as part of their extra-judicial activi-

ties. *See* ROA.95 ("The Commission's actions against Judge Hensley and its interpretation of Canon 4A(1) threaten Judge Umphress and every judge in Texas with discipline . . . if they conduct their any of their extrajudicial activities in a manner that evinces disapproval of same-sex marriage or homosexual behavior."). And the complaint specifically alleges that the Commission's actions are creating chilling effects on behaviors that lie at the heart of the First Amendment's protections, including church attendance and campaign speech. ROA.95-97 (¶¶ 25-30). Finally, and most importantly, a decision to abstain will perpetuate these chilling effects not only on Judge Umphress, but on *every* judge in Texas who must decide whether to accede to the Commission's threats or risk discipline for speaking and acting in a manner that evinces disapproval of same-sex marriage or homosexual conduct. And this Court has made clear that judges must consider the chilling effects that will be imposed not only on the named plaintiffs, but on all other similarly situated individuals, when considering whether to abstain under *Pullman*:

> [A]bstention serves no legitimate purpose when the state action has a 'chilling effect' on First Amendment rights. *Dombrowski v. Pfister*, 1965, 380 U.S. 479. That case involved protection of the rights of free speech and free association. The court was concerned not only for Dombrowski *but for all others who might be intimidated by the irremediable threat of groundless prosecution of Dombrowski for asserting his First Amendment rights.*

*Moreno v. Henckel*, 431 F.2d 1299, 1309 (5th Cir. 1970) (emphasis added).

It cannot be disputed that a decision to abstain will prolong and perpetuate the chilling effects that the Commission's actions are imposing on core

First Amendment freedoms. That alone requires the Court to deny abstention, in keeping with the long line of authority that rejects *Pullman* abstention in cases involving First Amendment and related vagueness claims.[19] A decision to abstain in this case will "effect the impermissible chilling of the very constitutional right [the plaintiff seeks to protect," *Zwickler*, 389 U.S. at 252, and it should be rejected for that reason alone.

**B.** **Pullman Abstention Requires Courts To Weigh The Importance Of The Asserted Federal Constitutional Rights Against The Costs Of Delayed Resolution**

The Supreme Court and the Fifth Circuit have also held that *Pullman* abstention must be considered on a case-by-case basis, and it should not be granted unless the Court concludes that the benefits of abstention outweigh the costs of delaying resolution of the litigants' constitutional claims. In *Baggett v. Bullitt*, 377 U.S. 360 (1964), the Supreme Court wrote:

> The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers. Ascertainment of whether there exist the "special circumstances," prerequisite to its application must be made on a case-by-case basis.

*Id.* at 375. And in *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 509 (1972), the Court clarified that *Pullman* abstention requires a weighing of

---

19. The district court did not acknowledge *any* of these cases that disfavor *Pullman* abstention in First Amendment and vagueness cases—even though the plaintiff's district-court briefing cited all of this authority and relentlessly hammered this theme. ROA.388-395.

costs and benefits, rather than a mechanical application of the relevant factors:

> Abstention is a "judge-made doctrine . . . , first fashioned in 1941 in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 [that] sanctions . . . escape [from immediate decision] only in narrowly limited 'special circumstances,'" justifying "the delay and expense to which application of the abstention doctrine inevitably gives rise."

*Id.* at 509 (citations omitted)). The Fifth Circuit reiterated this holding in *Duncan v. Poythress*, 657 F.2d 691 (5th Cir. 1981), emphasizing that a decision to abstain under *Pullman* requires more than "an ambiguity in state law and a likelihood of avoiding constitutional adjudication"; it also requires a careful weighing of the importance of the rights at stake and the costs of delaying their resolution:

> [T]he extraordinary decision to stay federal adjudication requires more than an ambiguity in state law and a likelihood of avoiding constitutional adjudication. A district court must carefully assess the totality of circumstances presented by a particular case. This requires a broad inquiry which should include consideration of the rights at stake and the costs of delay pending state court adjudication.

*Id.* at 697; *see also Word of Faith World Outreach Center Church, Inc. v. Morales*, 986 F.2d 962, 967 (5th Cir. 1993) ("*Pullman* abstention is not necessarily proper whenever a state law question must be decided in order to reach the federal question.").

Courts have also emphasized that *Pullman* abstention is an extraordinary remedy that is in considerable tension with the duty of federal courts to re-

solve the cases that fall within their jurisdiction. *See Cohen v. Virginia*, 19 U.S. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given."). For that reason, courts should use *Pullman* abstention sparingly. *See United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 593 (2d Cir. 1989) ("[C]ourts should hesitate to invoke the *Pullman* doctrine. The Supreme Court has admonished lower courts that the doctrines of abstention are 'extraordinary and narrow' exceptions to the unflagging duty of district courts to adjudicate controversies properly within federal jurisdiction." (citations and some internal quotation marks omitted)); *Louisiana Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1491 (5th Cir. 1995) ("[*Pullman*] abstention is the exception, not the rule."); *Courthouse News Service v. Planet*, 750 F.3d 776, 783 (9th Cir. 2014) ("*Pullman* abstention is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy." (citation and internal quotation marks omitted)).

So a *Pullman* analysis requires much more than an acknowledgement of ambiguity in Canon 4A(1), which the state courts might resolve in a manner that obviates the plaintiff's federal constitutional claims. It also requires this Court to consider the importance of the plaintiff's constitutional claims and the costs of delaying resolution of those constitutitonal issues. The Court should therefore deny *Pullman* abstention because the plaintiff is presenting First Amendment and related vagueness claims, which are especially ill-

suited for *Pullman* abstention, and the because the costs of delaying the reso-

lution of those claims will be extensive.[20]

### III. THE DISTRICT COURT ERRED BY DISMISSING THE CASE "WITH PREJUDICE" RATHER THAN ENTERING A JURISDICTIONAL DISMISSAL

If this Court agrees with the district court's analysis of the jurisdictional

and abstention-related issues, it should nevertheless vacate the final judg-

ment that purports to dismiss the case "with prejudice." The district court's

"final judgment" reads as follows:

> This Final Judgment is issued pursuant to Federal Rule of Civil Procedure 58. In accordance with the Order dismissing the case (ECF No. 38):
>
> It is ORDERED, ADJUDGED, and DECREED that this civil action is DISMISSED with PREJUDICE.
>
> The Clerk shall transmit a true copy of this Final Judgment to the parties.

ROA.488. The district court should not have dismissed the case "with prej-

udice" after concluding that it lacked subject-matter jurisdiction. *See Boud-*

---

20. If this Court disagrees with our analysis and finds *Pullman* abstention appropriate, then we respectfully ask that the Court certify the state-law issues to the Supreme Court of Texas, rather than affirming the district court's ruling or remanding for abstention. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 75-76 (1997) (discussing the many advantages of certification over *Pullman* abstention); *id.* at 76 ("Certification procedure, in contrast, allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response.").

*loche v. Conoco Oil Corp.*, 615 F.2d 687, 688-89 (5th Cir. 1980) ("The district court properly concluded that it did not have jurisdiction but it erred in granting summary judgment and dismissing with prejudice. Since the court lacked jurisdiction over the action, it had no power to render a judgment on the merits. *Dassinger v. South Central Bell Telephone Co.*, 505 F.2d 672, 674 (5th Cir. 1974); 10 C. Wright & A. Miller, *Federal Practice & Procedure* § 2713 (1973). On remand, the district court should expunge its initial judgment and enter an order dismissing the case for want of subject matter jurisdiction."). Indeed, a dismissal for lack of subject-matter jurisdiction can *never* be "with prejudice." *See id.*; *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (Easterbrook, J.) ("A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render. 'No jurisdiction' and 'with prejudice' are mutually exclusive." (citation omitted)); 9 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2369 (4th ed.) ("Indeed, the Eighth Circuit properly has held that a district court generally is barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent. This is because dismissal for lack of jurisdiction, as is true of various other threshold matters, is not an adjudication of a claim′s merits and thus dismissing with prejudice would be premature.").

The district court was also wrong to enter "judgment" under Rule 58 after concluding that it lacked subject-matter jurisdiction over the controversy. An entry of "judgment" is an adjudication on the merits, and a court without

subject-matter jurisdiction lacks the authority to do *anything* beyond announcing that fact and dismissing the cause. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (*quoting Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)); *Williams v. Seidenbach*, 958 F.3d 341, 369 (5th Cir. 2020) (Oldham, J., dissenting) (it is "obviously wrong" to enter "a Rule 58 judgment after dismissing the case for lack of subject-matter jurisdiction" because "the lack of jurisdiction means the lack of federal judicial power to do *anything* beyond announce the fact and dismiss."); *Chapman v. First Index, Inc.*, 796 F.3d 783, 786 (7th Cir. 2015) (Easterbrook, J.) ("[A] district court cannot enter judgment in a moot case. All it can do is dismiss for lack of a case or controversy.").

So this Court should vacate the final judgment even if it agrees with the district court's analysis, and it should remand for a jurisdictional dismissal if it decides that Judge Umphress lacks Article III standing.

## CONCLUSION

The final judgment entered by the district court should be vacated, and the case remanded for further proceedings.

Respectfully submitted.

/s/ Jonathan F. Mitchell

H. DUSTIN FILLMORE III
CHARLES W. FILLMORE
The Fillmore Law Firm, LLP
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: February 26, 2021

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I certify that on February 26, 2021, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Fifth Circuit and served through CM/ECF upon:

DOUGLAS S. LANG
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9985 (phone)
lang.doug@dorsey.com

ROSS G. REYES
Littler Mendelson, PC
2001 Ross Avenue, Suite 1500, LB 116
Dallas, Texas
(214) 880-8138 (phone)
rgreyes@littler.com

DAVID SCHLEICHER
Schleicher Law Firm, PLLC
424 Clay Avenue #32688
Waco, Texas 76712
(254) 776-3939 (phone)
(254) 776-4001 (fax)
ecf@resolvelaw.com

ROLAND K. JOHNSON
Harris Finley & Bogle, P.C.
777 Main Street, Suite 1800
Fort Worth, Texas 76102
(817) 870-8765 (phone)
(817) 333-1199 (fax)
rolandjohnson@hfblaw.com

*Counsel for Defendants-Appellees*

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

## with type-volume limitation, typeface requirements, and type-style requirements

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 12,886 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.   This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff-Appellant*

Dated: February 26, 2021

# CERTIFICATE OF ELECTRONIC COMPLIANCE

Counsel also certifies that on February 26, 2021, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through the court's CM/ECF document filing system, https://ecf.ca5.uscourts.gov/

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
*Counsel for Plaintiff-Appellant*