Brian Keith Umphress,
*Plaintiff-Appellant*,

v.

David C. Hall, in his official capacity as chair of the State Commission on Judicial Conduct; Janis Holt, in her official capacity as Secretary of the State Commission on Judicial Conduct; David M. Patronella, Darrick L. McGill, Sujeeth B. Draksharam, Ronald Bunch, Valerie Ertz, Frederick C. Tate, M. Patrick Maguire, David Schenck, Steve Fischer, and Clifton Roberson, in their official capacities as members of the State Commission on Judicial Conduct,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Case No. 4:20-cv-00253-P

# BRIEF OF APPELLEES

Douglas S. Lang
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9985 (phone)
lang.doug@dorsey.com

David Schleicher
Schleicher Law Firm, PLLC
424 Clay Avenue # 32688
Waco, Texas 76712
(254) 776-3939 (phone)
ecf@resolvelaw.com

Roland K. Johnson
Harris Finley & Bogle, PC
777 Main Street, Suite 1800
Fort Worth, Texas 76102
(817) 870-8765 (phone)
rolandjohnson@hfblaw.com

Ross G. Reyes
Littler Mendelson, P.C.
2001 Ross Avenue, Suite 1500
Dallas, Texas
(214) 880-8138 (phone)
rgreyes@littler.com

# CERTIFICATE OF INTERESTED PERSONS

Counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff | Plaintiff's Counsel |
|---|---|
| • Brian Keith Umphress | Jonathan F. Mitchell<br>MITCHELL LAW PLLC<br><br>H. Dustin Fillmore<br>Charles W. Fillmore<br>THE FILLMORE LAW FIRM LLP |
| **Defendants** | **Defendants' Counsel** |
| • David C. Hall<br>• Janis Holt<br>• David M. Patronella<br>• Darrick L. McGill<br>• Sujeeth B. Draksharam<br>• Ronald Bunch<br>• Valerie Ertz<br>• Frederick C. Tate<br>• M. Patrick Maguire<br>• David Schenck<br>• Steve Fischer<br>• Clifton Roberson | Douglas S. Lang<br>DORSEY & WHITNEY LLP<br><br>David Schleicher<br>SCHLEICHER LAW FIRM, PLLC<br><br>Roland K. Johnson<br>HARRIS FINLEY & BOGLE, P.C.<br><br>Ross G. Reyes<br>LITTLER MENDELSON, PC |
| **Former Defendant** | |
| 1. Ruben Reyes | |

/s/ Douglas Steward Lang

Douglas S. Lang
*Counsel for Defendants-Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

In light of the request by Plaintiff-Appellant for oral argument, the Defendants-Appellees respectfully request oral argument

# APPENDIX

1. *Umphress v. Hall*, 2020 U.S. Dist. LEXIS 211164 (N.D. Tex 2020).

2. Canon 4A(1), Texas Code of Judicial Conduct.

3. Public Warning, Honorable Dianne Hensley, November 12, 2019, ROA. 113.

4. Judge Brian Keith Umphress' Affidavit, ROA. 146.

5. Declaration of Jacqueline Habersham, Executive Director of the Commission, ROA. 61.

6. Second Declaration of Jacqueline R. Habersham, Executive Director of the Commission, ROA. 450.

7. First Amended Complaint, ROA. 89.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

APPENDIX ..................................................................................................... iv

TABLE OF CONTENTS......................................................................................v

TABLE OF AUTHORITIES ............................................................................. vii

I.    Preliminary Statement-COUNTY Judge Umphress' Conduct Is
      Undeterred-There Is No Chill and No Standing ...........................................1

      a.  Despite County Judge Umphress' Portrayal-This Appeal  Is Not About
          Same-Sex Marriage. ...........................................................................1

      b.  County Judge Umphress' Claims of "Threats" By the Commission Are
          Hyperbole. ..........................................................................................1

      c.  County Judge Umphress' Suit Is About *Obergefell*.................................2

      d.  The District Court's Memorandum Opinion and County Judge
          Umphress' Claim of Threats by the Commission. ....................................3

II.   Factual Background...................................................................................5

III.  Procedural Background ..............................................................................8

IV.   Summary of the Argument .........................................................................9

V.    Article III Standing Cannot Be Based On Speculation..............................10

      a.  Overview: County Judge Umphress Relies On Two Fundamental
          Misunderstandings.............................................................................10

      b.  County Judge Umphress Over-Simplifies and Mischaracterizes the
          Hensley Sanction. .............................................................................12

      c.  County Judge Umphress' Claims Cannot Fairly Be Characterized As
          Facial Attacks. ..................................................................................14

      d.  County Judge Umphress Cannot Show an Injury In Fact-The "Chill" Is
          At Best "Subjective."..........................................................................20

  e. County Judge Umphress Cannot Rely on Alleged Injuries to Others; He Lacks Standing Because He Has No Evidence of Injury to Himself. ......21

  f. County Judge Umphress' Evidence Does Not Sustain His Burden to Meet the *Clapper* Standard. ...............................................................24

VI. The District Court Properly Held that Judge Umphress' Claims are Unripe ...........................................................................................................27

VII. The District Court's Ruling On Abstention Meets All the Requirements of *Pullman* .................................................................................................29

  a. Standard of Review. ................................................................................29

  b. *Pullman* Criterion. .................................................................................30

  c. How Should Jurisprudential Considerations be Weighed? ......................37

VIII. Conclusion .................................................................................................44

CERTIFICATE OF SERVICE ................................................................................45

CERTIFICATE OF COMPLIANCE .......................................................................46

CERTIFICATE OF ELECTRONIC COMPLIANCE .............................................47

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright*, 468 U.S. 737 (1984) ....................................................20

*Baggett v. Bullitt*, 377 U.S. 360, 84 S. Ct. 1316 (1964) ................................... 31, 36

*Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662 (5th Cir. 1967) ...................29

*Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009) ....................... 18, 20

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)........................... 21, 24, 25, 27

*Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014) ...........................31

*Doe v. Bolton*, 410 U.S. 179 (1973).........................................................................23

*Dombrowski v. Pfister*, 380 U.S. 479, 85 S. Ct. 1116 (1965).......................... 32, 33

*Duncan v. Poythress*, 657 F.2d 691 (5th Cir. 1981) ................................................31

*Echo Powerline, L.L.C. v. OSHA*, 968 F.3d 471 (5thCir. 2020) ............................19

*Gladstone, Realtors* v. *Village of Bellwood*, 441 U.S. 91 (1979)...........................20

*Glass v. Paxton*, 900 F.3d 233 (5th Cir. 2018) ........................................................25

*Hagstette v. State Comm'n on Judicial Conduct*, 2020 Tex. App. LEXIS 9838
   (Tex. App.-Houston [1st Dist.] 2020, no pet.).......................................................43

*Hensley v. State Commission on Judicial Conduct et al.*, No. D-1-GN-20-003926
   in the 459th District Court of Travis County, Texas ................................... 6, 7, 42

*High Ol' Times, Inc. v. Busbee*, 621 F.2d 135 (5th Cir. 1980) ...............................31

*Hill v. El Paso*, 437 F.2d 352 (5th Cir. 1971)..........................................................31

*Hobbs v. Thompson*, 448 F.2d 456 (5th Cir. 1971) .................................................31

*Justice v. Hosemann*, 771 F.3d 285 (5th Cir. 2014) ................................................16

*La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483 (5th Cir. 1995) ..................................................................................31

*Laird v. Tatum*, 408 U.S. 1, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972).. 20, 21, 25, 44

*Los Angeles* v. *Lyons*, 461 U.S. 95 (1983)..............................................20

*Meese v. Keene,* 481 U.S. 465 (1987)...................................... 11, 20, 44

*Moreno v. Henckel*, 431 F.2d 1299 (5th Cir. 1970)......................... 32, 33

*N.H. Right to Life PAC v. Gardner*, 99 F.3d 8 (1st Cir. 1996)................22

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,* 538 U.S. 803 (2003)..........28

*National Rifle Ass'n v. Magaw*, 132 F.3d 272 (6th Cir. 1997) ................26

*Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.,* 283 F.3d 650 (5th Cir. 2002)..................................................................30

*Nissan Motor Corp. v. Harding*, 739 F.2d 1005 (5th Cir. 1984)............31

*Obergefell v. Hodges,* 135 S. Ct. 2071 (2015)................................. *passim*

*O'Shea* v. *Littleton*, 414 U.S. 488 (1974)..............................................20

*Palmer v. Bone*, No. 4:18-CV-00422, 2019 WL 2882053 (E.D. Tex. May 24, 2019) ...............................................................................................28

*Procunier v. Martinez,* 416  U.S. 396 (1974) ................................ 31, 36

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) ............. *passim*

*Steffel v. Thompson*, 415 U.S. 452 (1974) .............................................24

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)......... 22, 23, 24

*Telescope Media Group v Lucero*, 936 F3d 740 (8th Cir 2019) ............23

*Texas Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir.  2020)........ *passim*

*Texas v. United States*, 523 U.S. 296 (1988) ........................................28

*Thompson v. Housing Authority of New Orleans*, 689 Fed.Appx. 324 (5th Cir. 2017) ................................................................................................ 30, 43

*U.S. v. Sineneng-Smith,* 140 S. Ct. 1575 (2020) ...................................................27

*Umphress v. Hall*, 2020 U.S. Dist. LEXIS 211164 (N.D. Tex. 2020) ........... *passim*

*United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588 (2d Cir. 1989)..........31

*United Home Rentals, Inc. v. Texas Real Estate Comm'n*, 716 F.2d 324 (5th Cir. 1983) ............................................................................................... 31, 34

*United States v. Davis*, 139 S.Ct. 2319 (2019) ......................................................18

*United States v. Salerno*, 481 U.S. 739 (1987) ......................................... 14, 15, 16

*United States v. Stevens*, 559 U.S. 460 (2010) ......................................... 14, 15, 16

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013).............................16

*Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962 (5th Cir. 1993) ......................................................................................... 31, 35, 36

*Zwickler v. Koota*, 389 U.S. 241, 88 S. Ct. 391 (1967) .........................................31

## Statutes

TEX. CONST. art. V, § 1 ...........................................................................................43

Tex. Const. Art. V, § 6.............................................................................................42

## Other Authorities

48B Tex. Prac., Tex. Lawyer & Jud. Ethics § 28:1 (2020 ed.)...............................18

C.A. Wright & A. Miller, Federal Practice & Procedure, § 4242 ..........................31

Tex. Gov't Code 33.034............................................................................... 5, 40

TEX. GOV'T CODE § 33.002 ......................................................................................43

# I.    PRELIMINARY STATEMENT-COUNTY JUDGE UMPHRESS' CONDUCT IS UNDETERRED-THERE IS NO CHILL AND NO STANDING

## a. Despite County Judge Umphress' Portrayal-This Appeal  Is Not About Same-Sex Marriage.

Contrary to the theme County Judge Umphress depicts about his appeal , it is not about same-sex marriage or whether County Judge Umphress can refuse to conduct same-sex wedding ceremonies.  It is about whether Judge Umphress has Article III standing to pursue his claim for a declaratory judgment and injunctive relief.  The district court reached the correct conclusion.  Judge Umphress has demonstrated no injury-in-fact to meet the standard for Article III standing.[1]

## b. County Judge Umphress' Claims of "Threats" By the Commission[2] Are Hyperbole.

County Judge Umphress' claims the alleged "chilling" of his First Amendment rights as to his past, current, and proposed future conduct centers around his refusal to conduct same-sex marriage ceremonies.  The alleged "chilling" was caused by what County Judge Umphress describes as his becoming "aware"[3] of a disciplinary sanction, a "public warning," rendered by the State Commission on Judicial Conduct respecting the conduct of another judge, Justice of the Peace

---

[1] *Umphress v. Hall*, 2020 U.S. Dist. LEXIS 211164 *9-12 (N.D. Tex. 2020) Appendix 1.

[2] The State Commission on Judicial Conduct acts through its member commissioners who are named in this proceeding as defendants-appellees in their official capacities.  The Defendants-Appellees will be referred to hereafter as the Commission.

[3] "9. I am aware of the State Commission on Judicial Conduct's decision to discipline Judge Dianne Hensley, a justice of the peace in McLennan County, for recusing herself from officiating at same-sex marriage ceremonies." Judge Brian Keith Umphress' Affidavit, ¶9; ROA. 146; Appendix 3.

Dianne Hensley, (Hensley sanction), in violation of Canon 4A(1) of the Texas Code of Judicial Conduct.[4]

Judge Umphress claims the Hensley sanction is solely about Judge Hensley's refusal to marry same-sex couples while agreeing to marry opposite-sex couples. However, as the Commission's findings in the Hensley sanction show, Judge Hensley's conduct went well beyond a mere refusal to conduct same-sex marriage ceremonies.[5] Judge Hensley was sanctioned after a full evidentiary hearing where she and her legal team presented evidence and argument. Further, Judge Umphress makes the exaggerated proclamation that the very existence of the Hensley sanction is a "threat" and "bullying" by the Commission of him and Texas judges.[6] Yet the Hensley sanction is nothing of the kind. There is no "credible threat" of the Commission proceeding against him.[7]

### c. County Judge Umphress' Suit Is About *Obergefell*[8].

The transparent underlying purposes of Judge Umphress' suit are twofold. First, he demands a declaratory judgment and injunction that he will be free from

---

[4] Canon 4A(1) provides, "A judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge." Canon 4A(1) of the Texas Code of Judicial Conduct; Appendix 2.

[5] Public Warning, Honorable Dianne Hensley, November 12, 2019; ROA. 113; Appendix 4.

[6] Appellant uses the term "threat" or "threatening" at least 51 times in his opening brief. The record demonstrates there has been no "threat" of action against him. See App. Br. 1, *Et. Seq.*

[7] "Here, Judge Umphress's complaint mentions neither a currently nor imminently pending judicial disciplinary proceeding or investigation against him." *Umphress v. Hall*, 2020 U.S. Dist. LEXIS 211164 * 11-12; Appendix 1.

[8] *Obergefell v. Hodges,* 135 S. Ct. 2071 (2015).

any investigation, even if a citizen were to file a complaint in the future and regardless of the accompanying circumstances, for his past, present, or future public vocal statements that disapprove of same sex marriage and homosexual behavior and his public and loud refusal to conduct marriage ceremonies for same-sex couples. Second, he wishes to be the litigant who persuades the Supreme Court to overrule *Obergefell* as he pleads in "Claim No. 5" of his First Amended Complaint, "The Courts Should Overrule *Obergefell* And Declare That Same-Sex Marriage Is Not A Constitutional Right."[9]

### d. The District Court's Memorandum Opinion and County Judge Umphress' Claim of Threats by the Commission.

In his opening brief, Judge Umphress claims the district court, in its Amended Memorandum Opinion, misstated the Commission's position as to whether the Commission had "threatened or commenced" any disciplinary action against Judge Umphress. However, the district court recited correctly the position of the Commission as follows:

> "In a Joint Status Report filed by the parties in this case, the Commission asserted, *inter alia*, that Judge Umphress is not, and has not been, the subject of any investigation or disciplinary proceeding . . . [and] that neither the Commission [on Judicial Conduct] nor any Texas court has – to date – expressed the view that Canon 4(A)(1) would be violated by a judge's choice of church for worship, nor (without more), a judge's choice to decline to perform same-sex marriages, nor a judge's choice to campaign on a platform that opposes same-sex marriage and *Obergefell*."[10]

---

[9] First Amended Complaint; ROA. 89; Appendix 7.
[10] *Umphress v. Hall*, 2020 U.S. Dist. LEXIS 211164 *7-8; Appendix 1.

Further, the district court correctly noted that, "(1) he faced no disciplinary action from the Commission; (2) the Commission has no plans to take any disciplinary action against him; and (3) Judge Umphress does not dispute the Commission's assertions."[11]

However, Judge Umphress takes issue with a portion of the district court's statements as follows:

> 1. "[T]he Commission expressly stated that it has not and will not prosecute him for his allegedly chilled behavior . . . ."[12] (App. Br.12), 2. "[T]he Commission asserts . . . that there are no plans to investigate or discipline Judge Umphress but that they will neither investigate nor discipline him if he acts in the very way that he claims to be chilled against." App. Br. 12), and 3. "the Commission's multitude of assertions that it will not discipline him." (App. Br. 12).

While the Commission requested that the district judge make various editorial adjustments, the suggested modifications were not made. Never the less, as is shown below, the district court's statements with which Judge Umphress takes issue, do not change the district court's conclusion that Judge Umphress has failed in his burden to show standing. The conclusion of the district court is correct. By his own admission,[13] Judge Umphress is undeterred and not inhibited from continuing to

---

[11] *Id.* at *8-9.
[12] *Id.*
[13] *Id.*

engage in his conduct that he claims is "chilled." Judge Umphress has not made his case.

## II.    **FACTUAL BACKGROUND**

On November 12, 2019, the Commission on Judicial Conduct issued a Public Warning to Justice of the Peace Dianne Hensley for her violation of Canon 4A(1) of the Texas Code of Judicial Conduct.[14]  Canon 4A(1) provides that "[a] judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge . . . ." *Id.*  Based on the totality of the circumstances shown at the evidentiary hearing, the Commission issued a Public Warning stating that Judge Hensley "should be publicly warned for casting doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation in violation of Canon 4A(l) of the Texas Code of Judicial Conduct." *Id.*

Rather than appeal the Commission's decision to a special tribunal, which she had the right to do,[15] Judge Hensley filed a class action lawsuit against the Commission on December 19, 2019. There, she seeks declaratory relief that justices of the peace do not violate Canon 4A(1) by (1) performing traditional weddings, but not same-sex weddings; (2) expressing public disapproval of homosexual activity;

---

[14]  *See* n.4.
[15]   Declaration of Jacqueline Habersham, Executive Director of the Commission, ¶5; ROA. 61; Appendix 6; *See* Tex. Gov't Code 33.034 (Appeal from Commission sanction).

or (3) affiliating with a church that opposes same-sex marriages. Judge Hensley's lawsuit is currently pending in Travis County, Texas. *Id.*[16]

Three months after Judge Hensley's state court suit was filed, on March 18, 2020, County Judge Umphress filed this lawsuit against the Commission[17] alleging that his extrajudicial activities expose him to discipline under the Commission's "interpretation" of Canon 4A(1) as Judge Umphress inferred from Judge Hensley's case.[18] The Hensley and Umphress suits seek virtually the same relief. Both Judge Hensley and Judge Umphress are ably represented by the same esteemed counsel.

Judge Umphress complains that the Commission's actions against Judge Hensley chilled his First Amendment Rights. As such, he has sought declaratory and equitable relief against the Commission for hypothetical, *possible future* enforcement of Judicial Canon 4A(1) against him. *Id.*

As indicated above, the Commission's findings and sanctions in the Hensley sanction order reflect its fact-intensive determination, from the particular facts and circumstances in the evidentiary record before it, that Judge Hensley had allowed her extra-judicial activities to "cast doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation."

---

[16] *See Hensley v. State Commission on Judicial Conduct et al.*, No. D-1-GN-20-003926 in the 459th District Court of Travis County, Texas; ROA.491.

[17] The defendants-Appellees

[18] Original Complaint; ROA. 14-15.

The findings in the Hensley sanction included reference to (i) Judge Hensley's refusal to conduct same-sex weddings, though she publicized her availability to conduct opposite-sex weddings, (ii) Judge Hensley's public interview comments in a Waco newspaper, (iii) Judge Hensley's choice to use two State-employed court personnel to interface with same-sex couples, (iv) the record before the Commission, which included Judge Hensley's written and oral sworn testimony to the Commission, and (v) Judge Hensley's acknowledgment that recusal motions might be presented based upon her public comments.[19]

Judge Umphress equates Judge Hensley's sanctioned conduct with his own, but he makes no allegation that his own conduct is similar to portions (ii)-(v) above of the evidentiary record before the Commission in the *Hensley* case. Further, the findings in the Hensley sanction order do not include elements of the conduct Judge Umphress claims is "chilled;" that is, his church affiliation, his general views on homosexual behavior, or his beliefs or potential advocacy concerning the *Obergefell* decision. Further, there have been no threats of any disciplinary investigation or proceeding against Judge Umphress nor is any complaint against him pending or anticipated as stated in the declarations of Jacqueline Habersham, Executive Director of the Commission.[20]

---

[19] *See* n. 4.
[20] *See* n. 8 and 11.

Judge Umphress proclaims that he continues to engage in opposite-sex weddings, but not same-sex weddings and continues to worship at the same church whose doctrine opposes homosexuality and same-sex weddings. Further, Judge Umphress provides no hint of the particulars of the potential campaign speech he intends to present at a future date when election laws allow his 2022 campaign to commence (when candidacy is permitted, after November 2021).[21]

The record shows, and the district court held (i) Judge Umphress has no standing, (ii) no controversy was ripe for Article III purposes, and (iii) even if there were standing and ripeness, the circumstances of Judge Umphress' allegations would require *Pullman* abstention.[22] The district court got it right.

## III. PROCEDURAL BACKGROUND

The Commission filed a Motion to Dismiss or Transfer Based on Improper Venue which the district court denied. ROA.56-88.

With its Answer, the Commission filed a Motion to Abstain pursuant to the *Pullman* abstention doctrine[23] and a Motion to Dismiss based on the lack of subject matter jurisdiction.[24] Specifically, the Commission argued Judge Umphress lacked standing, his claims were not ripe, he sought impermissible advisory opinions, and the Commission possessed immunity. *Id.* On November 10, 2020, the Court issued

---

[21] App. Br. 4, 13, 16; Judge Brian Keith Umphress' Affidavit; ROA. 146; Appendix 5.
[22] *Umphress v. Hall*, 2020 U.S. Dist. LEXIS 211164 * 18-23; Appendix 1.
[23] ROA.284-304; ROA.305-328.
[24] ROA.329-363.

a Memorandum Opinion and Order granting the Commission's Motion to Dismiss for lack of subject matter jurisdiction on the bases that Judge Umphress lacked standing and his claims were not ripe.[25] The same day, the Court denied the Commission's Motion to Abstain as moot and entered a final judgment.[26] On November 12, 2020, the District Court issued an Amended Memorandum Opinion and Order, which provided the same relief as the original Order.[27]

On December 8, 2020, Judge Umphress filed his Notice of Appeal.[28]

## IV. SUMMARY OF THE ARGUMENT

Judge Umphress seeks to enjoin the Commission from proceeding according to its constitutional and statutory responsibilities. At its core, this case addresses whether the Commission can sit as a body to evaluate an evidentiary record concerning the totality of specific circumstances at issue; that is, whether a *particular* judge's extrajudicial actions cast doubt on *that particular* judge's capacity to act impartially as required of Texas judges pursuant to Canon 4A(1). In other words, in effect, Judge Umphress questions whether Canon 4A(1) is to be applied on a case-by-case basis where the Commission reviews each set of circumstances individually to determine whether a specific judge's action in that particular circumstance casts doubt on the judge's capacity to act impartially.

---

[25] ROA.470-487.
[26] *Id.*; ROA.488.
[27] *Umphress v. Hall*, 2020 U.S. Dist. LEXIS 211164 (N.D. Tex. 2020); Appendix 1.
[28] ROA.537-538.

Despite this narrow and fact-specific scope of a Canon 4A(1) inquiry, Judge Umphress seeks to bring into question issues that are not before the Court and not subject to Canon 4A(1), namely, whether a judge is required to officiate gay wedding ceremonies, whether gay marriage is legal in Texas and whether, as a judge he can belong to a church that espouses doctrine that opposes gay marriage or the homosexual lifestyle. Those questions that Judge Umphress poses are not the questions asked, nor answered, under a Canon 4A(1) inquiry.[29]

## V. ARTICLE III STANDING CANNOT BE BASED ON SPECULATION

### a. Overview: County Judge Umphress Relies On Two Fundamental Misunderstandings.

Judge Umphress engages in two fundamental misunderstandings in his effort to persuade the Court that he has standing to challenge a Judicial Canon whose enforcement has never been threatened against him.

First, although he pled and advised the district court he was pursuing an "as-applied" attack on Canon 4A(1), he now attempts to persuade the Court that his is a facial challenge, and not merely an as-applied challenge. (App. Br. 18-26). This attempt is an implicit acknowledgement by Judge Umphress that he has no standing under principles applicable to an as-applied attack. As will be shown in detail below,

---

[29] Those questions, such as concerning the legality of gay marriage, the legal requirements related to conducting same-sex marriages, might one day be addressed in an appropriate case under Canon 2.A., which requires a judge to comply with their law. However, Judge Hensley's case was not about the legality of her choices. It was about the appearance of impropriety based on the totality of her conduct.

in arguing that his is a facial attack, he omits any reference to the definitions repeatedly applied by the Supreme Court and by this Court to distinguish facial attacks from as-applied attacks. Under those distinguishing definitions, Judge Umphress' claims cannot fairly be characterized as facial attacks.

Second, he alleges without evidentiary support and indeed contrary to the record evidence, that his circumstances and Judge Hensley's are identical. He implies that, since Judge Hensley was disciplined under Canon 4A(1), he inevitably will be disciplined for identical conduct unless this Court intervenes to protect him. The findings of the Commission in Judge Hensley's case show that her conduct, for which she was sanctioned, is not identical to what Judge Umphress claims he has done, is doing now, and will do in the future. The single similarity is that each judge conducts opposite-sex weddings but not same-sex weddings, but that fact has never been, by itself, the basis for any investigation or disciplinary proceeding to date.[30] It would be pure conjecture to speculate how the Commission would decide such a matter if and when presented.

He claims a "chill" of his rights, but that is not sufficient to show a "distinct and palpable" injury.[31] Judge Umphress has not alleged facts that show he engaged

---

[30] *See* Second Declaration of Jacqueline R. Habersham, Executive Director of the Commission; ROA. 450; Appendix 7.
[31] *Meese v. Keene,* 481 U.S. 465, 472 (1987).

in conduct identical to, or even similar to, the additional conduct that was investigated and that supported Judge Hensley's discipline.

### b. County Judge Umphress Over-Simplifies and Mischaracterizes the Hensley Sanction.

Judge Umphress portrays the Hensley sanction as a "threat" to him or any judge who refuses to conduct same-sex weddings (while agreeing to perform opposite-sex weddings) or attend a church with the same views will be treated as a violation of Canon 4A(1). (App. Br. 3-4, 16, 28). However, the Hensley sanction is not about Judge Umphress' concerns nor is his announced conduct identical to that of Judge Hensley. A plain reading of the findings in the Hensley sanction shows no finding regarding church affiliation, in general views on homosexual behavior, or choices concerning campaign advocacy, or the *Obergefell* decision.

There would have been no need for the Commission to make findings and references to items 2 through 5 in the sanction order if they were irrelevant to its decision.[32] Indeed, there would have been no reason for any findings or any evidentiary hearing if the Commission had a rule, or a policy, that *ipso facto* any

---

[32] The Commission's findings and sanctions concerning Judge Hensley reflected its fact-intensive determination, from the particular facts and circumstances in the evidentiary record before it. The findings included reference to (1) Judge Hensley's refusal to conduct same-sex weddings, though she publicized her availability to conduct opposite-sex weddings, *(2) Judge Hensley's public interview comments in a Waco newspaper, (3) Judge Hensley's choice to use two State-employed court personnel to interface with same-sex couples, (4) the record before the Commission, which included Judge Hensley's written and oral sworn testimony to the Commission, and (5) Judge Hensley's acknowledgment that recusal motions might be presented based upon her public comments.*

refusal to conduct same-sex weddings (while agreeing to perform opposite-sex weddings) automatically will be treated as a violation of Canon 4A(1).

Instead, the Commission evaluated the totality of Judge Hensley's conduct shown by the evidentiary record and reached the determination that her conduct cast doubt on her capacity to act impartially towards homosexual litigants. If Judge Hensley, represented by able counsel, had believed that the Commission had erred, she could have received an efficient and prompt *de novo* appeal by a panel of three court of appeals justices. In that statutory appeal, she could have asserted any defenses (including constitutional arguments), challenged any evidence, offered additional evidence, argued any nuances, to protest and seek to overturn the determination that, based on the totality of the facts and circumstances, her conduct cast reasonable doubt on her capacity for impartiality in cases involving homosexuals. Judge Hensley chose *not* to appeal.[33]

Judge Umphress has shown that his conduct resembles Judge Hensley's conduct in only one respect his refusal to conduct same-sex wedding ceremonies while continuing opposite-sex weddings, but he has shown no similarity between his conduct and the facts and other of Judge Hensley's conduct which were all called out in the Commission's Public Warning.

---

[33] *See* n. 13.

When Judge Umphress' over-simplified portrayal of the Public Warning concerning Judge Hensley is corrected, then it is all the more clear that Judge Umphress has brought only speculation, and no evidence, that he might ever be the subject of any disciplinary proceeding. The uncontested evidence before the district court showed that the Commission has *never* had a disciplinary proceeding in which the allegations consisted solely of "a judge's mere choice, standing alone, to conduct opposite-sex marriages but not to conduct same-sex marriages."[34]

### c. County Judge Umphress' Claims Cannot Fairly Be Characterized As Facial Attacks.

County Judge Umphress asserts in his brief that he has made both a "facial" and "as-applied" attack on the Commission and Canon 4A(1). (App. Br. 29-32) However, he fails to mention a number of important authorities that, when applied to this case, show Judge Umphress has no standing. Also, he fails to mention two critical admissions made in the district court that preclude his mounting a "facial" attack.

### 1. Judge Umphress Overlooked The *Salerno/Stevens* Test

He never discusses or even cites *United States v. Salerno*, 481 U.S. 739, 745 (1987) or *United States v. Stevens*, 559 U.S. 460, 473 (2010), which established a test concerning facial attacks. Nor has he cited any of the many Fifth Circuit cases

---

[34] *See* Second Declaration of Jacqueline Habersham, Executive Director of the Commission, ¶ 5; ROA. 450; Appendix 7.

that quote, apply and discuss the *Salerno/Stevens* test. Although he cites or discusses *Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) more than three dozen times, he never furnishes the language within *Speech First* that makes clear its holding, its tests, and its analysis would have been entirely different for an as-applied attack. Finally, he never mentions the very important concession he made in his briefing to the district court. His concession is completely incompatible with his current effort to characterize his attacks as "facial."

In *United States v. Salerno*, 481 U.S. 739, 745 (1987), the Supreme Court set forth the no-set-of-circumstances test for a facial challenge:

> "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." [35]

The *Salerno* test, that a facial attack requires a showing that the challenged law is invalid under all circumstances, is relaxed when a plaintiff makes a claim of overbreadth[36] implicating First Amendment rights, but only if the plaintiff demonstrates that '"a substantial number of [the law's] applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010); *accord*, *Justice v. Hosemann*, 771 F.3d

---

[35] *United States v. Salerno*, 481 U.S. 739, 745 (1987).

[36] Judge Umphress never alleges or suggests in his petition, in his arguments in the district court, nor in his Brief – that he attacks Canon 4A(1) as "overbroad."

285, 296 n.10 (5th Cir. 2014); *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386-87 (5th Cir. 2013).[37]

## 2. The Critical Admissions That Preclude A Facial attack.

In his effort to stretch his claims into a "facial" attack, Judge Umphress fails to mention two critical admissions he made in the district court. First, he does not refer to his admission in his briefing to the district court that his attack is "as-applied."[38] Second, Judge Umphress does not mention in his brief a critical concession in the district court when he agreed with the Commission's position that Canon 4A(1) could be constitutionally applied to a judge whose conduct was extreme:

> "Judge Umphress is *not* asking this Court to hold that 'there could be no instance when the totality of circumstances around a refusal to conduct a same-sex marriage could ever be part of conduct casting doubt on capacity to act impartially,' as the

---

[37] In *Voting for America*, the Court wrote: "Principles of judicial restraint must be employed before a federal court may declare a state law unconstitutional. . . . Courts generally disfavor facial challenges, and for good reason. '[F]acial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.' … With the exception of First Amendment cases, a facial challenge will succeed only if the plaintiff establishes that the act is invalid under all of its applications. *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). The standard for facial challenges in First Amendment cases is different, although still daunting. A law implicating the right to expression may be invalidated on a facial challenge if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.' *United States v. Stevens*, 559 U.S. 460." Judge Umphress's counsel was counsel for the successful Secretary of State in *Voting for America*.

[38] "*Although Judge Umphress has not challenged Canon 4A(1) on its face, he is attacking the canon as applied* to judges who refuse to perform same-sex wed dings, and he has alleged that the Commission is "discouraging" protected First Amendment activities by threatening to discipline judges who express disapproval of homosexual behavior." (Emphasis added), Plaintiff's Response to Motion to Abstain, p. 6; ROA. 391,

defendants assert.  Nor is he asking for a judicial declaration that immunizes 'disparaging words about specific homosexual litigants,' or that immunizes anything 'he ever says or does in the future, [or] in his 2022 reelection campaign.' *The defendants are surely correct to observe that judges can still be disciplined for words or actions that evince hatred, prejudice, or bias toward homosexual litigants, and if a judge were to join the Westboro Baptist Church or utter the slogans associated with that organization, the Commission would be on firm constitutional ground in enforcing Canon 4A(1) despite the Supreme Court's holding that such speech is protected by the First Amendment.* (Emphasis added).[39]

This concession is fatal to any effort to characterize Judge Umphress' "vagueness" attack (or any of his other claims) as a facial attack.  First, the concessions mean that he cannot "establish that no set of circumstances exists under which the Act would be valid." (The *Salerno* test).  Second, he cannot show that "a substantial number of [Canon 4.A(1)'s] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep.[40]" (The *Stevens* test, applicable in First Amendment cases). This is because the record shows only three instances, rather than "a substantial number," when same-sex marriage issues have been involved in any disciplinary proceeding,[41] and only one such case (the Hensley case) in which a violation of Canon 4A(1) was found. By contrast "the plainly legitimate sweep" of Canon 4A(1) is evident from Judge Umphress' concession of its validity in cases

---

[39]  Plaintiff's Response to Motion to Dismiss for Lack of Jurisdiction, p. 11-12; ROA. 407.
[40] See n.34.
[41] See Second Declaration of Jacqueline R. Habersham, Executive Director of the Commission, ¶2-9; ROA. 450; Appendix 7.

"that evice[] … prejudice or bias"; and also from the Supreme Court's approval of analogous rules that have been adopted by nearly every state.[42]

That Judge Umphress' vagueness attack is assuredly "as-applied," rather than "facial," flows from its failure to meet the *Salerno/Stevens* test.

### 3. The Need For Intensive Fact Finding Does Not Mean Canon 4A(1) Is Vague.

The determination of a judge's impartiality, and capacity to act impartially, necessarily turns on a fact-intensive consideration of the circumstances pertinent to a specific controversy. The fact-intensive, case-by-case determination does not mean that Canon 4A(1) is vague.

The Commission's determinations under Canon 4A(1) are case-by-case fact-specific determinations. There has been no categorical approach that says one type of conduct is automatically deemed a violation of Canon 4A(1). The standard in Canon 4A(1) that a judge's conduct not cast reasonable doubt as to the judge's capacity for impartiality, is a qualitative standard.

Additionally, it is important to note that Judge Umphress' assertion that a Canon is "vague" does not make it so. When a law, a regulation, or a Canon sets forth a standard for case-specific factual determinations, it is not vague.[43]    Judge

---

[42] *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 888 (2009). The Texas rule draws from the same ABA model rule the Court referenced. See § 28:1.ABA comparison, 48B Tex. Prac., Tex. Lawyer & Jud. Ethics § 28:1 (2020 ed.)

[43] *E.g., United States v. Davis*, 139 S.Ct. 2319, 2317 (2019) (Gorsuch, J.) ("a case-specific approach would avoid the vagueness problems that doomed the statutes in *Johnson* and *Dimaya*.

Umphress' admissions to the district court show that a ruling on conduct pursuant to Canon 4A(1) necessarily must be made on the facts put into the record on a case by case basis. Judge Umphress affirmed the case-by-case analysis method when he declared, that "the Commission would be on firm constitutional ground in enforcing Canon 4A(1)," despite ordinarily protected First Amendment rights against a judge whose conduct "evince[d] prejudice or bias against homosexual litigants."[44] In Judge Hensley's case, the Commission determined that application of Canon 4A(1) to Judge Hensley's conduct showed a violation. Tellingly, Judge Hensley did not contest the finding by any appeal.

In light of the above admission, there is another important point that weighs heavily against his attempt to make a vagueness, "facial" attack on Canon 4A(1). That is if County Judge Umphress' "facial" attack is sustained, no standard would exist and Canon 4A(1) would be banished from the Texas Code of Judicial Conduct such a decision would run against the Supreme Court's decision in *Caperton v. A.T. Massey Coal Co., Inc.*, the U.S. whether Supreme Court observed with approval that

---

In those cases, we recognized that there would be no vagueness problem with asking a jury to decide whether a defendant's "'real-world conduct' created a substantial risk of physical violence."); *Echo Powerline, L.L.C. v. OSHA*, 968 F.3d 471, 476-78 (5thCir. 2020) (not unconstitutionally vague to have a case-specific test that looks to what "a reasonable person" would do in negligence cases or looks to "conduct measured by common understanding and practices [in the industry].").

[44] Plaintiff's Response to Motion to Dismiss for Lack of Jurisdiction, p. 11-12; ROA. 407.

rules similar to Canon 4A(1), have been adopted by nearly every state "to eliminate even the appearance of partiality."[45]

### d. County Judge Umphress Cannot Show an Injury In Fact-The "Chill" Is At Best "Subjective."

Remarkably, Judge Umphress' claims his conduct and views have allegedly been "chilled" because he became "aware" of the Hensley sanction.[46] Yet, his conduct remains undeterred. In order that there be substance to a claim of "chilling" of First Amendment rights, one has the burden to show one has been "deterred" from acting.[47] Further, speculation will not translate into injury-in-fact to support standing. The United States Supreme Court has long held, "The injury alleged must be, for example, '"distinct and palpable,"' *Gladstone, Realtors* v. *Village of Bellwood*, 441 U.S. 91, 100 (1979) (quoting *Warth* v. *Seldin, supra*, at 501), and not "abstract" or "conjectural" or "hypothetical," *Los Angeles* v. *Lyons*, 461 U.S. 95, 101-102 (1983); *O'Shea* v. *Littleton*, 414 U.S. 488, 494 (1974)."[48]

Despite Judge Umphress' public exhibition of his views and conduct, and his claims that the Commission has "threatened" and "bullied" him and other Texas

---

[45] *See Caperton v. A.T. Massey Coal Co., Inc*., 556 U.S. 868, 888 (2009). The Texas rule draws from the same ABA model rule the Court referenced. See § 28:1.ABA comparison, 48B Tex. Prac., Tex. Lawyer & Jud. Ethics § 28:1 (2020 ed.).

[46] *See* ¶9, Judge Brian Keith Umphress' Affidavit; ROA. 146; Appendix 5.

[47] "[C]onstitutional violations may arise from the *deterrent*, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." (Emphasis added); See *Laird v. Tatum*, 408 U.S. 1, 92 S. Ct. 2318, 2324, 33 L. Ed. 2d 154 (1972).

[48] *Allen v. Wright*, 468 U.S. 737, 751 (1984); *Meese v. Keene*, 481 U.S. 465, 472 (1987).

judges,[49] the record in the district court shows no one, neither any unhappy citizen, nor the Commission, has made any "threat" to Judge Umphress to pursue a sanction for an ethical violation as to the conduct he openly pursues. Again, there has been no "threat" or "bullying."[50] Any purported threat is a mere phantom and his speculation arising from Judge Umphress merely from his becoming "aware" of the Hensley sanction.

As the district court concluded, Judge Umphress' perception of the sanction imposed on Judge Hensley is no more than "a mere bare assertion" that his "rights" are "subjectively 'chilled.'" There is no "imminent" injury and his complaints remain well within that of the "speculative." *See Clapper*, 568 U.S. at 409; *Laird*, 408 U.S. at 13–14; *Younger*, 401 U.S. at 42.[51]

### e. County Judge Umphress Cannot Rely on Alleged Injuries to Others; He Lacks Standing Because He Has No Evidence of Injury to Himself.

Knowing that he has never been threatened with any disciplinary investigation or proceeding, Judge Umphress argues that he is excused from showing any alleged injury to *himself* and claims he can rely on alleged injuries to *others*. (App. Br. 18-26.) His argument is rejected by the very case that he cites or references over three dozen times in his brief: *Speech First, Inc. v Fenves*. In a portion of the opinion in

---

[49] *See* n. 4 respecting Judge Umphress' repeated over statement in this respect.
[50] *See* Declarations of Jacqueline Habersham, Executive Director of the Commission; Appendices 6 and 7.
[51] *Umphress v. Hall*, 2020 U.S. Dist. LEXIS 211164 * 11-13; Appendix 1.

*Speech First*, to which Judge Umphress alludes and from which he briefly and selectively quotes (App. Br. 29), this Court wrote:

> The last element of injury in fact, in this context, is whether it is clearly likely that "the future threat of enforcement of the [challenged policy] is substantial." *Susan B. Anthony List*, 573 U.S. at 164, 134 S. Ct. at 2345. **At this point, "[t]he distinction between facial and as-applied challenges bears legal significance."** *See Schlissel*, 939 F.3d at 766. Whereas **"[t]here must be some evidence that [a] rule would be applied to the plaintiff in order for that plaintiff to bring an as-applied challenge,"** that is not the case for facial challenges. *Id.*; *accord Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006); *see also, Google Inc. v. Hood*, 822 F.3d 212, 227–28 (5th Cir. 2016) (involving no facial challenge). Instead, "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996).[52] (Emphasis added).

This, of course, is a principal reason why Judge Umphress claims in his brief that his attacks are facial even though his amended petition complains of Canon 4A(1) "as applied."[53] Because his case is an as-applied challenge, he must give evidence that Canon 4A(1) will be applied to him. He cannot rely upon any alleged application to others, as a facial challenge might allow in appropriate circumstances.[54]

---

[52] *Speech First, Inc. v. Fenves,* 979 F.3d 319, 334-335 (5th Cir. 2020).

[53] First Amended Complaint, ¶¶ 38-41, 56; ROA. Appendix 7.

[54] Defendants do not argue that a court has no power to address an attack as facial even when a plaintiff's pleadings neglected to do so. *Cf.* App. Br. at 20-21. Rather, Defendants point to the definition of "facial attack" and to the necessary concession Judge Umphress made to the district court neither of which Judge Umphress has mentioned in his Brief to show that his attack cannot

Thus, Judge Umphress' reliance on facial-attack cases and other cases involving clear evidence of actual threats of enforcement and/or ongoing history of enforcement do not support his claim of standing. Further, those case law authorities do not excuse him from furnishing evidence of showing injury to *himself*. *E.g., Susan B. Anthony List v. Driehaus, supra*, 573 U.S. at 155 & n.3, 164 (there, the plaintiff alleged both a facial and an as-applied attack; the court considered only the facial attack; a substantial threat of future enforcement was shown by the prior enforcement against the plaintiff in "a recent election cycle"); *Speech First, Inc. v. Fenves, supra*, 979 F.3d at 323-25 (facial challenge of university rules that prohibited "hostile or offensive speech" and "rude or harassing" communications); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (plaintiff Mary Doe had been refused an abortion based on the statute; physician plaintiffs showed criminal prosecutions against physicians under the predecessor statute); *Telescope Media Group v Lucero*, 936 F3d 740, 750-51 (8th Cir 2019) ("Minnesota has publicly announced that the [non-discrimination statute] requires all private businesses, including photographers, to provide equal services for same- and opposite-sex weddings. It has even employed 'testers' to target noncompliant businesses, and it has already pursued a

---

be characterized as facial whether he did or did not choose to assert such an argument in his amended complaint.

successful enforcement action against a wedding vendor who refused to rent a venue for a same-sex wedding").

### f. County Judge Umphress' Evidence Does Not Sustain His Burden to Meet the *Clapper* Standard.

Although the district court properly cited and applied the case determinative authority  of *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), in finding that Judge Umphress did not have standing, Judge Umphress totally ignores *Clapper* in his brief.

*Clapper*, stated the standard for Article III standing: "[a] threatened injury must be 'certainly impending' to constitute injury in fact." 568 U.S. at 410.  Even the case Judge Umphress relies upon heavily, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014), applies the *Clapper* test in a First Amendment pre-enforcement challenge case.[55]

A footnote in *Clapper* expressly acknowledged "some" cases where "substantial risk" of harm was shown, rather than "certainly impending harm."[56] However, *Clapper* emphasized that those cases included evidentiary showings of a

---

[55] *See Susan B. Anthony List v. Driehaus,* 573 U.S. at 159: "[W]e have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent."  Unlike this case, *Susan B. Anthony List* involved a case where the plaintiff had already been threatened with prosecution and indeed had been subjected to a prior enforcement hearing.  573 U.S. at 154. Judge Umphress also relies on *Steffel v. Thompson*, 415 U.S. 452 (1974), but there (unlike this case) the Court found sufficient imminence to support standing where the plaintiff had been explicitly threatened with prosecution *twice*.  *Id.*at 452.  By contrast with the plaintiffs in *Susan B. Anthony List* and in *Steffel*, Judge Umphress is unable to show *any* threat of enforcement against him.

[56] *Clapper v. Amnesty Int'l USA*, 568 U.S. at 414 n.5.

"substantial risk" that may prompt the plaintiff to incur cost to mitigate or avoid the potential harm.[57] Judge Umphress has shown no evidence of any investment towards mitigating any risk. Unlike the plaintiffs in *Susan B. Anthony List* and *Steffel*, he can show no prior proceedings against him nor any explicitly threatened future proceedings.

In short, Judge Umphress has failed in his evidentiary burden to show a threatened injury that is "certainly impending." The *Clapper* standard is the law. Of course, this Court regularly applies it in cases where standing is challenged.[58]

Further, Judge Umphress' "mere allegations" are no more than a "subjective chill," certainly not evidence of "certainly impending harm." The case law is clear that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972); *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018) (affirming dismissal for lack of standing).

---

[57] Even then, the Court was clear that a plaintiff could not "manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper v. Amnesty,* 568 U.S. at 401.

[58] *E.g., Shrimpers & Fishermen of the RGV v. Texas Comm'n on Environ. Quality*, 968 F.3d 419, 423-24 (5thCir. 2020) (requiring evidence to satisfy the *Clapper* standard and stating that, under its "'burden of establishing' Article III standing," the plaintiff "cannot rest on 'mere allegations,' but must instead be supported by citations to specific facts in the record"); *Villarreal v. Horn*, 802 Fed.Appx. 107, 108 (5thCir. 2020); *In re Gee*, 941 F.3d 153, 164-65 (5thCir. 2019); *Center for 7Biological Diversity v. EPA*, 937 F.3d 533, 537 & n.2 (5thCir. 2019); *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 Fed.Appx. 235, 240-41 (5thCir. 2018), *cert. denied*, 139 S.Ct. 1330 (2019); *Glass v. Paxton*, 900 F.3d 233, 238-41 (5thCir. 2018) (the Court included a thorough discussion of *Clapper* and of the plaintiffs' burden of proof); *Barber v. Bryant*, 860 F.3d 345, 357 (5thCir. 2017), *cert. denied*, 138 S.Ct. 652 (2018).

Moreover, even the out-of-Circuit case Judge Umphress relies upon shows that the "chill" standard applies for facial attacks, not for as-applied attacks. (App. Br. 31), see *National Rifle Ass'n v. Magaw*, 132 F.3d 272, 291-92, 293-95 (6th Cir. 1997) ("group I" corporation plaintiffs had standing for a facial challenge, but not for a vagueness challenge; "group II" individual plaintiffs and "group III" associational plaintiff did *not* have standing despite their claims of "chilled" constitutional rights and fear of prosecution; any threat to them is "abstract, hypothetical and speculative").

Judge Umphress fares no better in his attempt to show standing when measured against the as-applied standard. Only subjective, "conclusory" allegations are offered by him. Such utterances are not competent evidence to show standing.[59] However, he argues:

> "Judge Umphress has shown that the Commission recently disciplined a justice of the peace who refused to perform same-sex marriages while continuing to perform opposite-sex marriages. That is all Judge Umphress needs to satisfy the "some evidence" test, and to establish an 'actual and well-founded' fear of future investigation."

(App. Br. at 30-31).

Again, he is far short of the mark.

---

[59] E.g., *Shrimpers & Fishermen of the RGV*, 968 F.3d at 423-24, 425 n.2 (under its "'burden of establishing' Article III standing," the plaintiff "cannot rest on 'mere allegations' but must instead be supported by citations to specific facts in the record"; "Article III demands more than such conclusory assertions").

This record contains no evidence (1) that Canon 4A(1) *will be* applied to Judge Umphress, using the standard in *Speech First, Inc. v. Fenves* for as-applied challenges; nor (2) that there is a "substantial risk" of a disciplinary proceeding against him, to use the *Susan B. Anthony* standard cited repeatedly by Judge Umphress; nor (3) that any proceeding is "certainly impending" against him, to use the controlling standard discussed in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). There is not even evidence that Judge Umphress' conduct is the same or similar to the totality of Judge Hensley's conduct.

His lawsuit was properly dismissed because his claims are theoretical speculations that seek an opportunity to overturn a case (*Obergefell*) not at issue. As the Supreme Court wrote last year with no dissenters and one concurring opinion courts are passive instruments of government, not meant to search out wrongs to right.[60]

## VI. THE DISTRICT COURT PROPERLY HELD THAT JUDGE UMPHRESS' CLAIMS ARE UNRIPE

Because Judge Umphress relies on a series of hypothetical and speculative events and seeks impermissible advisory opinions, his claims are not ripe.

The doctrine of ripeness is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . [until a] decision has been formalized and its effects felt in a concrete way by the

---

[60] *U.S. v. Sineneng-Smith,* 140 S. Ct. 1575, 1579 (2020).

challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."[61]

As noted, Judge Umphress makes an as-applied challenge, attacking what he believes to be the Commission's interpretation of Canon 4A(1) and how said "interpretation" may affect him in the future *if* a complaint is ever lodged against him. Such an argument is not logical. The constitutionality of Canon 4A(1)'s application to a specific set of facts cannot be determined until the subject set of facts occur.

Here, the "set of facts" Judge Umphress relies on are purely hypothetical and speculative. Such controversy does not exist because his concerns are only in the abstract. *See Palmer v. Bone*, No. 4:18-CV-00422, 2019 WL 2882053, at *4 (E.D. Tex. May 24, 2019), *adopted*, No. 4:18-CV-422, 2019 WL 2868923 (E.D. Tex. July 3, 2019). Accordingly, any adjudication would be improper as it would be premature and based "upon contingent future events that may not occur as anticipated, or indeed may not occur at all."[62]

Judge Umphress also attempts to oversimplify the Commission's process for determining whether a judge's conduct warrants discipline. Specifically, Judge

---

[61] *Texas v. United States*, 523 U.S. 296, 300 (1988) (citations omitted).
[62] *Texas v. United States*, 523 U.S. at 300.

Umphress implies that the disciplinary process undertaken respecting Judge Hensley was based on a single issue. In other words, if a judge, such as Judge Hensley, commits a specific act (performs opposite-sex marriages but not same-sex marriages), then there is an automatic, *ipso facto*, finding of a Canon 4A(1) violation. Judge Hensleys' sanction was adjudicated on a full record respecting Judge Hensley's conduct as described in the sanction, not as to a single issue.

Further, because Judge Umphress relies on facts that may never arise, the relief he seeks is an impermissible advisory opinion. Specifically, Judge Umphress seeks advisory opinions on whether the decision in *Obergefell* requires him to perform same-sex marriages, whether his unspecified future campaign language/conduct violates Canon 4A(1), and broadly what conduct he may or may not engage in without being subject to potential adverse consequences. Due to the plainly advisory nature of the relief sought by Judge Umphress, Judge Umphress' claims are not ripe for review. *See Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 666 (5th Cir. 1967) (courts should not "sit in judgment on these nice and intriguing questions which today may be readily imagined, but may never in fact come to pass.").

## VII. THE DISTRICT COURT'S RULING ON ABSTENTION MEETS ALL THE REQUIREMENTS OF *PULLMAN*

### a. Standard of Review.

A district court's abstention ruling is reviewed for abuse of discretion. However, a court of appeals reviews de novo whether the requirements of a particular abstention doctrine are satisfied.[63]  When the district court concluded it should abstain, he did not abuse his discretion and, as a matter of law, the elements of *Pullman* were present. The Commission respectfully requests the district court's decision be affirmed.

### b. *Pullman* Criterion.

In order to properly address *Pullman* abstention, the criteria required by *Pullman* and its progeny must be considered, head-on.  The case law makes it clear, when a plaintiff challenges the constitutionality of state action, *Pullman* abstention is generally appropriate when (i) "an issue of uncertain state law" (ii) "is fairly subject to an interpretation [by a state court]," (iii) "which will render unnecessary or substantially modify the federal constitutional question."[64]  Where these

---

[63] *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.,* 283 F.3d 650, 652 (5th Cir. 2002).
[64] *Thompson v. Housing Authority of New Orleans*, 689 Fed.Appx. 324, 327 (5th Cir. 2017) (quoting from *Moore v. Hosemann*).

circumstances exist (as they do in this lawsuit), "a federal court may, and ordinarily should, [[65]] refrain from deciding [the] case."[66]

Rather, than meet the issues head-on, Judge Umphress cites an assortment of cases that he contends incorrectly are solidly in support of his position against abstention. In almost every single case from which Appellant attempts to draw support, the court either ruled in favor of abstention,[67] or was confronted with facts radically different from those now before the Court.[68] Further, the other cases Judge Umphress cites in opposition to abstention involve materially different facts or circumstances not remotely similar to the case now before this court.

However, while the above referenced cases are not helpful, Judge Umphress' brief ignores recent pivotal Fifth Circuit case cited by the district court

---

[65] The Fifth Circuit sharply criticized a court for failing to abstain in the recent case *Texas Democratic Party v. Abbott*, 961 F.3d 389, 397 n.13 (5th Cir. 2020) (Smith, J.) ("[T]he district court's decision to forge ahead despite an intimately intertwined - and, at that time, unresolved - state-law issue was not well considered. The district court's reasons for not abstaining are suspect…. The district court's ruling turned our jurisprudence on its head.").

[66] *United Home Rentals, Inc. v. Texas Real Estate Comm'n*, 716 F.2d 324, 331 & n.14 (5th Cir. 1983), *cert. denied*, 466 U.S. 928 (1984), *quoting* C.A. Wright & A. Miller, Federal Practice & Procedure, § 4242.

[67] *Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962, 969 (5th Cir. 1993); *Nissan Motor Corp. v. Harding*, 739 F.2d 1005, 1011 (5th Cir. 1984); *Hill v. El Paso*, 437 F.2d 352, 357 (5th Cir. 1971).

[68] For example, the vast majority of the cases cited involved facts patterns where the Plaintiff had been directly injured or targeted by a statute. *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 781 (9th Cir. 2014); *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 595 (2d Cir. 1989); *La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1486 (5th Cir. 1995); *Moreno v. Henckel*, 431 F.2d 1299, 1301 (5th Cir. 1970); *Hobbs v. Thompson*, 448 F.2d 456, 457 (5th Cir. 1971); *Duncan v. Poythress*, 657 F.2d 691, 695 (5th Cir. 1981); *Baggett v. Bullitt*, 377 U.S. 360, 361, 84 S. Ct. 1316, 1317 (1964); *Procunier v. Martinez*, 416 U.S. 396, 398, 94 S. Ct. 1800, 1804 (1974); *Zwickler v. Koota*, 389 U.S. 241, 243-44, 88 S. Ct. 391, 393 (1967); *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135, 138 (5th Cir. 1980).

in its opinion.  For instance, *Texas Democratic Party v. Abbott,* 961 F.3d 389 (5th Cir.), *motion to vacate denied*, 140 S.Ct. 2015 (2020),[69] and *United Home Rentals, Inc. v. Texas Real Estate Comm'n*, 716 F.2d 324 (5th Cir.1983), *cert. denied,* 466 U.S. 928 (1984).  These cases give clear guidance and contradict Judge Umphress' arguments.

Instead of coming to grips with the above two cases, Judge Umphress centers his arguments around a confusing and truncated paraphrase from a 50 year-old case, *Moreno v. Henckel*, 431 F.2d 1299 (5th Cir. 1970), which he cites on four occasions.  This case has not been cited for the legal proposition urged by Judge Umphress [headnote 11 in *Moreno*] by any case since it was mentioned in a 1973 case from the Western District of Pennsylvania. *Moreno* purported to quote from *Dombrowski v. Pfister*, 380 U.S. 479 (1965)[70], but that opinion unfortunately truncated an essential portion of the *Dombrowski* language.

Judge Umphress relies upon this quote from Moreno:  "[A]bstention serves no legitimate purpose when the state action has a 'chilling effect' on First Amendment rights." quoting *Dombrowski v. Pfister,* 1965, 380 U.S. 479." (App. Br. 44).  However, the only reference to "legitimate purpose" in *Dombrowski* is actually this*:*

---

[69]  *Umphress v. Hall,* 2020 U.S. Dist. LEXIS 211164 *20-23; Appendix 1.
[70] *Dombrowski v. Pfister*, 380 U.S. 479, 85 S. Ct. 1116 (1965).

"[I]t is readily apparent that abstention serves no legitimate purpose where a statute regulating speech [1] is properly attacked *__on its face__*, *__and__* [2] where, as here, the conduct charged in the indictments is *__not within the__* *__reach of an acceptable limiting construction__* readily to be anticipated as the result of a single criminal prosecution *__and__* [3] is *__not the sort of__* *__hardcore conduct that would obviously be prohibited under any construction__*." 380 U.S. at 491-92 (emphasis added).

The unfortunate dictum in *Moreno,* relied upon by Judge Umphress, leads a reader to a misinterpretation of *Dombrowski*. *Moreno* is distinguishable from *Dombrowski* because it did not involve *any* of the three features of the *Dombrowski* test. First, *Moreno* did not involve a facial attack on a statute as was the case in *Dombrowski*. Second, there was no criminal indictment incapable of a limiting instruction as in *Dombrowski*. Finally, there was no statute involved that prohibited some hardcore conduct under any construction as in *Dombrowski*.

Rather, in *Moreno*, the trial judge's purported "abstention" was based on his mistaken decision that a "plaintiff cannot choose a federal forum for assertion of federal rights if a state remedy is available." *Id.* at 1303. That case did not involve any criminal prosecution nor any statute or ordinance that purported to "chill" First Amendment rights. It was a straight forward wrongful termination of employment case brought under 42 U.S.C. § 1983. There was no issue in *Moreno* about the proper construction of a state law and no issue of whether a state forum might construe an uncertain law in a manner that would avoid constitutional questions. The court of appeals simply corrected the trial judge's error when he improperly

utilized the doctrine of extension as to the availability of Section 1983 in a wrongful termination case.

The first pivotal case Judge Umphress fails to address in his brief or even mention is *United Home Rentals, Inc. v. Texas Real Estate Comm'n*. In that case, the three *Pullman* factors are analyzed and the result is a clear statement, "a federal court may, ***and ordinarily should***, refrain from deciding [the] case." *United Home Rentals, Inc. v. Texas Real Estate Comm'n, supra,* 716 F.2d at 331 & n.14 (emphasis added).

*United Home Rentals* involved a claim that a Texas agency's interpretation of a statute and an agency rule violated the plaintiffs' First Amendment rights. Finding the three *Pullman* factors present, the Fifth Circuit reversed the trial court and ordered abstention, stating, "the facts of this case ***require*** abstention under Pullman*." Id.* at 334 (emphasis added).

Much more recently, *Texas Democratic Party v. Abbott, a* Fifth Circuit case briefed by the Commission in the trial court, but totally ignored by Judge Umphress in his opening brief, the Fifth Circuit severely criticized a district judge for failing to abstain in a case that included First Amendment claims. This Court emphasized

that in the Fifth Circuit, unlike a case from a different Circuit relied upon by the trial court, "traditional abstention principles apply to civil rights cases."[71]

Another oversight of applicable case law holdings by Judge Umphress is evident in his opening brief when he quoted only a portion of the opinion in *Word of Faith World Outreach Center Church, Inc. v. Morales*, 986 F.2d 962, 967 (5th Cir..), *cert. denied*, 510 U.S. 823 (1993). That quote in Judge Umphress' opening brief is: "*Pullman* abstention is not necessarily proper whenever a state law question must be decided in order to reach the federal question." (App. Br. 46). While that general statement is accurate, the full meaning of that court's opinion is not clear from that short quotation. Rather, Judge Umphress failed to quote the very next sentence which fully states the rule. That important sentence says the following: "Unless the state law in question is fairly susceptible of an interpretation that might avoid or substantially modify the federal constitutional question, federal courts should exercise their properly invoked jurisdiction."[72]

---

[71] *See Texas Democratic Party v. Abbott, supra,* 961 F.3d at 397 n.13. The Fifth Circuit further stated: "the district court's decision to forge ahead despite an intimately intertwined—and, at that time, unresolved—state-law issue was not well considered"; "The district court's reasons for not abstaining are suspect"; "The district court's ruling turned our jurisprudence on its head." *Id.*. The concurrence wrote more extensively: "This was a textbook case for *Pullman* abstention. All the hallmarks for *Pullman a*bstention were present.*" Id*. at 417-18.
[72] *Id.*

However, it is critical to note in *Word of Faith,* the Fifth Circuit *did* order abstention.[73]  So it is fair to say that abstention is the exception because many cases involving construction of a state law do not implicate all three *Pullman* factors.  Yet, where the *Pullman* factors are all satisfied, the Fifth Circuit states that abstention is "ordinarily" required.

Judge Umphress also urges that abstention is "heavily disfavored" in First Amendment and vagueness claims.  The cases he relies upon emphasize considerations when (i) vagueness "may inhibit the exercise of First Amendment freedoms" and (ii) there is "facial repugnance [of the statute]."[74]  (App. Br. 37-42).  These cases are easily distinguishable because of two critical facts: (i) Judge Umphress has not been "inhibited" from continuing to engage in the activities for which he seeks protection, and instead he continues to engage in them[75]; and (ii) his challenge is not a facial challenge.  He admits that.[76]

---

[73]  "In short, the unsettled questions regarding the application of state law in this case, depending upon how a state court would resolve them, could have mooted the federal constitutional issue. … *Pullman* seems tailor-made for application to this case, where we must take care to 'avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication.'" Id. at 968-699.

[74] *Baggett v. Bullitt*, 377 U.S. 360, 378-79 (1964) (Vagueness "may inhibit the exercise of First Amendment freedoms"),  *Procunier v. Martinez,* 416 U.S. 396, 404  (1974) (Facial repugnance.).

[75]  *See* Appendix 5, Judge Brian Keith Umphress' Affidavit, ROA. 146.and *Umphress v. Hall,* 2020 U.S. Dist. LEXIS 211164 *8.

[76]  "*Although Judge Umphress has not challenged Canon 4A(1) on its face, he is attacking the canon as applied* to judges who refuse to perform same-sex wed dings, and he has alleged that the Commission is "discouraging" protected First Amendment activities by threatening to discipline judges who express disapproval of homosexual behavior." (Emphasis added). Plaintiff's Response to Motion to Abstain, p. 6; ROA. 391,

Contrary to what is persistently, but incorrectly, argued by Judge Umphress, Fifth Circuit cases, even those involving First Amendment rights, do not portray *Pullman* abstention as "disfavored." Instead, as noted above, the cases firmly state abstention "ordinarily" should be applied.[77] Discretion is involved in the trial court's determination, but when the three *Pullman factors* are all present, as here, abstention is the rule, not the exception.

In this case, the district court soundly exercised his discretion when he weighed all the facts and astutely focused on a critical point in this case, *i.e.,* that there is a pending suit, in Texas state court that addresses "an issue of uncertain state law" for Judge Umphress' case.  The district court summarized the bedrock issue as follows:

> "Here, Judge Umphress makes federal constitutional challenges to state action.  FAC at ¶¶ 37-54.  Judge Hensley's currently pending state court suit addresses the state law grounds on which Judge Umphress claims would be decided.  *Hensley v. State Commission on Judicial Conduct et al.*, No. D-1-GN-20-003926 in the 459th District Court of Travis County, Texas, Petition ¶¶ 80-81.  Should the Texas district court decide the issues in Judge Hensley's favor, it would render any federal constitutional decision by this Court unnecessary." [78]

### c.  How Should Jurisprudential Considerations be Weighed?

---

[77]  The Fifth Circuit sternly admonished a district court for failing to abstain in *Texas Democratic Party v. Abbott,* 961 F.3d 389 (5th Cir.), *motion to vacate denied*, 140 S.Ct. 2015 (2020);  ("In an order that will be remembered more for audacity than legal reasoning, the district judge intervenes just weeks before an election, entering a sweeping preliminary injunction that requires state officials, *inter alia*, to distribute mail-in ballots to any eligible voter who wants one.  But because the spread of the Virus has not given "unelected federal jud[ges]" a roving commission to rewrite state election codes, we stay the preliminary injunction pending appeal.").

[78] *Umphress v. Hall*, 2020 U.S. Dist. LEXIS 211164 * 8; Appendix 1.

### 1. Delay Is Not Determinative in This Case.

In this case, even assuming some delay or "urgency," which is not demonstrated, any such considerations are subordinate to the important principles of abstention, comity, and avoidance of unnecessary constitutional questions. This is because (i) Judge Umphress could have prevented any delay by presenting his questions to a State court, if indeed there is jurisdiction for the questions he poses; (ii) since Judge Hensley's suit against the Commission was filed on December 17, 2019 and her able counsel is also Judge Umphress' counsel, Judge Umphress could have joined in that action instead of delaying to file this suit on March 18, 2020;[79] and (iii) as the district court concluded, the passage of time has not deterred or inhibited or "chilled" him from engaging in any conduct that he desires.[80]

Judge Umphress has created his own alleged "urgency." Judge Umphress, represented by the same able counsel as Judge Hensley, chose to file his separate suit three months after Judge Hensley suit was filed. That three month lag in time from the filing of Judge Hensley's suit provided a strategic opportunity for Judge Umphress to make the same attack as Judge Hensley on Canon 4A(1), but pursue decisions that Canon 4A(1) is unconstitutional in two separate forums.

---

[79] This case was filed on March 18, 2020. Judge Hensley's action against the Commission was filed on December 17, 2019. *See*, Declaration of Jacqueline Habersham, Executive Director of the Commission, ¶ 16; ROA. 61; Appendix 5.

[80] *Umphress v. Hall*, 2020 U.S. Dist. LEXIS 211164 *8; Appendix 1.

In addition, Judge Umphress' contention that his claims urgently require a federal court decision, now, because Judge Umphress has suffered "*in terrorem* effects" is not supported by the record. The record shows to the contrary: (i) he has never been threatened with any disciplinary proceeding, and (ii) he acknowledges that he continues to engage in the conduct he desires to undertake, and thus he lacks any adverse impact deterring, inhibiting, or "chilling" his continued engagement in those activities. Judge Umphress's claim that he "must risk disciplinary action if he persists" does not change the fact that he does tout his continued conduct. (App. Br. x, 34, 38 n. 16, 44).

The district court got it right when it concluded:

> "Here, Judge Umphress's complaint mentions neither a currently nor imminently pending judicial disciplinary proceeding or investigation against him. Instead, his alleged injury is a 'chilling effect' on his First Amendment rights stemming from the Commission's decision to issue a Public Warning to a different judge in a different county. FAC at ¶¶ 22-24, 31. Specifically, Judge Umphress fears that he will risk disciplinary action if he continues to refuse to officiate at same-sex marriage ceremonies or when he announces his opposition to same-sex marriage when he seeks re-election in 2022. *Id.* at ¶ 29."[81]

## 2. The Record Shows No "Threat" to Other Judges.

Judge Umphress' reference to "thousands of other judges" (App. Br. 36) who are allegedly "threatened" has no evidentiary support. The declarations presented by the Commission to the district court show (i) that at most three judges

---

[81] *Umphress v. Hall,* 2020 U.S. Dist. LEXIS 211164 *11-12; Appendix 1.

have ever had any disciplinary proceeding commenced in Texas on any matters related to gay weddings, (ii) no disciplinary proceeding has ever been initiated or adjudicated in which the only questioned conduct was a decision to marry one or more opposite-sex couples but a refusal to conduct any same-sex weddings, (iii) each of the three cases has involved additional conduct that raised questions about the appearance to objective persons whether the judge had the capacity to act impartially towards current or prospective litigants; and (iv) the only instance for which any sanction has yet been published (Judge Hensley's case, in November 2019) did not result in any appeal to contest the appropriateness of the finding or of the sanction, despite the efficient statutory *de novo* procedure available for judicial review and filed her suit.[82]

As to Judge Umphress' *other* claims of "inhibited" or "chilled" First Amendment rights, no disciplinary case has ever been initiated or adjudicated concerning (i) *any* judge's choice of church or (ii) *any* judge's campaigning on gay-rights topics.[83] The interpretation of Canon 4A(1) that Judge Umphress claims to exist has never occurred.[84] This Court should not presume that his proffered interpretation is how the Commission or a Texas court would construe Canon 4A(1);

---

[82] *See* Declaration of Jacqueline Habersham, Executive Director of the Commission ¶5; ROA. 61; Appendix 5, *See* also, Tex. Gov't Code 33.034.
[83] *See* Second Declaration of Jacqueline Habersham, Executive Director of the Commission ¶6-8; ROA. 450; Appendix 6.
[84] *Id.*

and of course this Court should not proceed to adjudicate the constitutionality of his proffered interpretation which does not exist.

### 3. The Merits of Judge Umphress' Claims Are "Weak."

Judge Umphress' brief says that when a court evaluates abstention, it may consider whether the plaintiff's claims are "exceedingly weak." (App. Br. 42). If so, that standard is met in the present case, in which Judge Umphress has built his claims on the proceeding involving Judge Dianne Hensley. Her case involved a determination from a full evidentiary record that, in the totality of the circumstances, Judge Hensley had conducted extra-judicial activities in a manner that those activities cast reasonable doubt on her capacity to act impartially. Of course, she elected not to appeal the sanction.[85]

Moreover, Judge Umphress does not hide his effort to use this suit as an attack on the Supreme Court's *Obergefell* holding.[86] (App. Br. 4, 7, 9, 13, 16, 38). Whatever one's views may be of *Obergefell*, it must be recognized that no majority of the Supreme Court has demonstrated an interest in revisiting its validity.

In addition, Judge Umphress speculates that when Judge Hensley's suit is decided at the trial court, somehow he and Judge Hensley will be left with a district court or court of appeals decision that, according to him, has no impact on the

---

[85] *See* n. 14.
[86] First Amended Complaint, ¶ 65-76, ROA. 87-114.

Commission because the Texas Supreme Court may refuse to consider the case. (App. Br. 36). His assertions are simply wrong.

Specifically, appellant argued in the district court that any decision as to Judge Hensley's case would be appealed to a "regional appellate court,"[87] and that court's decision "would have "no precedential effect outside of that state appellate district." Then he asserts that if the Texas Supreme Court declined to grant a petition for review from the 3rd District Court of Appeals in Austin, the "regional appellate court decision" would "provide no shelter to Judge Umphress or any other judge who lives outside of that district."[88]

However, Judge Umphress fails to recognize that any decision on Judge Hensley's case from the 3rd Court of Appeals will be binding on any court within the court of appeals district.[89] To suggest that a decision of the 3rd Court of Appeals has no application to judges who reside outside of that district is to ignore the Texas Constitution. Further, Judge Umphress presumes incorrectly that the Commission would ignore the decision of the 3rd Court of Appeals. The Commission is an agency

---

[87] Presumably, appellant refers to the 3rd District Court of Appeals in Austin. Any decision in Judge Hensley's case, in *Hensley v. State Commission on Judicial Conduct et al.*, No. D-1-GN-20-003926 in the 459th District Court of Travis County, Texas, would be appealed to that court of appeals.

[88] Plaintiff's Brief In Opposition to the Defendant's Motion to Abstain; ROA. 379, 397.

[89] "Said Court of Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law." Tex. Const. Art. V, § 6 (Court of Appeals; Justices; Jurisdiction).

of the judicial branch of the State of Texas vested with the responsibility to administer judicial discipline. It generally holds its meetings in Austin, clearly within the "limits of" the 3rd Court of Appeals district.[90] Certainly, the Commission is subject to that court's jurisdiction. It could not be plainer.

### 4. The *Pullman* Factors Weigh In Favor of Abstention.

Nothing in Canon 4A(1) explicitly interferes with any of the activities for which Judge Umphress seeks protection. The case law makes it clear, when a plaintiff challenges the constitutionality of state action, *Pullman* abstention is generally appropriate when (i) "an issue of uncertain state law" (ii) "is fairly subject to an interpretation [by a state court]," (iii) "which will render unnecessary or substantially modify the federal constitutional question."[91]

This case presents a solid record for the application of *Pullman* abstention. Judge Umphress' claimed interpretation of Canon 4A(1), and of its application to the specific facts and circumstances in Judge Hensley's case, is "an issue of uncertain state law." It is also a classic instance where Canon 4A(1) "is fairly subject to an interpretation by a state court"; and where that interpretation may

---

[90] "The State Commission on Judicial Conduct is a constitutionally-created agency comprised of judges, attorneys, and citizens from the State of Texas. *See* TEX. CONST. art. V, § 1-a(2); TEX. GOV'T CODE § 33.002(a-1) ('The commission is an agency of the judicial branch of state government and administers judicial discipline.')." *Hagstette v. State Comm'n on Judicial Conduct*, 2020 Tex. App. LEXIS 9838 *9 (Tex. App.-Houston [1st Dist.] 2020, no pet.).

[91] *Thompson v. Housing Authority of New Orleans*, 689 Fed.Appx. 324, 327 (5th Cir. 2017) (quoting from *Moore v. Hosemann*, *supra*).

"render unnecessary or substantially modify the federal constitution question."[92]

The considerations of comity and of avoidance of unnecessary constitutional questions dominate over any considerations of delay and of any compelling merits of Judge Umphress' complaint.

## VIII. CONCLUSION

The district court found that even in light of the alleged "threats," "bullying," and *in terrorem* concerns, Judge Umphress' conduct is unchanged. As the district court concluded, "[He] continues to engage in his allegedly chilled behavior . . . ."[93] Judge Umphress does not contest that conclusion of the district court. In fact, he admits it.[94] The law is clear. There is no "chilling" and, hence, no injury in fact when there is no deterrence shown on the record.[95] Judge Umphress has failed to show a distinct and palpable injury.[96]

The district court properly granted the Commission's motion to dismiss Judge Umphress' suit. The Commission respectfully requests that the Court of Appeals affirm the district court order of dismissal.

---

[92] *Id.*
[93] *Umphress v. Hall*, 2020 U.S. Dist. LEXIS 211164 *8; Appendix 1.
[94] App. Br. 3-4.
[95] "[C]onstitutional violations may arise from the *deterrent*, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." (Emphasis added); See *Laird v. Tatum*, 408 U.S. 1, 92 S. Ct. 2318, 2324, 33 L. Ed. 2d 154 (1972).
[96] *Meese v. Keene,* 481 U.S. 465, 472 (1987).

## CERTIFICATE OF SERVICE

I certify that on March 29, 2021, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Fifth Circuit and served through CM/ECF upon:

H. Dustin Fillmore III
Charles W. Fillmore
The Fillmore Law Firm, LLP
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiff-Appellant*

*/s/ Douglas Steward Lang*
Douglas S. Lang
*Counsel for Defendants-Appellees*

# CERTIFICATE OF COMPLIANCE

     1.  This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 11,588, excluding the parts of the brief exempted by Fed. R. App. P. 32(f ).

     2.  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Times New Roman 14-point type face throughout, and Times New Roman is a proportionally spaced typeface that includes serifs.

Dated: March 29, 2021

*/s/ Douglas Steward Lang*
Douglas S. Lang
*Counsel for Defendants-Appellees*

**CERTIFICATE OF ELECTRONIC COMPLIANCE**

Counsel also certifies that on March 29, 2021, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through the court's CM/ECF document filing system, https://ecf.ca5.uscourts.gov/

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.

*/s/ Douglas Steward Lang*
Douglas S. Lang
*Counsel for Defendants-Appellees*