No. 20-11216

# In the United States Court of Appeals for the Fifth Circuit

---

BRIAN KEITH UMPHRESS,

*Plaintiff-Appellant*,

v.

DAVID C. HALL, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE STATE COMMISSION ON JUDICIAL CONDUCT, ET AL

*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Case No.  4:20-cv-53

---

## SUPPLEMENTAL BRIEF RESPECTING QUESTION OF MOOTNESS OF PLAINTIFF'S CLAIMS

---

# CERTIFICATE OF INTERESTED PERSONS

Counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff | Plaintiff's Counsel |
|---|---|
| • Brian Keith Umphress | Jonathan F. Mitchell<br>MITCHELL LAW PLLC<br><br>H. Duston Fillmore<br>Charles W. Fillmore<br>THE FILLMORE LAW FIRM LLP |
| **Defendants** | **Defendants' Counsel** |
| • David C. Hall<br>• Janis Holt<br>• David M. Patronella<br>• Darrick L. McGill<br>• Sujeeth B. Draksharam<br>• Ronald Bunch<br>• Valerie Ertz<br>• Frederick C. Tate<br>• M. Patrick Maguire<br>• David Schenck<br>• Steve Fischer<br>• Clifton Roberson | Douglas S. Lang<br>THOMPSON COBURN LLP<br><br>David Schleicher<br>SCHLEICHER LAW FIRM, PLLC<br><br>Roland K. Johnson<br>HARRIS FINLEY & BOGLE, P.C.<br><br>Ross G. Reyes<br>LITTLER MENDELSON, PC |
| **Former Defendant** | |
| 1. Ruben Reyes | |

*/s/ Douglas Steward Lang*
Douglas S. Lang
*Counsel for Defendants-Appellees*

# **APPENDIX**

1.  Public Warning issued to Justice of the Peace Diane Hensley, November 12, 2019. (Public Warning).

2.  Canon 4A(1), Texas Code of Judicial Conduct

3.  Public Statement of September 9, 2024. (Public Statement).

4.  *Hensley v. State Commission on Judicial Conduct*, 692 S.W.3d 184 (Tex. 2024) (Copy of opinion).

5.  *Umphress v. State Commission on Judicial Conduct*, 500 F.Supp.3d 553 (N.D.Tex. 2020), (Copy of opinion), ROA.489-506.

# TABLE OF CONTENTS

**Page**

I.    Introduction....................................................................................1

II.   Background of This Case...............................................................1

III.  Questions Submitted by this Court.............................................10

    A.    Question 1) Does the decision of the Supreme Court of Texas in *Hensley v. State Commission on Judicial Conduct*, 692 S.W.3d 184 (Tex. 2024), or the Commission's withdrawal on September 9, 2024, of the Public Warning issued to Judge Hensley moot any issue in the present appeal in this court? .....................................10

        1.    Umphress Moot Claim: "Judge Umphress Seeks A Declaratory Judgment That Nothing In *Obergefell* Or The U.S. Constitution Requires Judges To Officiate At Same-Sex Marriage Ceremonies.".......................................10

        2.    Umphress Moot Claim: "Judge Umphress Seeks A Declaratory Judgment That The First Amendment Protects His Right Not To Officiate At Same-Sex Marriage Ceremonies.".............................................11

        3.    Umphress Moot Claim: "Judge Umphress Seeks A Declaratory Judgment That Canon 4A(1), As Interpreted By The State Commission On Judicial Conduct, Is Unconstitutionally Vague.".......................................13

        4.    Umphress Moot Claim: "Judge Umphress Seeks A Declaratory Judgment That The Commissioners Are Violating The Free Exercise Clause By Threatening Judges Who Recuse Themselves From Officiating At Same-Sex Marriage Ceremonies On Account Of Their Religious Faith." .....................................14

        5.    Umphress Moot Claim:  *Obergefell* should be overruled.........14

    B.    Question 2) Does the *Hensley* decision or the Commission's withdrawal on September 9, 2024, of the Public Warning issued

to Judge Hensley affect the Appellant's standing to pursue this case? ...................................................................................15

C.    Question 3) Does the *Hensley* decision affect whether federal courts should abstain under the *Pullman* doctrine? ...........................16

D.    Question 4) Should this court certify the following questions to the Supreme Court of Texas: ................................................................17

IV.    Conclusion. ....................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) ..................................................................................3, 8

*Association of American Physicians and Surgeons Educational Foundation v. American Board of Internal Medicine*, 103 F.4th 383 (5th Cir. 2024) ...........................................................................6, 8

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 298, 99 S.Ct. 2301 ..............................................................................................3

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413 (5th Cir. 2013) ...........................................................................6

*Hensley v. State Commission on Judicial Conduct*, 692 S.W.3d 184 (Tex. 2024) (Appendix 4.) ............................................... *passim*

*Laird v. Tatum*, 408 U.S. 1 (1972) ..........................................................3

*Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009) .................8, 9

*Spell v. Edwards*, 962 F.3d 175 (5th Cir. 2020) ...............................6, 7, 8

*Umphress v. Hall*, 500 F.Supp.3d 553 (N.D.Tex. 2020) ................... *passim*

*Younger v. Harris*, 401 U.S. 37 (1971) ..............................................3, 16

**Statutes and Constitutional Provisions**

Texas Administrative Procedure Act .................................................13, 14

Texas Civil Practice & Remedies Code § 110.003 ....................................4

Texas Civil Practice & Remedies Code § 110.005 ....................................4

Texas Religious Freedom Restoration Act ...........................................4, 6

**Other Authorities**

First Amendment ............................................................................ *passim*

Fourteenth Amendment ............................................................................10

Public Statement of September 9, 2024 (App. 3), (Available at
    https://www.scjc.texas.gov/media/47042/ps-2024-1.pdf)................................5, 6

Texas Constitution ....................................................................................8

U.S. Constitution......................................................................................10

To the Honorable Judges of Said United States Court of Appeals for the Fifth Circuit:

Come now David Hall, et al., Appellees (State Commission on Judicial Conduct or Commission) and present this Supplemental Brief Respecting A Question of Mootness of Plaintiff's Claims and would show this Court the following:

## I.     Introduction.

By letter of October 15, 2024, this Court directed each of the parties to provide supplemental briefing on or before October 25, 2024, regarding the question of mootness of Appellant Umphress' claims. Also, this Court directed the parties to provide supplemental reply briefs respecting each party's initial supplemental briefing on or before November 1, 2024.

The Commission presents below the facts and the law which demonstrate Appellant Umphress' appeal and suit should be dismissed for mootness. The grounds previously relied on by the District Court for dismissing this case remain meritorious.[1] However, the new element of mootness makes it unnecessary to resolve Appellant's points on appeal.

## II.     Background of This Case.

Umphress claims his First Amendment rights of the Free Exercise of Religion have been "chilled" by the Commission's issuance of a Public Warning Sanction

---

[1] The District Court concluded in part, Umphress' suit must be dismissed because (i) Appellant Umphress has no standing, (*Umphress v. Hall*, 500 F.Supp.3d 553, 561 (N.D.Tex. 2020)) and (ii) no controversy was ripe for Article III purposes, (*Id.* at 562) and (iii) even if there were standing and ripeness, the circumstances of Appellant Umphress' allegations would require *Pullman* abstention. (*Id.* at 564). (App. 5).

against Justice of the Peace Diane Hensley for certain conduct described in the

Public Warning ruling as follows:

> "2. On June 24, 2017, the Waco Tribune newspaper published an article on their website entitled *No Courthouse Weddings in Waco for Same-sex Couples, 2 Years After Supreme Court Ruling* which reported that Justice of the Peace Dianne Hensley "would only do a wedding between a man and a woman."
>
> 3. From August 1, 2016, to the present, Judge Hensley has performed opposite-sex weddings for couples, but has declined to perform same-sex wedding ceremonies.
>
> 4. Beginning on about August I, 2016, Judge Hensley and her court staff began giving all same-sex couples wishing to be married by Judge Hensley a document which stated "I'm sorry, but Judge Hensley has a sincerely held religious belief as a Christian, and will not be able to perform any same sex weddings." The document contained a list of local persons who would officiate a same-sex wedding. []
>
> Based upon the record before it and the factual findings recited above, the Texas State Commission on Judicial Conduct has determined that the Honorable Judge Dianne Hensley, Justice of the Peace for Precinct 1, Place 1 in Waco, McLennan County, Texas, should be publicly warned for casting doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation in violation of Canon 4A(l) of the Texas Code of Judicial Conduct."[2]

Judicial Canon 4A(1) provides in part as follows "A judge shall conduct all of

the judge' s extra-judicial activities so that they do not:  (1) cast reasonable doubt on

the judge' s capacity to act impartially as a judge; or (2) interfere with the proper

performance of judicial duties."[3]

It is that Public Warning issued to Justice of the Peace Hensley which

Umphress claims has caused him to "fear"[4] that he will be sanctioned like Hensley

because he has been conducting himself in similar ways to those for which Hensley

---

[2] Public Warning issued to Justice of the Peace Hensley. (App. 1).
[3] Canon 4A (1), Texas Code of Judicial Conduct, (App. 2).
[4] App. Br. at 30-31.

was sanctioned.[5] It is solely that Public Warning that Appellant claims causes him the "fear."[6]Appellant uses the term "threat" or "threatening" at least 51 times in his opening brief to describe why he claims "fear" regarding the Hensley Public Warning.[7] However, the record demonstrates there has been no "threat" of action against him.[8]

The mootness of Umphress' claims is proven by two developments respecting Hensley's Public Warning and litigation she initiated against the Commission. Both of those developments transpired after the parties appeared before this Court for oral submission in July 2022.

First, the Texas Supreme Court ruled on Hensley's appeal from the dismissal for lack of jurisdiction of her suit brought against the Commission.[9] After the issuance of the Public Warning, Hensley refused to appeal the Public Warning as

---

[5] *See Umphress v. Hall*, 500 F.Supp.3d at 560.("Judge Umphress also does not appear to be chilled in his current actions. He continues to (1) attend the same church that he attended before he knew of the public warning to Judge Hensley and (2) engage in the same practice that he engaged in before concerning the performance of traditional wedding ceremonies but not same-sex ceremonies. FAC at ¶¶ 27, 28. Thus, a mere bare assertion of subjectively "chilled" activity to take place over a year and a half in the future falls outside the realm of "imminent" injury and remains well within that of the "speculative." *See Clapper*, 568 U.S. at 409, 133 S.Ct. 1138; *Laird*, 408 U.S. at 13–14, 92 S.Ct. 2318; *Younger*, 401 U.S. at 42, 91 S.Ct. 746. This applies especially in cases where, not only is there no "credible threat of prosecution," but the prosecuting entity expressly and exhaustively states that it has no plans to act against Judge Umphress for partaking in the allegedly chilled activity. *See Babbitt*, 442 U.S. at 298, 99 S.Ct. 2301; Joint Status Report at 2–3; ECF No. 20.").

[6] *See* First Amended Complaint, ¶ 25. ROA.95. "The Commission's actions against Judge Hensley and its interpretation of Canon 4A(1) threaten Judge Umphress and every judge in Texas with discipline if they refuse to perform same-sex weddings, or if they conduct their any of their extra-judicial activities in a manner that evinces disapproval of same-sex marriage or homo-sexual behavior."

[7] *See* App. Br. 1, et. seq.

[8] *See* Appee. Br. 26, *Umphress v. Hall*, 500 F.Supp.3d at 559-562.

[9] *Hensley v. State Commission on Judicial Conduct*, 692 S.W.3d 184 (Tex. 2024) (Appendix 4.)

provided by law.[10]   Instead, she filed suit in Texas State District Court asserting claims pursuant to the Texas Religious Freedom Restoration Act (TRFRA)[11] seeking monetary damages, declaratory judgments, and injunctive relief.[12]   In that suit she attacked the Commission's "interpretation" of Canon 4A(1) claiming, in part, that the Commission failed to heed her affirmative defenses to the imposition of the sanction including her claim the sanction, if imposed, would violate her First Amendment Rights of the Free Exercise of Religion and her rights under TRFRA.

At the time the parties in this case appeared for oral submission in July 2022, Hensley's suit had just then been dismissed by the 459th District County in Travis County, Texas for among other reasons, the lack of jurisdiction.[13]   Hensley appealed to the Texas Third District Court of Appeals in Austin which affirmed. Next, Hensley perfected her appeal to the Texas Supreme Court. That Court affirmed the Third District Court of Appeals' decision dismissing part of her suit,[14] reversed as to several jurisdictional grounds upon which the trial court relied for dismissal of certain of Hensley's claims, and remanded the case to the Third District Court of Appeals for further consideration of remaining issues.[15]

---

[10] *Id.* at 191, ("Hensley was entitled to appeal the Public Warning to an SCR composed of three justices of the courts of appeals selected at random by the Chief Justice of this Court. A judge must file a written request for an SCR within 30 days after the date the Commission issues its decision. Hensley did not do so." (footnotes omitted).).

[11] Texas Civil Practice & Remedies Code § 110.003.

[12] *Id.* § 110.005.

[13]*Hensley v. State Commission on Judicial Conduct*, 692 S.W.3d at 190.

[14] *Hensley v. State Comm'n on Jud. Conduct,* 692 S.W.3d at 201 (The Supreme Court ruled in part "The lower courts correctly concluded that the Commission's sovereign immunity is not waived for Hensley's request for a declaration regarding Canon 4A.").

[15] *See* n. 4, *supra.*

Hensley alleged in her suit that the Commission's decision to warn her violated her statutorily protected constitutional right to free exercise of religion.[16] The Supreme Court concluded in that regard,

"[t]hough the Commission does have the discretion to issue informal warnings,[85][citing TEX. CONST. art. V, § 1-a(8)] the commissioners' discretion to issue a warning *over a TRFRA defense* is necessarily of the *limited* sort because the Commission does not have absolute discretion to interpret and apply TRFRA. Because the commissioners' discretion in interpreting and applying TRFRA is limited, a claim that alleges that the Public Warning violated TRFRA is a sufficient ultra vires allegation to survive a plea to the jurisdiction."[17]

With that holding the Texas Supreme Court has made it clear the Commission's authority to sanction a judge is "limited" in the respect that the decision of the Commission as to TRFRA or constitutional claims by a judge do not preclude assertion of those positions outside of the Commission's "informal" proceedings. So, when Umphress claims he "fears" the Commission will sanction him for his conduct similar to that of Justice of the Peace Hensley, on this record, assuming he would assert a constitutional defense or would take other action in a Texas court of law, he is not without the opportunity to contest any denial of a judge's constitutional positions.

Now, a second critical and determinative event occurred involving Hensley and the Commission which further supports a decision that Appellant's claims are

---

[16] *Id.* at 196.
[17] Hensley v. State Comm'n on Jud. Conduct, 692 S.W.3d at 201.

moot.  On September 9, 2024, the Commission issued a Public statement, posted on its public website, officially withdrawing the Hensley Public Warning.[18]  The Public Statement made it plain and clear the Commission fully understood the opinion and conclusion of the Supreme Court. So, the Commission made a deliberate statement and concluded the Public Warning must be withdrawn.[19]  As the law of Texas, the decision of the Texas Supreme Court will not be ignored by the Commission. Rather, the Commission will assiduously adhere to the ruling.

The Withdrawal of the Public Warning was not some doubtful ruse to create mootness.[20]  In other words, this is not a situation where a plaintiff can invoke the "voluntary cessation exception" to mootness. The voluntary cessation exception requires courts to examine defendant-induced mootness cautiously.[21]  This Court has

---

[18] Public Statement of September 9, 2024 (App. 3), (Available at https://www.scjc.texas.gov/media/47042/ps-2024-1.pdf).

[19] *See* Public Statement (App. 3), "The Texas Supreme Court issued its opinion in the Hensley Case on June 28, 2024, which decided that Judge Hensley's suit was not barred by her decision not to appeal her Public Warning because the Special Court of Review has limited power, and the Special Court of Review could not finally decide whether Judge Hensley was entitled to the relief sought in the case or award the relief provided by the Texas Religious Freedom Restoration Act.

The current Commissioners on the State Commission on Judicial Conduct were not Commissioners at the time the Public Warning was issued. The current Commissioners have reviewed the facts that formed the basis of the Public Warning issued to Judge Hensley. *The State Commission on Judicial Conduct has decided to withdraw the Public Warning issued to Judge Hensley, in light of the decision handed down by the Texas Supreme Court and the underlying facts and evidence regarding the Public Warning. This sanction will be removed from the Commission's website and the complaint is considered dismissed."* (Emphasis added).

[20] *See Association of American Physicians and Surgeons Educational Foundation v. American Board of Internal Medicine*, 103 F.4th 383, 395 (5th Cir. 2024),  (In other words, "'[m]ootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff.' *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (citing *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998)). '[A] case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed.' *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020). But plaintiffs can invoke the voluntary cessation exception when this happens.")

[21] *Id. Umphress's "fears."*

also determined that government defendants enjoy a "good faith carveout;" that is, "[w]hen governmental officials voluntarily cease potentially wrongful conduct, we 'presume that [they], as public representatives, act in good faith.'"[22] This Court continued its analysis saying, "[w]ithout evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing."[23]

The Public Statement by the Commission makes its position clear that it fully understands it is bound by the Supreme Court. Without equivocation, the Commission said in that Public Statement,

"[the Supreme Court decided that] Judge Hensley's suit was not barred by her decision not to appeal her Public Warning because the Special Court of Review has limited power, and the Special Court of Review could not finally decide whether Judge Hensley was entitled to the relief sought in the case or award the relief provided by the Texas Religious Freedom Restoration Act. [] [The Commission] *has decided to withdraw the Public Warning issued to Judge Hensley, in light of the decision handed down by the Texas Supreme Court and the underlying facts and evidence regarding the Public Warning.*"[24]

The withdrawal of the Hensley Public Warning definitely moots Umphress's claims since he asserts in his opening brief in this Court all he needed to show to demonstrate the "injury" necessary to proceed with his claims is the fact that Judge

---

[22] *Id.*

[23] *Id.*, (Citing *Sossamon v. Lone Star State of Texas*,, 560 F.3d 316, 325 (5th Cir. 2009).).

[24] See n. 20, *supra.*

Hensley had been sanctioned.[25] However, the Public Warning is extinguished. Umphress' sole claim of "fear" and therefore "injury" no longer exists.

Even had the Public Warning not been withdrawn, Umphress' standing was non-existent. The entire basis for his "fears" were dubious. As the District Court stated in undisputed findings, there was no disciplinary action pending and there were no plans by Commission to initiate discipline.[26] Also, the District Court concluded,

> "Judge Umphress also does not appear to be chilled in his current actions. He continues to (1) attend the same church that he attended before he knew of the public warning to Judge Hensley and (2) engage in the same practice that he engaged in before concerning the performance of traditional wedding ceremonies but not same-sex ceremonies. FAC at ¶¶ 27, 28. Thus, a mere bare assertion of subjectively "chilled" activity to take place over a year and a half in the future falls outside the realm of "imminent" injury and remains well within that of the 'speculative.'" [27]

Umphress' source of "fear," while questionable, is gone.

Mootness of Umphress' claims is unquestionable. As the Supreme Court of the United States and this Court have concluded, "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[28]

---

[25] App. Br. at 31.

[26] *Umphress v. Hall*, 500 F.Supp.3d at 558-561.

[27] *Id.* at 560.

[28] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) (quotation omitted); *Association of American Physicians and Surgeons Educational Foundation v. American Board of Internal Medicine*, 103 F.4th 383, 395 (5th Cir. 2024); *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009).

The *Sossamon* case is particularly applicable to the status of this case. The withdrawal of the Public Warning fits precisely into the category of what this Court referred to in *Sossamon* as "cessation of possibly allegedly wrongful conduct"[29] and that conduct in the form of the Hensley Public Warning which has been withdrawn by the Commission is precisely the basis for Umphress' claims.[30]   When the Commission's withdrawal of the Public Warning is compounded with the Supreme Court's decision respecting the Commission's "limited" power, this Court should consider it is "justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed."[31]

In the course of this mootness analysis, Umphress cannot credibly continue to assert he "fears" he will be sanctioned by the Commission for his actions that are similar to those for which Hensley was sanctioned.  Any such claim is obviously unsound. Purely and simply any such "fears," as a matter of law, are extinguished along with the withdrawal of the Public Warning.

---

[29] *Sossamon v. Lone Star State of Texas, 560 F.3d 316 (5th Cir. 2009).*
[30] *See* First Amended Complaint, ¶ 25. ROA. 94, "The Commission's actions against Judge Hensley and its interpretation of Canon 4A(1) threaten Judge Umphress and every judge in Texas with discipline if they refuse to perform same-sex weddings, or if they conduct their any of their extra-judicial activities in a manner that evinces disapproval of same-sex marriage or homo-sexual behavior."
[31] *Sossamon v. Lone Star State of Texas*, 560 F.3d at 325.

### III.    Questions Submitted by this Court.

**A.    Question 1) Does the decision of the Supreme Court of Texas in *Hensley v. State Commission on Judicial Conduct*, 692 S.W.3d 184 (Tex. 2024), or the Commission's withdrawal on September 9, 2024, of the Public Warning issued to Judge Hensley moot any issue in the present appeal in this court?**

The short answer is "yes" to both parts of the above question.

As described above, two developments completely deflate and extinguish any basis for Umphress' claims. His claims are simply moot.

In his First Amended Complaint and his Opening Brief, Umphress makes these now moot claims which focus on the previously issued and now withdrawn Public Warning:

> **1.    Umphress Moot Claim: "Judge Umphress Seeks A Declaratory Judgment That Nothing In *Obergefell* Or The U.S. Constitution Requires Judges To Officiate At Same-Sex Marriage Ceremonies."[32]**

Umphress acknowledges "judges must respect and follow *Obergefell*'s interpretation of the Fourteenth Amendment when deciding cases or controversies []." *Id.* However, he also claims when judges officiate at wedding ceremonies, they are not exercising judicial powers.[33] So, according to Umphress, *Obergefell* does not compel judges to conduct wedding ceremonies for same-sex couples.

---

[32] App. Br. 4.
[33] *Id.*

Nevertheless, Umphress' position on the propriety of the *Obergefell* decision is not a litigation decision of the Commission made when it rendered the Public Warning.

Furthermore, the Commission does not come before this Court to defend the Public Warning or *Obergefell*. The Texas Supreme Court has spoken, and the Public Warning has been withdrawn. It is no longer in effect. All substance of the Public Warning is erased. Umphress' effort to relitigate *Obergefell* and/or the validity of the Public Warning is moot.

> **2.    Umphress Moot Claim: "Judge Umphress Seeks A Declaratory Judgment That The First Amendment Protects His Right Not To Officiate At Same-Sex Marriage Ceremonies."[34]**

In his opening brief on appeal, Umphress explained his position like this, "[] Umphress' second claim sought a declaratory judgment that the First Amendment protects his right to refuse to officiate at same-sex marriage ceremonies, even if he chooses to continue performing opposite-sex weddings. ROA.22-24."[35] Also, explained his position in this way, "[] Umphress also sought a declaration that judicial 'impartiality' canons may not be interpreted or enforced in a manner that violates a judge's First Amendment freedoms in this regard. ROA.22 (citing Republican Party of Minnesota v. White, 536 U.S. 765 (2002))."[36]

---

[34] *Id.* at 5.
[35] *Id.*
[36] *Id.*

While the Commission appreciates Umphress' acknowledgment of its responsibility to "preserve the judiciary's appearance of impartiality," there is no longer a justiciable issue to try.[37]   This second claim seeks a blanket advisory decision by this Court to shield him from any interpretation of Canon 4A(1) that holds "opposition to same-sex marriage or homosexual behavior is regarded as a display of bias against homosexual litigants, then no judge can belong to a church that opposes same-sex marriage or teaches that homosexual conduct is immoral. ROA.23-24."[38] That point is moot.

The Texas Supreme Court made it clear, the Commission has "limited power" to decide Constitutional issues. Accordingly, the Commission fully understands and accedes to the direction of the Texas Supreme Court.  That directive the Commission will not buck.  Nothing is left for this Court to decide. Umphress' claims, even assuming without agreeing there might be jurisdiction, are moot.

An additional declaratory judgment sought by Umphress is that the First Amendment protects his right to join, support, and worship at a church that teaches that marriage can exist only between one man and one woman and that homosexual conduct is contrary to the Bible, (ROA.24).  Not only was that point not addressed in the Public Warning, were this Court to address it, the Court would be rendering

---

[37] Umphress acknowledges the "compelling interest" of the State of Texas to ensure "the impartiality of the state judiciary, as well as preserving the judiciary's appearance of impartiality—at least to the extent that "impartiality" refers to a lack of bias for or against a particular party to a court proceeding. ROA.22.
[38] App. Br. 7.

an advisory opinion.  Never the less, even if Umphress could somehow twist his argument to say the Public Warning addresses his claim, the Public Waning is extinguished.

> ### 3.    Umphress Moot Claim: "Judge Umphress Seeks A Declaratory Judgment That Canon 4A(1), As Interpreted By The State Commission On Judicial Conduct, Is Unconstitutionally Vague."[39]

Umphress claims "void for vagueness" because "the Commission's interpretation of the word 'impartiality' both 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' and 'authorizes or even encourages arbitrary and discriminatory enforcement.'"[40]

This claim is likewise moot. The only basis for Umphress to claim Canon 4A(1) is "void for vagueness" is his interpretation of why the Public Warning is in error as related to his constitutional rights. Once again, the Public Warning is erased. The Supreme Court has spoken, the Commission will follow the law, and nothing is left to decide in this case.

Furthermore, the Supreme Court of Texas also addressed a similar attack on Canon 4A(1) by Hensley.  That Court made it clear the Commission enjoys

---

[39] *Id.* at 8
[40] *Id.*

sovereign immunity from declarations regarding Canon 4A(1). Umphress makes

the identical attack which is barred by sovereign immunity.[41]

### 4. Umphress Moot Claim: "Judge Umphress Seeks A Declaratory Judgment That The Commissioners Are Violating The Free Exercise Clause By Threatening Judges Who Recuse Themselves From Officiating At Same-Sex Marriage Ceremonies On Account Of Their Religious Faith."[42]

This claim is likewise moot. The only basis for Umphress' claim is the alleged

"threat" regarding which the District Court concluded there is no evidence to show

that any "threat" was ever made.[43] Once again, the Public Warning is withdrawn.

The Supreme Court has spoken, the Commission will follow the law, and nothing is

left to decide.

### 5. Umphress Moot Claim: *Obergefell* should be overruled.[44]

As stated above, the Commission does not come before this Court at this time

to defend the Public Warning or *Obergefell*. The Texas Supreme Court has spoken

and the Public Warning has been withdrawn. It is no longer in effect. All substance

---

[41] *See Hensley v. State Comm'n on Jud. Conduct,* 692 S.W.3d at 201 (The Supreme Court ruled in part "Hensley also argues that the Commission's sovereign immunity from her claim is waived by the Texas Administrative Procedure Act, which provides that '[t]he validity or applicability of a rule ... may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.' A 'rule' is defined as 'a state agency statement of general applicability'. The definition of 'state agency' expressly excludes courts. Canon 4A is not a rule promulgated by a state agency.

The lower courts correctly concluded that the Commission's sovereign immunity is not waived for Hensley's request for a declaration regarding Canon 4A." (Footnotes omitted.).
[42] *Id.*; ROA. 27-29.
[43] *Umphress v. Hall*, 500 F.Supp.3d at 560-561.
[44] ROA. 89-114.

of the Public Warning is erased.  Umphress' effort to relitigate *Obergefell* is moot as between these parties.

None of the five claims for declaratory relief are even vaguely referenced in the Public Warning. Further, even assuming without agreeing that somehow Umphress feels "threatened" by the Public Warning, that Public Warning cannot be a threat because it no longer exists.

**B.    Question 2) Does the *Hensley* decision or the Commission's withdrawal on September 9, 2024, of the Public Warning issued to Judge Hensley affect the Appellant's standing to pursue this case?**

The answer is "yes."  Again, as credibly found by the District Court, Umphress has not shown any basis for standing to pursue his alleged claims. As a result of the Supreme Court's decision and the withdrawal of the Public Warning, Umphress cannot demonstrate any concrete harm.

As stated above, when Umphress filed his opening brief in this Court he claimed all he needed to show to demonstrate the "injury" necessary to proceed with his claims is the fact that Judge Hensley had been sanctioned.[45] However, the Public Warning is extinguished.  Further, the District Court made undisputed findings regarding there was no disciplinary action pending and there were no plans by Commission to initiate discipline.[46]

---

[45] App. Br. at 31.
[46] *Umphress v. Hall*, 500 F.Supp.3d at 558-561.

Interestingly, he cites case law that supports the Commission's position: *Younger v. Harris*, 401 U.S. 37, 42 (1971), and he acknowledges the Supreme Court of the United States firmly holds that "[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs."[47] The *Younger* case lends credence to the Commission's position that Umphress has never presented any legal basis to support his standing.

Even before the *Hensley* decision by the Texas Supreme Court, the District Court concluded Umphress' claims were indeed baseless.[48] At this point, any "fears" he might have had of being sanctioned are at most "imaginary or speculative," now that the basis of those "fears" --Hensley's sanction-- has been withdrawn.

### C.    Question 3) Does the *Hensley* decision affect whether federal courts should abstain under the *Pullman* doctrine?

The resolution of the First Amendment claims as moot and/or lacking in standing makes resolution of state law claims unnecessary. There are no issues left for this Court to decide after the issues above are resolved. The issues Umphress sought to be decided by this Court, even though he lacks standing, are resolved by the withdrawal of the Hensley Public Warning. So, in light of what is before the court now there are no subsisting issues.

---

[47] App. Br. at 31.
[48] *Umphress v. Hall*, 500 F.Supp.3d at 558-561.

In addition, Umphress' claim that seeks reversal of *Obergefell* has no traction in a suit against the Commission. All the Commission does when crafting its decisions is apply the law to the facts. It is not in a position to address *Obergefell*, it has not done so previously, and it has no interest in addressing the propriety of the *Obergefell* decision.  Nevertheless, if this court were to address Umphress' other claims enumerated above, as the District Court concluded, those are unripe questions that have not been decided, but amount to pure speculation as to how the Commission could address other issues none of which have ever been addressed or are at issue.[49]

### D.   Question 4) Should this court certify the following questions to the Supreme Court of Texas:

(a)   Does Canon 4A prohibit judges from publicly refusing, for while continuing to perform opposite-sex weddings?

(b)   if the answer to (a) is "yes," does Canon 4A violate the Texas Constitution or the Texas Religious Freedom Restoration Act?

The answer is "no."

Because Umphress' claims are moot and/or he lacks standing to continue to pursue them, issues of the interpretation of Cannon 4A, if any remain after the Supreme Court's decision,[50] are best left for resolution in the ongoing Hensley case.

---

[49] *Id.* at 561-562.
[50] See n. 39, *supra*.

**IV.     Conclusion.**

When the Commission's withdrawal of the Public Warning is compounded with the Supreme Court's decision , it is respectfully submitted that this Court should rule all of the claims asserted by Umphress are moot.  Accordingly, this appeal and Umphress' claims should be dismissed.

Appellees respectfully pray for the relief requested above.


Dated: October 25, 2024.                    Respectfully submitted,

By: */s/ Douglas S. Lang*

**Thompson Coburn LLP**
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201
Tel Phone: (972) 629-7100
Fax: (972) 629-7171
dlang@thompsoncoburn.com

**COUNSEL FOR DEFENDANTS-APPELLEES**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served via this Court's electronic case filing system on October 25, 2024.

*/s/ Douglas S. Lang*
Douglas S. Lang
*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 27 because, excluding the parts of the document exempted: this document contains 2,367 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 27, and 5th Cir. R. 27 and the type-style requirements because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

Dated:  October 25, 2024

/s/ Douglas S. Lang
Douglas S. Lang
*Counsel for Defendants-Appellees*

# APPENDIX 1

# Public Warning issued to Justice of the Peace Diane Hensley, November 12, 2019 (Public Warning)



# BEFORE THE STATE COMMISSION
# ON JUDICIAL CONDUCT

## CJC No. 17-1572

## PUBLIC WARNING

### HONORABLE DIANNE HENSLEY
### JUSTICE OF THE PEACE, PRECINCT 1, PLACE 1
### WACO, McLENNAN COUNTY, TEXAS

During its meeting on October 9-11, 2019, the State Commission on Judicial Conduct concluded a review of allegations against the Honorable Dianne Hensley, Justice of the Peace, Precinct 1, Place 1, Waco, McLennan County, Texas. Judge Hensley was advised by letter of the Commission's concerns and provided written responses. Judge Hensley appeared with counsel before the Commission on August 8, 2019, and gave testimony. After considering the evidence before it, the Commission enters the following findings and conclusions:

### FINDINGS OF FACT

1.  At all times relevant hereto, the Honorable Dianne Hensley was Justice of the Peace for Precinct 1, Place 1, in Waco, McLennan County, Texas.

2.  On June 24, 2017, the Waco Tribune newspaper published an article on their website entitled *No Courthouse Weddings in Waco for Same-sex Couples, 2 Years After Supreme Court Ruling* which reported that Justice of the Peace Dianne Hensley "would only do a wedding between a man and a woman."

3.  From August 1, 2016, to the present, Judge Hensley has performed opposite-sex weddings for couples, but has declined to perform same-sex wedding ceremonies.

4.  Beginning on about August 1, 2016, Judge Hensley and her court staff began giving all same-sex couples wishing to be married by Judge Hensley a document which stated "I'm sorry, but Judge Hensley has a sincerely held religious belief as a Christian, and will not be able to perform any same sex weddings." The document contained a list of local persons who would officiate a same-sex wedding.

5.    Judge Hensley told the Waco-Tribune, the public and the Commission that her conscience and religion prohibited her from officiating same-sex weddings.

6.    At her appearance before the Commission, Judge Hensley testified that she would recuse herself from a case in which a party doubted her impartiality on the basis that she publicly refuses to perform same-sex weddings.

## RELEVANT STANDARD

Canon 4A(1) of the Texas Code of Judicial Conduct states "A judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge...."

## CONCLUSION

Based upon the record before it and the factual findings recited above, the Texas State Commission on Judicial Conduct has determined that the Honorable Judge Dianne Hensley, Justice of the Peace for Precinct 1, Place 1 in Waco, McLennan County, Texas, should be publicly warned for casting doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation in violation of Canon 4A(1) of the Texas Code of Judicial Conduct.

The Commission has taken this action pursuant to the authority conferred it in Article V, §1-a of the Texas Constitution in a continuing effort to promote confidence in and high standards for the judiciary.

Issued this the 12th day of November, 2019.

_David Hall_

David Hall
Chairman, State Commission on Judicial Conduct

2

# APPENDIX 2

# Canon 4A(1), Texas Code of Judicial Conduct

## Canon 4. Conducting the Judge's Extra-Judicial Activities to Minimize the Risk of Conflict With Judicial Obligations

### A. Extra-Judicial Activities in General.
A judge shall conduct all of the judge's extra-judicial activities so that they do not:
  (1) cast reasonable doubt on the judge's capacity to act impartially as a judge []."

V.T.C.A., Govt. Code T. 2, Subt. G App. B, Jud. Conduct, Canon 4

# APPENDIX 3

# Public Statement of September 9, 2024 (Public Statement)



# STATE COMMISSION ON JUDICIAL CONDUCT

### PUBLIC STATEMENT
### No. PS-2024-1

In November of 2019, the State Commission on Judicial Conduct Commission issued a Public Warning to Dianne Hensley for casting doubt on her capacity to act impartially to persons appearing before her as a judge based on sexual orientation, in violation of Canon 4A(1) of the Texas Code of Judicial Conduct. In December of 2019, Judge Hensley filed a lawsuit against the Commission and its officers in District Court in McLennan County under the Texas Religious Freedom Restoration Act. (the "Hensley Case"). After the case was decided by the District Court and the Court of Appeals, the Texas Supreme Court granted review. The Texas Supreme Court issued its opinion in the Hensley Case on June 28, 2024, which decided that Judge Hensley's suit was not barred by her decision not to appeal her Public Warning because the Special Court of Review has limited power, and the Special Court of Review could not finally decide whether Judge Hensley was entitled to the relief sought in the case or award the relief provided by the Texas Religious Freedom Restoration Act.

The current Commissioners on the State Commission on Judicial Conduct were not Commissioners at the time the Public Warning was issued. The current Commissioners have reviewed the facts that formed the basis of the Public Warning issued to Judge Hensley. The State Commission on Judicial Conduct has decided to withdraw the Public Warning issued to Judge Hensley, in light of the decision handed down by the Texas Supreme Court and the underlying facts and evidence regarding the Public Warning. This sanction will be removed from the Commission's website and the complaint is considered dismissed.

The Commission issues this public statement pursuant to the authority granted to it by Article V, Section 1-a(10) of the Texas Constitution, which provides that such action may be taken when sources other than the Commission cause notoriety concerning a judge or the Commission itself and the Commission determines that the best interests of a judge or of the public will be served by issuing the statement.

This public statement is intended to help preserve the integrity of the judiciary in the State of Texas, to promote public confidence in the judiciary, and to encourage judges to maintain high standards of professional conduct.

Signed this _9th_ day of September, 2024.

_____
Gary Steel, Chair
State Commission on Judicial Conduct

# APPENDIX 4

# *Hensley v. State Commission on Judicial Conduct,*
# **692 S.W.3d 184 (Tex. 2024)**
# **(copy of Opinion)**

692 S.W.3d 184
Supreme Court of Texas.

Dianne HENSLEY, Petitioner,
v.
STATE COMMISSION ON JUDICIAL CONDUCT
et al., Respondents

No. 22-1145
|
Argued October 25, 2023
|
OPINION DELIVERED: June 28, 2024

**Synopsis**
**Background:** Justice of the peace brought suit against State Commission on Judicial Conduct and Commission officials, alleging that Commission's investigation and sanction of her for refusing to perform same-sex weddings was an ultra vires act which violated the Texas Religious Freedom Restoration Act (TRFRA) and the right to freedom of speech under the Texas Constitution. The 459th District Court, Travis County, Jan Soifer, J., granted Commission's and officials' plea to the jurisdiction and dismissed the case. Justice petitioned for review, which was granted, and the Austin Court of Appeals, Baker, J., 683 S.W.3d 152, affirmed. The Supreme Court granted justice's petition for review.

**Holdings:** The Supreme Court, Hecht, C.J., held that:

[1] justice of the peace was not required to exhaust her administrative remedies prior to bringing a suit to recover for violations of her rights under TRFRA and the Free Speech Clause;

[2] notice sent by justice of the peace to the Commission was sufficient to invoke the TRFRA and its waiver of sovereign immunity;

[3] statute providing that Commission was immune from liability did not create immunity from suit;

[4] waivers of sovereign immunity found in the Uniform Declaratory Judgment Act (UDJA) and Texas Administrative Procedures Act (APA) did not apply to justice's request for declaratory relief; and

[5] justice's allegation that Commission violated the

TRFRA was sufficient to state a claim that the Commission engaged in an ultra vires act.

Affirmed in part, reversed in part, and remanded.

Blacklock, J., filed concurring opinion in which Devine, J., joined.

Young, J., filed concurring opinion.

Lehrmann, J., filed dissenting opinion.

**Procedural Posture(s):** Petition for Discretionary Review; Plea to the Jurisdiction.

West Headnotes (28)

**[1]    Judges** ⚖ Standards, canons, or codes of conduct, in general

Judges, by their constitutionally mandated oath of office, and to promote public confidence in the integrity and impartiality of the judiciary, must carefully and faithfully follow the law in all judicial proceedings, irrespective of their purely personal views. Tex. Const. art. 16, § 1(a); Tex. Code Jud. Conduct, Canon 2(A).

**[2]    Judges** ⚖ Standards, canons, or codes of conduct, in general

While judges may have rights to hold and express personal views outside their judicial duties, their extrajudicial actions must not cast reasonable doubt on their capacity to be equally fair to all. Tex. Code Jud. Conduct, Canon 4(A).

Hensley v. State Commission on Judicial Conduct, 692 S.W.3d 184 (2024)

67 Tex. Sup. Ct. J. 1369

**[3]**    **Judges**👈Standards, canons, or codes of conduct, in general

Judges are subject to discipline for violating the fundamental principles of integrity and impartiality. Tex. Const. art. 5, § 1-a; Tex. Gov't Code Ann. §§ 33.001, 33.051.

**[4]**    **Judges**👈Bias and Prejudice

The parties to a case may move to recuse a judge who they believe cannot be fair. Tex. R. Civ. P. 18a.

**[5]**    **Pleading**👈Plea to the Jurisdiction
**Pleading**👈Petition, complaint, declaration or other pleadings

When a plea to the jurisdiction challenges the pleadings, the court determines if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause.

**[6]**    **Courts**👈Presumptions and Burden of Proof as to Jurisdiction

District courts are presumed to have jurisdiction to resolve legal disputes. Tex. Const. art. 5, § 8.

**[7]**    **Courts**👈Presumptions and Burden of Proof as to Jurisdiction

The presumption that district courts have jurisdiction to resolve legal disputes is overcome where the Texas Constitution or another law grants exclusive jurisdiction to another court or administrative agency. Tex. Const. art. 5, § 8.

**[8]**    **Administrative Law and Procedure**👈Exclusive or original jurisdiction

A statute may grant an agency exclusive jurisdiction either expressly or by establishing a pervasive regulatory scheme that impliedly indicates that the legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.

**[9]**    **Administrative Law and Procedure**👈Exclusive or original jurisdiction

A state agency has exclusive jurisdiction when the legislature grants it sole authority to make an initial determination in disputes that arise within the agency's regulatory arena.

**[10]**    **Administrative Law and Procedure**👈Exclusive or original jurisdiction

To establish exclusive agency jurisdiction over a particular issue, there must be (1) an express or implied grant of exclusive jurisdiction and (2) the issue must fall within that jurisdictional scope.

**[11]    Administrative Law and Procedure**—Exhaustion of Administrative Remedies

If the agency has exclusive jurisdiction over a particular issue, a trial court lacks jurisdiction over a claim involving that issue until the claimant has exhausted all available administrative remedies.

**[12]    Civil Rights**—Exhaustion of Administrative Remedies Before Resort to Courts

Justice of the peace who was issued a public warning by the State Commission on Judicial Conduct based on her refusal to conduct same-sex marriages was not required to exhaust her administrative remedies by bringing an appeal to the Special Court of Review (SCR) prior to bringing a suit to recover for violations of her rights under the Texas Religious Freedom Restoration Act (TRFRA) and the Free Speech Clause of the Texas Constitution; justice's administrative remedies could have reversed the sanction but could not have mooted her claims, and the SCR was not authorized to grant either the injunctive relief she sought to prohibit future sanctions by the Commission or her requested declaration that her conduct was not sanctionable. Tex. Const. art. 1, § 8; Tex. Civ. Prac. & Rem. Code Ann. § 110.001 et seq.; Tex. Gov't Code Ann. § 33.034(a).

**[13]    Administrative Law and Procedure**—Exhaustion of Administrative Remedies

Exhaustion of administrative remedies is required so that the agency given exclusive jurisdiction can exercise it and because the administrative remedies provided may moot the claim.

**[14]    Judges**—Jurisdiction or authority to remove or discipline

The State Commission on Judicial Conduct alone is charged with enforcement of the Texas Code of Judicial Conduct through sanctions, including public warnings. Tex. Const. art. 5, § 1-a; Tex. Gov't Code Ann. § 33.002 et seq.

**[15]    Judges**—Jurisdiction or authority to remove or discipline

The State Commission on Judicial Conduct has original jurisdiction to determine whether a judge has violated a canon of the Texas Code of Judicial Conduct and, if so, the discretion to decide whether to impose a sanction. Tex. Const. art. 5, § 1-a; Tex. Gov't Code Ann. § 33.002 et seq.

**[16]    Judges**—Proceedings and Review

Because the membership of the State Commission on Judicial Conduct regularly and routinely changes by design, one group's decisions are not binding on the next. Tex. Const. art. 5, § 1-a; Tex. Gov't Code Ann. § 33.002 et seq.

**[17]**    **Judges** ⬥ Reference and review

Because it is created by statute, a Special Court of Review (SCR) appointed by the Chief Justice of the Supreme Court is limited in its powers to those expressly granted to it; the SCR been not been granted the powers of a court of general jurisdiction or authorized to give injunctive, declaratory, or compensatory relief. Tex. Const. art. 5, § 1.

**[18]**    **Administrative Law and Procedure** ⬥ Proceedings to Obtain Review

When the legislature specifies the procedures for obtaining judicial review of an agency decision, appeal of that decision must be taken in compliance with those procedures.

**[19]**    **Judges** ⬥ Reference and review

As a state agency, the State Commission on Judicial Conduct is entitled to sovereign immunity. Tex. Gov't Code Ann. § 33.002(a-1).

**[20]**    **Municipal Corporations** ⬥ Evidence

When a governmental entity challenges jurisdiction on immunity grounds, the plaintiff's burden of affirmatively demonstrating jurisdiction includes establishing a waiver of immunity.

**[21]**    **Civil Rights** ⬥ Persons Protected, Persons Liable, and Parties

Notice sent by justice of the peace to the State Commission on Judicial Conduct sufficiently stated the manner in which the exercise of governmental authority burdened her religious beliefs, as required to support her claim that the public warning issued by the State Commission on Judicial Conduct violated the Texas Religious Freedom Restoration Act (TRFRA), thereby invoking the TRFRA's waiver of sovereign immunity; the notice sent by justice after she received the tentative public warning from the Commission clearly stated that justice's religious beliefs were burdened by the Commission's investigation and threatened sanction against her for refusing to perform same-sex marriages. Tex. Civ. Prac. & Rem. Code Ann. §§ 110.006(a)(3), 110.008(a).

**[22]**    **Civil Rights** ⬥ Persons Protected, Persons Liable, and Parties

Statute providing that the State Commission on Judicial Conduct was immune from liability did not create immunity from suit, and thus the trial court had jurisdiction over the Commission and its members in action brought by justice of the peace who alleged that the public warning issued by the Commission based on her refusal to perform same-sex weddings violated the Texas Religious Freedom Restoration Act (TRFRA) and the Free Speech Clause of the Texas Constitution. Tex. Const. art. 1, § 8; Tex. Gov't Code Ann. § 33.006.

**[23]**    **Courts** ⬥ Determination of questions of jurisdiction in general
          **Pleading** ⬥ Plea to the Jurisdiction

Immunity from liability does not affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction.

---

**[24]**    **Declaratory Judgment** 🔑 State officers and boards

The waiver of sovereign immunity found in the Uniform Declaratory Judgment Act (UDJA) did not apply to action brought by justice of the peace seeking a declaration that State Commission on Judicial Conduct violated the Free Speech Clause of the Texas Constitution when it sanctioned her under the Texas Code of Judicial Conduct based on her refusal to perform same-sex marriages; the Code of Judicial Conduct was a rule promulgated by the Supreme Court and thus not an ordinance nor a statute subject to the UDJA. Tex. Const. art. 1, § 8; Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a); Tex. Code Jud. Conduct, Canon 4(A).

---

**[25]**    **Civil Rights** 🔑 Persons Protected, Persons Liable, and Parties
**Declaratory Judgment** 🔑 State officers and boards

The waiver of sovereign immunity found in the Texas Administrative Procedures Act (APA) did not apply to action brought by justice of the peace seeking a declaration that State Commission on Judicial Conduct violated the Free Speech Clause of the Texas Constitution when it sanctioned her under the Texas Code of Judicial Conduct based on her refusal to perform same-sex marriages; the Code of Judicial Conduct was a rule promulgated by the Supreme Court, which was expressly excluded from the APA's definition of "state agency" and thus not subject to a declaratory action under the APA. Tex. Const. art. 1, § 8; Tex. Gov't Code Ann. §§ 2001.038(a), 2001.038(a).

---

**[26]**    **Public Employment** 🔑 Ultra vires acts in general

Not all acts of a government official misinterpreting and misapplying a law are ultra vires.

---

**[27]**    **Public Employment** 🔑 Discretionary acts or functions
**States** 🔑 Nature and scope of immunity in general

Sovereign immunity bars suits complaining of legal errors stemming from the exercise of a state officer's absolute discretion but not suits complaining of those errors stemming from an officer's exercise of limited discretion; acts within an officer's "absolute discretion" are those where the officer exercises free decision-making without any constraints, while acts within the officer's "limited discretion" are those where the officer must exercise discretion that is otherwise constrained by the principles of law.

---

**[28]**    **Civil Rights** 🔑 Particular cases and contexts

Allegation brought by justice of the peace that public warning issued by the State Commission on Judicial Conduct sanctioning her for refusing to perform same-sex weddings violated the Texas Religious Freedom Restoration Act (TRFRA) was sufficient to state a claim that the Commission engaged in an ultra vires act, where the Commission did not have absolute discretion to interpret and apply TRFRA. Tex. Civ. Prac. & Rem. Code Ann. § 110.001 et seq.

**\*188** On Petition for Review from the Court of Appeals for the Third District of Texas

**Attorneys and Law Firms**

J. Mark Brewer, Houston, Joseph Paul Secola, for Amici Curiae U.S. Constitutional Rights Legal Defense Fund, America's Future, Public Advocate of the United States, LONANG Institute, Conservative Legal Defense and Education Fund.

Kelly J. Shackelford, Hiram S. Sasser III, Plano, Justin Butterfield, Jonathan F. Mitchell, for Petitioner.

Steven W. Fitschen, Emily K. Cook, Frederick W. Claybrook Junior, James A. Davids, for Amicus Curiae Pacific Justice Institute and National Legal Foundation.

Ross Reyes, Douglas S. Lang, Dallas, David R. Schleicher, Waco, Roland K. Johnson, Fort Worth, John J. 'Mike' McKetta III, for Respondent State Commission on Judicial Conduct.

David R. Schleicher, Waco, Douglas S. Lang, Dallas, John J. 'Mike' McKetta III, for Respondents David Schenck, in his official capacity as Chair of the State Commission on Judicial Conduct; Janis Hold, in her official capacity as Vice-Chair of the State Commission on Judicial Conduct; Frederick C. Tate, in his official capacity as Secretary of the State Commission on Judicial Conduct; and David C. Hall, David M. Petronella, Sujeeth B. Draksharam, Ronald E. Bunch, Valerie Ertz, M. Patrick Maguire, Clifton Roberson, Lucy M. Hebron, Gary L. Steel, and Katy P. Ward, in their official capacities as Members of the State Commission on Judicial Conduct.

Laura Nammo, Steven T. McFarland, Douglas Laycock, Thomas C. Berg, for Amicus Curiae Christian Legal Society.

Thomas Brejcha, Martin Whittaker, Joan Mannix, Erick Kaardal, Jonathan M. Saenz, for Amicus Curiae The Thomas More Society and Texas Values.

**Opinion**

Chief Justice Hecht delivered the opinion of the Court, in which Justice Boyd, Justice Devine, Justice Blacklock, Justice Busby, Justice Bland, Justice Huddle, and Justice Young joined.

[1] [2] [3] [4]Judges, by their constitutionally **\*189** mandated oath of office,[1] and to promote public confidence in the integrity and impartiality of the judiciary, must carefully and faithfully follow the law in all judicial proceedings, irrespective of their purely personal views.[2] And while they may have rights to hold and express personal views outside their judicial duties,[3] their extra-judicial actions must not cast reasonable doubt on their capacity to be equally fair to all.[4] Judges are subject to discipline for violating these fundamental principles.[5] And the parties to a case may move to recuse a judge who they believe cannot be fair.[6]

Petitioner, a justice of the peace,[7] is authorized by virtue of her judicial office to officiate at wedding ceremonies[8] but not required to do so as part of her judicial duties. She announced that because of her religious beliefs she would not perform weddings for same-sex couples but would refer them to others who would. No one in any case before her moved to recuse her for that reason. But the State Commission on Judicial Conduct[9] issued her a public warning (the Public Warning) "for casting doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation in **\*190** violation of Canon 4A(1) of the Texas Code of Judicial Conduct."[10] She did not avail herself of her right to appeal to a Special Court of Review (SCR)[11] but instead sued the Commission and its members and officers for violating the Texas Religious Freedom Restoration Act (TRFRA)[12] and her right to freedom of speech under Article I, Section 8 of the Texas Constitution (the Free Speech Clause).[13] The trial court dismissed her claims for want of jurisdiction, and the court of appeals affirmed.[14]

We hold that, apart from one declaratory request against the Commission,[15] petitioner's suit is not barred by her decision not to appeal the Commission's Public Warning or by sovereign immunity. Accordingly, we affirm the part of the court of appeals' judgment dismissing the one declaratory request for lack of jurisdiction, reverse the remainder of the judgment, and remand to the court of appeals to address the remaining issues on appeal.

**I**

### A

Dianne Hensley was first elected justice of the peace in McLennan County[16] in 2014 for a four-year term and has been re-elected twice since. Upon taking office, Hensley began officiating marriage ceremonies, as justices of the peace are authorized to do, charging $100 for each. At the time, same-sex marriage was unlawful in Texas.[17] But in June 2015, the United States Supreme Court decided *Obergefell v. Hodges*, holding that the U.S. Constitution "does not permit the State to bar same-sex couples from marriage on the same terms as accorded to couples of the opposite sex."[18] Hensley believes—it is undisputed, sincerely—that officiating a same-sex marriage would be inconsistent with her religious faith. So she stopped officiating marriages altogether.

To her knowledge, so did all the judges in the county at the time. Concerned that couples would lack access to a low-cost wedding, Hensley decided to resume conducting weddings for opposite-sex couples and to refer same-sex couples to others she and her staff identified in the area as willing to perform the marriages for the same $100 fee she charged. She prepared a form for her staff to hand out, which explained that she did not perform same-sex weddings because of her religious beliefs and provided contact information for others who would.

No one complained to Hensley, her staff, or the Commission about her marriage-referral **\*191** system or her ability to be fair—or even her appearance of fairness—in any judicial proceeding. Nevertheless, the Commission learned of her system from an interview she gave a newspaper and opened a preliminary investigation in May 2018.[19] After Hensley responded to the Commission's written questions about her officiating practices and her reasons for declining to conduct same-sex ceremonies, the Commission issued a tentative public warning in January 2019,[20] concluding that she was violating Canon 3B(6), which applies to conduct in the performance of judicial duties,[21] and Canon 4A(1), which applies to a judge's extra-judicial conduct.[22]

Rather than accept the warning, Hensley chose to challenge it in a hearing before the Commission.[23] There she asserted that her speech was protected by the Free Speech Clause and that the Commission's sanction infringed on her sincerely held religious beliefs in violation of TRFRA. She had notified the Commission and its members and officers in writing earlier, shortly after receiving the tentative warning, of her constitutional and TRFRA claims. At the hearing in August 2019, Hensley testified that if any party who appeared in her court expressed doubt about her impartiality based on her refusal to perform same-sex marriages, she would recuse herself from that case. Hensley stopped officiating weddings entirely around the time of the hearing, concerned that the Commission would further sanction her.

Following the hearing, the Commission issued the final Public Warning on November 12, 2019. The Public Warning found only a violation of Canon 4A(1), concluding that Hensley's referral system, an extra-judicial activity, cast reasonable doubt on her capacity to act impartially as a judge.

### B

Hensley was entitled to appeal the Public Warning to an SCR composed of three justices of the courts of appeals selected at random by the Chief Justice of this Court.[24] A judge must file a written request for an SCR within 30 days after the date the Commission issues its decision.[25] Hensley did not do so.

Instead, on December 17, 2019, she sued the Commission and its members and officers **\*192** [26] in district court under TRFRA. TRFRA provides that "a government agency may not substantially burden a person's free exercise of religion" unless it "demonstrates that the application of the burden to the person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that interest."[27] This prohibition expressly applies to an agency "order" or "decision," like the Public Warning the Commission issued to Hensley.[28] TRFRA contains a waiver of sovereign immunity from a TRFRA action.[29] A person who successfully establishes a violation is entitled to recover declaratory relief, injunctive relief to prevent future violations, and compensatory damages not to exceed $10,000, as well as attorney's fees and other expenses incurred in bringing the action.[30]

Hensley asserts that the Commission violated TRFRA by its investigation, Public Warning, and threat of future discipline if she persists in using her referral system and declining to perform same-sex marriages. She seeks damages for her lost income in not being able to perform opposite-sex weddings, declaratory relief under TRFRA, and injunctive relief prohibiting the Commission from further sanctioning her speech and conduct. She also seeks several declarations under the Uniform Declaratory Judgments Act (UDJA) against both the Commission and the commissioners, among them that: (1) the Commission's interpretation and application of Canon 4A(1) violates the Free Speech Clause; (2) the officiating

of weddings is not a judicial 'duty' under Canon 3B(6); and (3) her referral system does not violate Article V, Section 1-a(6)(A) of the Texas Constitution.[31] Hensley also contends that the commissioners acted ultra vires and are therefore not protected by sovereign immunity. Hensley does not seek any form of relief that would require the Commission to reverse the Public Warning or take it down from its website.

[5]The Commission filed a plea to the jurisdiction. It asserts, first, that Hensley's claims are an impermissible collateral attack on the Public Warning barred by her failure to exhaust her administrative remedies by not appealing it to the SCR—the exclusive forum provided by the Legislature for appeals from Commission warnings. Second, the Commission contends that Hensley's claims are barred by sovereign immunity for four reasons: (1) TRFRA's waiver of sovereign immunity does not apply because Hensley failed to strictly comply with TRFRA's notice requirement,[32] which functions as a jurisdictional requirement in all suits against a governmental entity;[33] (2) the Commission has special immunity under *193 Section 33.006 of the Texas Government Code,[34] not waived by TRFRA's general waiver; (3) the UDJA's sovereign immunity waiver does not apply;[35] and (4) the ultra vires doctrine does not negate immunity because the commissioners' actions were all discretionary and authorized.[36] The Commission's plea did not assert that the trial court lacked jurisdiction because Hensley failed to plead facts that, if true, would support her claims.[37]

The trial court agreed with the Commission and dismissed Hensley's claims for want of jurisdiction. The court of appeals affirmed.[38]

We granted Hensley's petition for review.

## II

We begin with whether an appeal of the Public Warning to the SCR was an administrative remedy that Hensley was required to exhaust before bringing this suit to recover for violations of her rights under TRFRA and the Free Speech Clause. The Commission argues that it was, and the lower courts agreed, holding that because Hensley chose not to avail herself of her appellate remedy, her suit is an impermissible collateral attack on the Public Warning. For several reasons, we disagree.

## A

[6] [7] [8] [9] [10] [11]District courts are presumed to have the jurisdiction to resolve legal disputes.[39] That presumption is overcome where the Constitution or another law grants exclusive jurisdiction to another court or an administrative agency.[40] "A statute may grant an agency exclusive jurisdiction either expressly or by establishing *194 a 'pervasive regulatory scheme' that impliedly 'indicates that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.' "[41] A state agency has exclusive jurisdiction when the Legislature grants it sole authority to make an initial determination in "disputes that arise within the agency's regulatory arena."[42] "Thus, to establish exclusive jurisdiction over a particular issue, there must be (1) an express or implied grant of exclusive jurisdiction and (2) the issue must 'fall[ ] within that jurisdictional scope.' "[43] If the agency has exclusive jurisdiction over a particular issue, a trial court lacks jurisdiction over a claim involving that issue until the claimant has exhausted all available administrative remedies.[44]

[12] [13]Exhaustion is required so that the agency given exclusive jurisdiction can exercise it and because the administrative remedies provided may moot the claim. We have held repeatedly that a claim is barred when administrative remedies that could have mooted the claim were not exhausted.[45] But we have never held that administrative remedies must be exhausted when they *cannot* moot the claim—when exhaustion would be a pointless waste of time and resources.[46] Indeed, we have suggested the contrary.[47] The SCR could have reversed Hensley's Public Warning, but she does not seek reversal, and reversal could not have mooted her claims. One claim is that the sanction—while it existed, until any reversal—unduly burdened her freedoms of religion and speech. Reversal could have limited that claim to a shorter period, but it could not have extinguished it. The other claim is that she is entitled to injunctive relief from the threat of future such sanctions. As we explain, the SCR is not authorized to grant injunctive relief.

## *195 B

[14] [15] [16]Article V, Section 1-a of the Texas Constitution and Chapter 33 of the Texas Government Code create the Commission,[48] define its powers,[49] require and govern its administrative review of complaints and concerns regarding judges' conduct,[50] authorize it to impose sanctions of judges, and provide for de novo review of the

Commission's decisions by an SCR.[51] The Commission "is an agency of the judicial branch of state government".[52] It "does not have the power or authority of a court".[53] The Commission consists of 13 members appointed with the advice and consent of the Senate.[54] Six are judges appointed by the Supreme Court: a justice of a court of appeals, a district judge, a county judge, a constitutional county judge, a justice of the peace, and a municipal judge. Two members are lawyers appointed by the State Bar. And five are public members appointed by the Governor. Commissioners generally serve one six-year term.[55] The Commission reviews, investigates, and hears complaints of judicial misconduct.[56] The Commission alone is charged with enforcement of the Canons through sanctions, including public warnings.[57] The Commission has original jurisdiction to determine whether a judge has violated a Canon and, if so, the discretion to decide whether to impose a sanction. Because the Commission's membership regularly and routinely changes by design, one group's decisions are not binding on the next.

[17]A judge subject to a lesser sanction, like the Public Warning in this case, may appeal by applying to the Chief Justice of the Supreme Court for the appointment of an SCR.[58] An SCR is composed of three justices of the courts of appeals randomly selected to serve for the one appeal only. If the judge were to be sanctioned again, even for the same type of action, or if another judge received a similar sanction, an appeal would be to a different SCR. The opinion of one SCR does not bind another.[59] An SCR has the power to dismiss or affirm a Commission decision, impose a lesser or greater sanction, or order the Commission to file formal proceedings against a judge.[60] Because it is **196 created by statute, the SCR is limited in its powers to those expressly granted to it.[61] Nowhere has the SCR been granted the powers of a court of general jurisdiction or authorized to give injunctive, declaratory, or compensatory relief.

### C

Before the Commission, Hensley argued that her conduct did not violate Canon 4A(1) and that she should not be sanctioned. She also argued, separately, that TRFRA and the Free Speech Clause bar enforcement of the Canon against her for declining to perform same-sex marriages because of her religious beliefs, for stating those beliefs publicly, and for her marriage-referral system, even if her actions violated the Canon and were sanctionable.[62]

The Commission ruled against Hensley on both

arguments, concluding that she had violated Canon 4A(1) and is subject to sanction and, implicitly, by rejecting her second argument, that a sanction is not prohibited by the Free Speech Clause and TRFRA. Interpreting and applying the Canon was within the Commission's jurisdiction, subject to appeal to an SCR. But while the Commission can assess whether a sanction is prohibited by some other law, that jurisdiction is not exclusive. The district court may likewise determine whether a sanction is prohibited, and it is not bound by the Commission's or SCR's decisions.

[18]In this district court action against the Commission, Hensley makes only her statutory and constitutional arguments. She has repeatedly asserted that she does not now complain that the Public Warning was an abuse of the Commission's discretion to interpret and apply Canon 4A(1). She does not seek review or reversal of that decision.[63] She accepts it for what it is: the Commission's exercise of its jurisdiction to interpret and apply the Canons. But she claims, as she did before the Commission, that the Public Warning, even if otherwise permitted by the Canons, violates TRFRA and the Constitution.

Hensley is not seeking relief the SCR could afford, nor would the relief it could provide moot or preclude her claims in this **197 case. In an appeal, the SCR could have determined both the correctness of the Public Warning and whether TRFRA or the Free Speech Clause prohibit it. A ruling for Hensley on either ground would have vacated the Public Warning. But that would not have mooted Hensley's TRFRA claim. She still seeks redress for the burden of the Public Warning during the time it was in effect.[64] Chapter 33 of the Government Code does not stay warnings during the pendency of an appeal to the SCR. TRFRA allows Hensley to sue for relief and assert that the Public Warning unduly burdened the exercise of her religious freedom. The SCR could not have provided her with the relief TRFRA provides, should her TRFRA claim have merit. Vacating the Public Warning could not have mooted her claim.

Moreover, in this action Hensley seeks injunctive relief under TRFRA against the Commission prohibiting future sanctions for repeated actions like those the Public Warning sanctioned. The SCR's reversal of the Public Warning would not prevent the Commission from continuing to sanction Hensley, as it does not bind the Commission to any future course of action or to refrain from infringing on constitutionally protected activity. As a court that reviews the imposition of Commission sanctions in a specific case, the SCR has no power to prospectively bind or otherwise interfere with the Commission's broad discretion to investigate claims,

initiate proceedings, and order sanctions and censures. Hensley could have won at the SCR but remained under the threat of future Commission sanctions should she resume use of her referral system. This threat is amplified because justices on the SCR are newly appointed for each case and are not bound by the decisions of previous SCRs.

**D**

Hensley's request for a declaration under the UDJA that the Commission's interpretation of Canon 4A violates the Free Speech Clause is subject to the same exhaustion of remedies rationale as her TRFRA claim. A declaration would prevent the Commission from ignoring Hensley's Free Speech Clause defense in the future should she reimplement her referral system.[65] As already discussed, a favorable **\*198** SCR decision vacating the Public Warning would not restrict the Commission from sanctioning Hensley in the future, so the SCR could not have provided Hensley with the relief she seeks. Nor could a favorable SCR decision moot her need for declaratory relief because the prospective threat of future sanctions would remain following vacatur of the Public Warning. Hensley's requested Free Speech Clause declaration under the UDJA is thus not barred by the exhaustion requirement. Another of Hensley's requested declarations—that a judge does not violate Canon 4A by engaging in the same type of religious speech and referral system as Hensley—is also not barred for the same reasons.

Likewise, Hensley's requested declarations that her selective officiating practice does not violate Canon 3B(6) or Article V, Section 1-a(6)(A) of the Texas Constitution are not barred by the exhaustion requirement. The Commission did not sanction Hensley for violating those provisions, and her appeal before the SCR would not have involved those issues. Hensley is not required to appeal to the SCR before seeking declaratory relief in district court for matters completely unrelated to the Public Warning and potential appeal.

In sum, Hensley's requested declarations are not barred by the exhaustion requirement. Hensley's ultra vires claim, which seeks the same UDJA declaratory relief and TRFRA injunctive relief against the commissioners, is subject to identical treatment.

\* \* \*

The SCR could not have finally decided whether Hensley

is entitled to the relief sought in this case or awarded the relief TRFRA provides if it is determined that her claim has merit. Nor could the SCR have mooted Hensley's TRFRA claim. Hensley was not required to further exhaust her remedy by appeal to a court that could not afford her the relief TRFRA provides to successful claimants before suing in a court that can.[66]

**III**

[19]  [20]We turn to the Commission's arguments that Hensley's action is barred by sovereign immunity.[67]

**A**

TRFRA waives sovereign immunity from suit and liability under the Act.[68] The Commission argues that the waiver does not apply because Hensley failed to give written notice of her claims as TRFRA requires, and therefore the trial court lacks jurisdiction over this action. A person may not sue under TRFRA without giving 60 days' written notice

> **\*199** (1) that the person's free exercise of religion is substantially burdened by an exercise of the government agency's governmental authority; (2) of the particular act or refusal to act that is burdened; and (3) of the manner in which the exercise of governmental authority burdens the act or refusal to act.[69]

The Commission contends that the notice Hensley gave is deficient for two reasons.

[21]First, Hensley sent her notices to the Commission and its members and officers a few weeks after she received the tentative public warning. The Commission argues that Hensley's religious freedom was not burdened until after the Public Warning, months later, and that she never gave notice that the Public Warning burdened her exercise of religious freedom. But Hensley contends that her protected religious freedom was burdened from the Commission's opening of an investigation months before her notice and has continued till now. The Commission may disagree she has ever been burdened, but the notice she gave certainly provided notice of her claim.[70]

Second, the Commission argues that Hensley's presuit

notice "merely implied that [she] had been required to suspend her opposite-sex wedding ceremonies due to the [Commission's] 'investigation' and 'threatened penalties.' " Such notice, the Commission contends, fails to properly state the *manner* in which the exercise of governmental authority burdens the act or refusal to act as required by TRFRA Section 110.006(a)(3). Hensley's presuit notice, sent by her lawyer to each Commissioner via letter, stated:

> I represent Justice of the Peace Dianne Hensley. I write to inform you that the Commission's investigation of Judge Hensley, and its threatened discipline of Judge Hensley for refusing to perform same-sex weddings, substantially burdens her free exercise of religion. *See* Tex. Civ. Prac. & Rem. Code § 110.006(a)(1).

> The Texas Religious Freedom Restoration Act protects a "refusal to act that is substantially motivated by sincere religious belief." Tex. Civ. Prac. & Rem. Code §§ 110.001(1)....

> The Commission's investigation of Judge Hensley and its threatened penalties are imposing substantial burdens on Judge Hensley for her refusal to perform same-sex weddings in violation of her Christian faith. *See* Tex. Civ. Prac. & Rem. Code § 110.006(a)(2)-(3).

The Commission does not dispute that Hensley's religious beliefs are sincere. Her notice clearly states that they were burdened by the Commission's threatened sanction against her for refusing to perform same-sex marriages.

Hensley's notice of the burden she claims to her religious freedom is clearly sufficient under TRFRA.[71]

### *200 B

[22]The Commission argues that TRFRA's general waiver of sovereign immunity does not extend to the "immunity from liability" granted the Commission and commissioners under Section 33.006 of the Texas Government Code, which "is absolute and unqualified and extends to any action at law or in equity."[72]

[23]Section 33.006(b) expressly provides only an immunity from liability, not an immunity from suit.[73] "[I]mmunity from liability does not affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction."[74] The trial court thus erred in relying on the immunity provided by Section 33.006 as a basis for concluding that it lacked jurisdiction over the Commission and

commissioners.[75]

### C

The lower courts concluded that Hensley's request for a declaration against the Commission (not the commissioners) that Canon 4A violates the Free Speech Clause is barred by sovereign immunity.[76]

[24]The UDJA provides that "[a] person ... whose rights ... are affected by a statute ... or municipal ordinance ... may have determined any question of construction or validity ... and obtain a declaration of rights ... thereunder."[77] Hensley argues that this provision waives the Commission's sovereign immunity from her claim. But Canon 4A is neither an ordinance nor a statute but a rule promulgated by this Court. Thus, the UDJA waiver does not apply.

[25]Hensley also argues that the Commission's sovereign immunity from her claim is waived by the Texas Administrative Procedure Act, which provides that "[t]he validity or applicability of a rule ... may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff."[78] A "rule" is defined as "a state agency statement of general applicability". **\*201** [79] The definition of "state agency" expressly excludes courts.[80] Canon 4A is not a rule promulgated by a state agency.

The lower courts correctly concluded that the Commission's sovereign immunity is not waived for Hensley's request for a declaration regarding Canon 4A.

### D

The lower courts dismissed Hensley's declaratory requests against the commissioners under both the UDJA and TRFRA on the grounds that the commissioners' sovereign immunity was not waived. Hensley argues that the commissioners acted ultra vires because "unlawful acts of officials are not acts of the State"[81] and the commissioners have no discretion to violate both TRFRA by determining that it does not apply here. The Commission responds that in investigating Hensley and ultimately issuing the Public Warning, the commissioners were performing their duties precisely as authorized by the Commission's enabling laws. Even if the commissioners

erred in exercising their discretion, they contend, any alleged error does not constitute an ultra vires act because the error occurred while acting within the zone of their authority.

[26] [27]Not all acts of a government official misinterpreting and misapplying a law are ultra vires. Sovereign immunity bars suits complaining of legal errors stemming from the exercise of the officer's *absolute* discretion but not suits complaining of those errors stemming from an officer's exercise of *limited* discretion.[82] Acts within an officer's absolute discretion are those where the officer exercises "free decision-making without any constraints", while acts within the officer's limited discretion are those where the officer must exercise "discretion that is otherwise constrained by the principles of law."[83]

[28]Hensley alleges that the commissioners' decision to warn her violated her statutorily protected constitutional right to free exercise. We have noted that questions of law that determine the constitutionality of an agency's decision fall "outside the competence of administrative agencies" because "the power of constitutional construction is inherent in, and exclusive to, the judiciary."[84] Though the Commission does have the discretion to issue informal warnings,[85] the commissioners' discretion to issue a warning *over a TRFRA defense* is necessarily of the *limited* sort because the Commission does not have absolute discretion to interpret and apply TRFRA. Because the commissioners' discretion in interpreting and applying TRFRA is limited, a claim that alleges that the Public Warning violated TRFRA is a sufficient ultra vires allegation to survive a plea to the jurisdiction.

\* \* \* \* \*

We affirm the part of the court of appeals' judgment dismissing Hensley's requested declaratory relief against the Commission concerning the Free Speech Clause for lack of jurisdiction, reverse the remainder of the judgment, and remand to the court of appeals for consideration of **\*202** the unaddressed issues remaining on appeal.

Justice Blacklock filed a concurring opinion, in which Justice Devine joined.

Justice Young filed a concurring opinion.

Justice Lehrmann filed a dissenting opinion.

Justice Blacklock, joined by Justice Devine, concurring.

We could have all but ended this regrettable case today. We should have done so by holding that the Judicial Conduct Commission lacks the lawful authority to sanction Judge Hensley or any other Texas judge who politely declines to perform same-sex marriages but respectfully refers same-sex couples to a nearby officiant who will gladly do so. Judge Hensley's eminently reasonable policy honored her personal convictions and showed courtesy to same-sex couples, who the U.S. Supreme Court has said are entitled to a marriage—not to a particular marriage officiant, and especially not to an officiant with religious objections to participating in the ceremony.

Judge Hensley's actions were not unethical, unconstitutional, or illegal in any way. Politely declining to participate in a same-sex wedding for religious reasons does not demonstrate bias or prejudice against gay people. Nor does it demonstrate an inability to impartially judge their lawsuits. Of course, rudely or derisively declining to participate in a same-sex wedding might demonstrate bias, but rude and derisive treatment of *anyone* is conduct beneath a judge. There is no allegation that Judge Hensley was ever anything other than polite, respectful, and forthright with the same-sex couples who crossed her path. Nor is there an allegation that any of those couples ever had any trouble obtaining a marriage because of Judge Hensley's policy.

In fact, the record contains no indication that *any* same-sex couple *ever* complained to *anyone* about Judge Hensley's respectful but principled treatment of them. And that is to their credit. By all accounts, these couples were treated courteously by Judge Hensley and her staff, and they were politely directed down the street to another officiant happy to perform their marriage. Judge Hensley even arranged for nearby private wedding officiants to charge the cheaper government rate to the same-sex couples she referred. Imagine a couple in that situation trying to coerce the courteous and helpful Christian judge to violate her convictions for their convenience, when other local officiants are happy to accommodate. What purpose could that possibly serve—other than to prove that adherents to the old orthodoxy will be made to bend the knee to the new one? I find it encouraging that we have no indication any same-sex couple even considered handling the situation that way. What decent person would? Judge Hensley treated them respectfully. They got married nearby. They went about their lives. Judge Hensley went back to work, her Christian conscience clean, her knees bent only to her God. Sounds like a win-win.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    12

Indeed, it sounds just like what the Fifth Circuit envisioned, when it directed Texas to provide same-sex marriages because of *Obergefell v. Hodges* but cautioned that "controversies involving the intersection of" the ancient rights of religious freedom and free speech and the new right of same-sex marriage were not resolved by *Obergefell* but instead remained open to "the robust operation of our system of laws and the good faith of those who are impacted by them." *De Leon v. Abbott*, 791 F.3d 619, 625 (5th Cir. 2015) (following *Obergefell v. Hodges*, 576 U.S. 644, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015)). By all accounts, Judge Hensley **\*203** and the same-sex couples of the Waco area navigated the intersection of their rights just as we would expect of responsible adults in a heterogenous society. Before this case became a public spectacle, the real people in Waco actually impacted by the intersection of their potentially conflicting rights admirably treated each other with respect and good faith, just as the Fifth Circuit hoped. So far, so good.

Enter the Texas Judicial Conduct Commission. Apparently after combing the newspapers for juicy targets, the Commission decided, on its own initiative, to subject Judge Hensley to a lengthy private inquisition and then to publicly humiliate her. It claimed that her marriage-referral policy "cast[s] doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation"—even though she offered to immediately recuse herself if litigants in her court ever thought she might not treat them fairly because of her marriage policy (there is no indication any litigant ever did).

Several years later, here we are. There are no victims. There was no crime. We have a Christian justice of the peace in a small Texas city doing her best to navigate her duties to God and to the public. We have no real people even claiming to be harmed by her actions. We certainly have no same-sex couples denied a marriage—or anything even close to that. There is no good reason for this case to even exist.

But it does exist. It exists because of the Judicial Conduct Commission, which veered far outside its proper lane by self-initiating this victimless but politically and emotionally charged case. The Commission misinterpreted the Code of Judicial Conduct and violated Judge Hensley's religious-freedom rights by publicly sanctioning her and by continuing to hold over her head the threat of a future, harsher sanction should she resume her marriage-referral policy. To her credit, Judge Hensley did not capitulate. And for the last several years, the Commission has doubled down again and again on this misbegotten case, all the way to the Texas Supreme Court.

The irony is this. By going out of its way to take sides in a contentious moral and political debate about conflicts between the right to same-sex marriage created by *Obergefell* and the rights of religious dissenters long enshrined in our founding documents—an ongoing debate that *Obergefell* itself acknowledged would continue—the Commission has done far more, in the eyes of many Texans, to undermine public confidence in Texas's judicial branch than a lone justice of the peace in Waco ever could. It is too bad this case does not end today. But it will end some day, and if Judge Hensley sticks to her guns, I am confident the Commission will lose.

* * *

I agree with the Court that Judge Hensley's claims may go forward as a procedural matter. In addition to the procedural questions the Court resolves, the parties have also presented for our decision the substantive question of whether the Commission's actions violated Hensley's legal rights. The Court remands the case for the lower courts to answer the merits questions. I would instead resolve them now, as we often do when deciding appeals of jurisdictional rulings in similar procedural postures. The Commission's actions did violate Hensley's legal rights, and the procedural quirks of this case do not prevent this Court from saving everyone a lot of time and trouble by saying so now.

When a plaintiff's ultra vires claim against government officials is dismissed on jurisdictional grounds, as happened below, appellate courts commonly address the merits of the parties' competing interpretations **\*204** of the law in order to determine whether the plaintiff has stated a valid claim sufficient to bypass the government's immunity. *See, e.g., Phillips v. McNeill*, 635 S.W.3d 620, 631 (Tex. 2021) ("We also hold that ... the Inspector General's failure to provide the hearing was *ultra vires* and thus not shielded by sovereign immunity. Accordingly, the trial court erred in granting the plea to the jurisdiction."); *Hall v. McRaven*, 508 S.W.3d 232, 243 (Tex. 2017) (holding that an ultra vires claim was properly dismissed on sovereign immunity grounds after examining the merits of the claim); *Hous. Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 169 (Tex. 2016) (reversing dismissal of an ultra vires claim on governmental immunity grounds after examining the merits of the claim).

This case is eligible for the same treatment.[1] Judge Hensley's Second Amended Petition invokes "the *ultra vires* doctrine recognized in *City of El Paso v. Heinrich*" and seeks "an injunction that will prevent the

WESTLAW     © 2024 Thomson Reuters. No claim to original U.S. Government Works.     13

Commissioners from investigating or sanctioning judges or justices of the peace who recuse themselves from officiating at same-sex weddings on account of their sincere religious beliefs." The question, at this stage of the case, is whether the courts have jurisdiction over this claim for prospective relief. Whether the courts have jurisdiction over the claim depends, in part, on whether Hensley's petition alleges threatened actions by the Commissioners that are truly ultra vires—that is, truly outside the Commissioners' authority. *See Chambers–Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344–45 (Tex. 2019). The Commissioners' plea to the jurisdiction, from which this appeal arises, raised this merits issue by arguing that Hensley's ultra vires claims do not allege any ultra vires conduct by the Commissioners. In similar circumstances, we often take the opportunity in appeals like this one to answer disputed merits questions about the legality of the government's actions. *See, e.g., Phillips*, 635 S.W.3d at 631; *McRaven*, 508 S.W.3d at 243; *Hous. Belt & Terminal Ry.*, 487 S.W.3d at 169; *Chambers–Liberty Cntys.*, 575 S.W.3d at 354–55.[2]

The Court declines to do so here, even though both sides adequately briefed the merits and we could expedite the case's resolution by addressing them. I disagree with that choice, although I do not think **\*205** the Court errs, as a formal matter, by declining to reach the merits. The court of appeals did not reach the merits because it ruled against Hensley on purely procedural grounds, and this Court always has the prerogative to decline to reach questions the court of appeals has not yet reached. Whether to reach the merits today is ultimately a prudential question, so the Court's reticence is not legally erroneous or altogether unjustifiable, although I disagree with it. As I see it, prudence dictates moving this case along. The merits are adequately presented, the case has already been pending for many years, and it may remain pending for many more years given today's disposition.

Also relevant to the prudential question is the constitutional relationship between this Court and the Judicial Conduct Commission. For several reasons, this Court is uniquely suited to the task of repudiating the Commission's incorrect interpretation of the Code of Judicial Conduct. To begin with, this Court promulgates the very Code that the Commission erroneously thought Judge Hensley violated. We also appoint several members of the Commission. When the Commission attempts to impose sanctions stronger than a slap on the wrist, such as suspension from office or removal, this Court has the final say. TEX. CONST. art. V, § 1-a(9). And, as the Court correctly holds today, in some circumstances judges threatened unlawfully by the Commission can seek redress through civil lawsuits, which likewise terminate at

this Court. Thus, in multiple ways, our legal system gives this Court—not the Judicial Conduct Commission or lower courts—the final say on questions of judicial ethics.

We could have had the final say in Judge Hensley's case today. Perhaps another day will come—although the better course after today would be for the Commission to voluntarily rescind its warning of Judge Hensley and renounce its erroneous view that her marriage-referral policy violates the Code of Judicial Conduct.

\* \* \*

As an initial matter, the Commission is not protected from ultra vires suits merely because the Commissioners have some discretion to interpret and apply the Code of Judicial Conduct. "The fact that the official has some limited discretion to act under the applicable law does not preclude an ultra vires claim if the claimant alleges that the official exceeded the bounds of that authority, or the conduct conflicts with the law itself." *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018). The Judicial Conduct Commission has no more discretion to apply the Code of Judicial Conduct incorrectly than the Comptroller has to apply the Tax Code incorrectly. Both are constitutional offices charged with interpreting and applying a legal code. But neither has absolute discretion to apply its legal code just any way it chooses, and neither is immune from judicial review of its compliance with the legal code it administers. Nor does the Judicial Conduct Commission have discretion to violate the Texas Constitution, the U.S. Constitution, or the Texas Religious Freedom Restoration Act (TRFRA)—all of which Hensley alleges were violated by the Commission's past actions and threatened future actions.[3]

Turning to whether Hensley alleged genuinely ultra vires acts—that is, whether the Commission's treatment of her conflicts **\*206** with the law and is therefore outside the Commission's authority—the principal reason Hensley succeeds is simple: Her courteous marriage-referral policy does not violate the Texas Code of Judicial Conduct. Politely declining to participate in a same-sex wedding for religious reasons does not demonstrate bias or prejudice against gay people. Nor does it demonstrate an inability to impartially preside over their lawsuits. Likewise, publicly confessing traditional Christian beliefs about marriage and sexuality does not demonstrate bias or prejudice against gay people or demonstrate an inability to impartially preside over their lawsuits.

The Commission tries to make much of the fact that Judge Hensley publicly stated the religious reasons for her marriage-referral policy in response to inquiries from the Waco newspaper. Of course, Judge Hensley is correct that

judges—particularly elected judges—are not divested of their free-speech rights when they put on the robe. *See Republican Party of Minn. v. White*, 536 U.S. 765, 788, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002). But more to the point, everybody already knows—particularly outside Texas's big cities—that many, many judges and other local public officials hold traditional Christian religious beliefs about marriage. And everybody already knows that the reason so many of their local judges stopped performing *all* marriages after *Obergefell* is because the judges, for religious reasons, feared being compelled to perform same-sex marriages.

The public's knowledge of a judge's traditional Christian beliefs—commonplace knowledge in small cities and towns throughout Texas—does not reasonably undermine public confidence in the judiciary or cast reasonable doubt on the judge's impartiality, any more than would public knowledge that the judge is an atheist. Yes, there are plenty of people who would have less confidence in a judge they know to hold traditional Christian beliefs about marriage. This is Texas, so there are at least as many people who would have less confidence in a judge they know to be an atheist. The Code of Judicial Conduct is not concerned with any of that. It is concerned with judicial behavior that *objectively* casts *reasonable* doubt on a judge's capacity to decide lawsuits impartially—not with behavior that merely causes some people, subjectively, to question the judge's partiality.[4]

It therefore does not matter that there are many people whose own biases predispose them to question a judge's impartiality once they know the judge's religious views. What matters is whether the judge objectively demonstrates an inability to set aside her personal views when necessary to properly perform the judicial function, which is to decide lawsuits impartially based on the law. There is zero evidence of any such failing on Judge Hensley's part.

Imagine a world in which Judge Hensley's public declaration of her faith *does* cast reasonable doubt on her capacity to act impartially because it causes some people to assume she will not treat gay people fairly in her courtroom. Does not my public alignment with the Republican Party cause some people to assume I will not treat Democrats fairly? It should not, but we all know that for some people it does. Particularly in a state with judicial elections, judges will always be publicly affiliated in one way or another with various viewpoints many people find distasteful. Judge Hensley respectfully and forthrightly **\*207** explained her marriage-referral policy—itself quite respectful—to the local media so people in her community could understand the reason for her actions. Whether she had done so or not, everyone

already knows that a sizeable percentage of the nearly 3,000 judges in Texas have the same Christian beliefs Judge Hensley does. If anyone suspects Judge Hensley of lacking impartiality because of what she said—or if anyone suspects any other judge of lacking impartiality because of what he personally believes about marriage—they do so without a reasonable basis, and their unreasonable suspicions are irrelevant to the proper application of the Code of Judicial Conduct.

In sum, nothing Judge Hensley did or said cast reasonable doubt on her capacity to act impartially as a judge or gave the people of McLennan County a reasonable basis to suspect her of bias or prejudice. As a matter of law, she did not violate the Texas Code of Judicial Conduct.[5] The Judicial Conduct Commission has no more authority to sanction judges for non-violations of the Code of Judicial Conduct than the Comptroller has to penalize taxpayers for non-violations of the Tax Code. The Commission exceeded its lawful authority, both by publicly warning Judge Hensley for non-violations of the Code and by continuing to hold over her the threat of future sanction should she resume her lawful and reasonable marriage-referral policy. For these reasons, I would hold that Judge Hensley has stated a valid ultra vires claim against the Commissioners.[6]

* * *

*Obergefell* gave same-sex couples a right to marriage. It did not give same-sex couples a right to coerce a judge with religious objections to officiate same-sex weddings. Nor did it give the Texas Judicial Conduct Commission the right to punish a **\*208** Christian judge who politely directs same-sex couples down the street. *Obergefell* affected the legal landscape in many ways, but it did not change the Texas Code of Judicial Conduct. *This* Court, not the United States Supreme Court, promulgates and interprets the *Texas* Code of Judicial Conduct. *Obergefell* did not change what it means for a judge in Texas to "cast reasonable doubt on the judge's capacity to act impartially as a judge." Politely declining to participate in a same-sex couple's intimate ceremony *after Obergefell* is no more a violation of the Texas Code of Judicial Conduct than was politely declining to participate in such a ceremony *before Obergefell*. Likewise, both before and after *Obergefell*, a judge's public display of hostility toward any category of litigant, including gay people, could cast reasonable doubt on his impartiality in violation of the Code. Nothing of that sort is even remotely alleged against Judge Hensley.[7]

If a policy like Judge Hensley's had the practical effect of denying same-sex couples reasonable access to a marriage, which never happened in Waco, then the policy might very well pose a problem under *Obergefell.* But

*Obergefell* itself acknowledges its potential to cause friction with pre-existing, far more deeply rooted constitutional principles like religious liberty and the freedom of speech. 576 U.S. at 679–80, 135 S.Ct. 2584. The Fifth Circuit eloquently elaborated on that potential in *De Leon v. Abbott*, which is just as binding on the State of Texas as *Obergefell* (actually even more so, since Texas is subject to the judgment in *De Leon* but was not a party in *Obergefell*). *De Leon*, 791 F.3d at 625 ("We express no view on how controversies involving the intersection of these rights should be resolved but instead leave that to the robust operation of our system of laws and the good faith of those who are impacted by them.").

If the Judicial Conduct Commission is correct—that is, if *Obergefell* ushered in an era in which judges who publicly espouse traditional Christian beliefs are unfit for the robe—then yet another deeply rooted constitutional principle comes into view. "No religious test shall ever be required as a qualification to any office, or public trust, in this State; nor shall any one be excluded from holding office on account of his religious sentiments ...."[8] TEX. CONST. art. I, § 4. Judge Hensley has been the target of a punitive administrative apparatus with the power, ultimately, to exclude her from holding office. This has happened "on account of [her] religious sentiments"—not on account of rude or insulting or unprofessional words or actions towards anybody of any sexual orientation.

Like the foundational rights of free speech and religious liberty, the constitutional prohibition on religious tests for office is yet another ancient pillar of our law with roots far deeper than same-sex marriage.[9] And, like free speech and religious **\*209** liberty, the ban on religious tests can be undermined by unduly aggressive interpretations of the right to same-sex marriage announced in *Obergefell.* As the Fifth Circuit counseled, many conflicts between these principles can be respectfully resolved through "the good faith of those who are impacted by them," as Judge Hensley tried to do. *De Leon*, 791 F.3d at 625. Because of the Judicial Conduct Commission's ill-advised interference, this particular conflict must now be resolved in court. It should be resolved in Judge Hensley's favor.

I respectfully concur.

Justice Young, concurring.

There is considerable force in Justice Blacklock's argument that we should reach the merits and in his proposed pathway to doing so. But I am less confident that there is no upside to the Court's approach: resolving only the jurisdictional issues and leaving the merits for the lower courts, if necessary.

For one thing, it is true that the parties *could* continue to fight on the merits—that is the purpose of repudiating the lower courts' view that they lack jurisdiction to resolve the dispute. But nothing *requires* these parties to keep pressing the merits.

For another, while I agree that this Court has the discretion to reach the merits now, there is a virtue in allowing the process to unfold, with this Court being the last rather than the first to address important legal questions. *See, e.g., In re Troy S. Poe Tr.*, 646 S.W.3d 771, 780–81 (Tex. 2022). What may seem prudent from the vantage point of one single case might be less so when viewed from the perspective of the system as a whole. Our default rule should be that we will address legal questions in the first instance only when doing so is truly urgent (especially, I think, when the reason that the lower courts did not reach the merits was a *jurisdictional* error). It would be unfortunate if we were understood as exercising the opposite presumption—that we will address the merits before any other court absent some unusual reason *not* to.

Finally, and perhaps I am also tipping my hand in saying so, but I doubt that respondents have much reason to push the case on the merits all the way back to this Court. That view further dampens any urgent need for us to resolve anything more than today's decision does. But if I am wrong, this Court will be ready once the lower courts have teed up the merits.

Justice Lehrmann, dissenting.

After an investigation and a hearing, the State Commission on Judicial Conduct issued a public warning to a justice of the peace upon finding that she violated **\*210** Canon 4A(1) of the Code of Judicial Conduct. Although the judge disagreed with the Commission's findings, she did not request judicial review of the decision as the Government Code provides. Instead, she sued the Commission and its members for violating the Texas Religious Freedom Restoration Act (TRFRA) in issuing the warning, seeking monetary, declaratory, and injunctive relief. The district court dismissed the claims on jurisdictional grounds, in part because the judge failed to exercise her statutory right to appeal the Commission's warning and instead collaterally attacked the decision in district court. This Court holds that the judge was not

required to exhaust her administrative remedies because it could not have mooted her claims in this suit. In my view, the Court glosses over the purposes of the exhaustion requirement and erroneously minimizes the impact that a decision of the Special Court of Review (SCR)—the entity that would have reviewed the Commission's sanction had the judge appealed it—could have had on the claims being pursued here. A faithful application of our precedent leads to the conclusion that exhaustion of administrative remedies was a jurisdictional prerequisite to this suit. Accordingly, and expressing no opinion on the merits of the claims, I respectfully dissent.

A state agency has exclusive jurisdiction when the Legislature grants it sole authority to make an "initial determination" in "disputes that arise within the agency's regulatory arena." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 544 (Tex. 2016); *see also In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004); *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000). If an agency has exclusive jurisdiction, a party involved in such a dispute "must pursue and exhaust all available administrative remedies before turning to the courts." *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 618 (Tex. 2023). Generally, "administrative bodies are entitled to and should exercise the duties and functions conferred by statute without interference from the courts." *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978).

This exhaustion requirement applies not only to administrative procedures before a state agency, but also to appeals and other efforts to obtain review of the agency's decisions and actions. When a statute provides procedures for obtaining judicial review of an administrative agency's decisions, parties who wish to appeal those decisions generally "must do so in compliance with" the statutory procedures. *Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex. 1986), *overruled on other grounds by Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000). And this Court has long considered such statutory procedures, which are intended to provide an "effective method" for a "speedy disposition" of any challenge to the agency's decisions, to be "exclusive." *Alamo Express, Inc. v. Union City Transfer*, 158 Tex. 234, 309 S.W.2d 815, 827 (Tex. 1958); *Lone Star Gas Co. v. State*, 137 Tex. 279, 153 S.W.2d 681, 699 (Tex. 1941). A challenge asserted outside of that exclusive method is considered an impermissible "collateral attack" on the agency's decision, over which courts lack jurisdiction. *Grounds*, 707 S.W.2d at 890; *Magnolia Petroleum Co. v. R.R. Comm'n*, 128 Tex. 189, 96 S.W.2d 273, 275 (1936).

In the arena of sanctioning judges for violations of the Code of Judicial Conduct, Chapter 33 of the Civil Practice and Remedies Code and *Article V, Section 1-a of the Texas Constitution* establish the very type of pervasive regulatory scheme that grants an agency exclusive jurisdiction and requires exhaustion of administrative remedies. As the Court describes, those ***211** provisions expressly create the Commission, define its powers, require and govern its administrative review of complaints and concerns regarding judges' conduct, encourage compliance through an informal process, impose deadlines to promote efficiency within that process, authorize de novo judicial review of the Commission's decisions, and impose deadlines and specific procedures for that review. *See ante* at 194–96. The provisions thereby "establish[ ] a comprehensive administrative review system" and "strongly indicate a requirement of mandatory exhaustion of administrative remedies," including the prescribed appeal process. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485, 487 (Tex. 1991), *overruled on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010).

The judge argues that this suit is not a collateral attack on the Commission's warning for two reasons. First, she asserts that she is not seeking "in any way" to disturb the warning, which "will remain on the books no matter what happens in this lawsuit." The Court agrees with this characterization; I cannot. As discussed below, the judge is no doubt seeking in this suit to "disturb" the Commission's unappealed warning.

A person may raise a government agency's violation of TRFRA as a defense in an administrative proceeding. TEX. CIV. PRAC. & REM. CODE § 110.004. The judge did just that, asserting at the hearing before the Commission that TRFRA prohibited the Commission from sanctioning her conduct. Had the judge sought judicial review of the warning, she likewise could have asserted a TRFRA violation as a defense in a de novo proceeding before the SCR. In this suit, she makes the same complaint about the warning that she could have made before the SCR: it substantially burdens her free exercise of religion in violation of TRFRA.

It is technically true that reversal of the warning is not among the requests for relief in the judge's pleadings, and the Court notes that such a request *would* constitute a collateral attack barred by the failure to appeal the warning. *Ante* at 196 n.63. But the Court distinguishes the judge's requests for declarations that (1) a judge engaging in the *same conduct* underlying the unappealed warning would not violate Canon 4A and (2) sanctioning such conduct violates TRFRA and the Constitution, holding that those claims may proceed. The Court's conclusions rest on a distinction without a difference. The entire basis

of the claims in this suit is that the Commission misapplied Canon 4A and violated TRFRA by sanctioning the judge for her policy—motivated by sincerely held religious beliefs—of conducting wedding ceremonies only for opposite-sex couples and referring same-sex couples to other officiants. If she were to prevail and obtain a declaration to that effect, plus an injunction prohibiting the Commission from issuing future sanctions against her for engaging in that practice, the warning would be "on the books" only in the most nominal sense. In both form and substance, this suit "is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Thus, it is a collateral attack.

Second, the judge argues that exhaustion was not required because the SCR could not have awarded her the relief she seeks in this suit under TRFRA and the Uniform Declaratory Judgments Act: compensatory damages, declaratory relief, and an injunction against further sanctions for engaging in the same conduct. Our precedent holds otherwise.

**\*212** The purpose of requiring a party to exhaust administrative remedies "is never to deprive a party of legal rights; rather, it aims to ensure an orderly procedure to enforce those rights." *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). This Court has thus consistently held that a party's inability to obtain all the relief sought through the administrative process is no grounds for bypassing that process where exhaustion could result in a favorable ruling that would moot the party's other claims.[1] *See, e.g., City of Dallas v. Stewart*, 361 S.W.3d 562, 579 (Tex. 2012) (holding that "a litigant must avail itself of statutory remedies that may moot its takings claim, rather than directly institute a separate proceeding asserting such a claim" (citing *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 237 (Tex. 2011))).

We recently applied this principle in *Garcia v. City of Willis*, 593 S.W.3d 201 (Tex. 2019). There, Garcia alleged that the City's red-light-camera scheme was unconstitutional and the resulting fines levied on him were therefore unconstitutional takings. *Id.* at 205. But he had not contested the fines via the administrative adjudicative process established in the Transportation Code. *See id.* at 210. Garcia argued that exhaustion was not required because the administrative process could not provide the relief he sought for his constitutional claims, but we rejected that argument, noting that it did not "consider that the administrative process might have granted him relief on non-constitutional grounds, thus mooting those claims." *Id.* We explained that "[t]he question here is not whether an administrative hearing could have resolved all his claims, constitutional or otherwise. Rather, the correct inquiry is whether the hearing officer had the authority to render Garcia's claims moot." *Id.* at 211. Thus, even though the administrative body lacked the ability to resolve Garcia's constitutional claim, he was nevertheless required to exhaust the process because of "the potential to moot that claim." *Id.* at 211–12; *see Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) ("If a case becomes moot, the parties lose standing to maintain their claims.").

Similarly, we held in *CPS Energy* that the Public Utility Commission's inability to address a party's constitutional claims was no justification for avoiding its administrative process. 671 S.W.3d at 620. Citing *Garcia*, we explained that the process could moot the constitutional claims. *Id.* And if it ultimately did not, "a party is not precluded from pursuing its constitutional claims after exhaustion or from seeking judicial review of any [administrative] rulings on issues underlying those claims." *Id.* (citing *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 141–42 (Tex. 2018)).

Here, the judge could have requested appointment of an SCR to conduct a de novo review of the Commission's "charging document," comprising the "sanction issued as well as any additional charges to be considered." TEX. GOV'T CODE § 33.034(d). And as noted, she could have raised TRFRA as a defense before the SCR, just as she did at the Commission hearing. *See* TEX. CIV. PRAC. & REM. CODE § 110.004. Had the SCR agreed with the **\*213** judge that her conduct did not violate Canon 4A or that the Commission's sanction violated TRFRA, the SCR could have dismissed the charging document, thereby vacating the public warning. P. RULES FOR STATE COMM'N ON JUD. CONDUCT R. 9(d). While this would not have mooted every aspect of the current claims, as discussed below, it would have mooted some of the requested relief and mitigated the damages she now seeks.

First, the judge seeks injunctive relief prohibiting the Commission from issuing future sanctions should she resume the sanctioned conduct. TEX. CIV. PRAC. & REM. CODE § 110.005(a)(2) (authorizing a person who successfully asserts a TRFRA claim to recover "injunctive relief to prevent the threatened violation or continued violation"). The Court concludes that the SCR's vacatur of the warning would not have mooted this claim. *Ante* at 197. According to the Court, even if the SCR concluded that the sanction could not stand, either because the judge did not violate Canon 4A or because TRFRA served as a defense, the "amplified" threat that the Commission could impose future sanctions against her for engaging in the same conduct would remain. *Id.* Again, I disagree.

Had the warning been vacated, the judge's standing to seek *prospective* relief against the Commission would be based solely on "a perceived threat of injury." *In re Abbott*, 601 S.W.3d 802, 812 (Tex. 2020); *see also USAA Cas. Ins. Co. v. Letot*, 690 S.W.3d 274, 279–83 (Tex. May 24, 2024) (concluding that the plaintiff had standing to seek damages but not injunctive relief). To establish such standing, the "threatened injury must be certainly impending"; "mere '[a]llegations of possible future injury' are not sufficient." *Abbott*, 601 S.W.3d at 812 (alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). Here, the judge would need to show "a credible threat" of being sanctioned for resuming her policy of recusing herself from performing same-sex marriages. *See id.* ("[T]o challenge the constitutionality of a criminal law," the plaintiff must "allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.' " (quoting *Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979))). I cannot conclude that such a credible threat would exist here.

As we have explained, "allegations of a *past* injury, which retrospective relief—typically damages—can remedy," without more, are insufficient to establish standing to pursue an injunction. *Letot*, 690 So.3d at 280–81; *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, [if] unaccompanied by any continuing, present adverse effects."). As things stand today, with an unreviewed public warning on the books, I do not disagree that the judge faces a credible threat of future investigation and sanctions by the Commission if she resumes her marriage policy. But any such threat would have all but disappeared had she sought review in the SCR and prevailed.

Not so, the Court concludes, because the SCR has no power to prospectively bind the Commission with respect to future investigations and sanctions, nor is an SCR, composed of newly appointed justices for each case, bound by the decisions of previous SCRs. *Ante* at 197. However, even if the SCR's vacatur of the sanction against the judge would not have categorically foreclosed the Commission from "re-sanctioning" **\*214** her if she resumed the sanctioned conduct, the mere possibility that the Commission *could* do so does not amount to a credible threat that it *would*. The notion that the Commission would devote its time and resources to such an endeavor after having its sanction vacated on judicial

review, hoping for a different result the second time around, while not unfathomable, is certainly less than credible.

Second, the judge asserts several requests for declaratory relief. TEX. CIV. PRAC. & REM. CODE § 110.005(a)(1) (authorizing a person who successfully asserts a TRFRA claim to recover declaratory relief under the UDJA). These include requests for a declaration that the Commission violated her rights under TRFRA by sanctioning her for recusing herself from officiating same-sex weddings, that the Commission's interpretation of Canon 4A violates the Free Speech Clause,[2] and that a judge does not violate Canon 4A by engaging in the same type of religious speech and referral system. As the Court notes, those requests are subject to the same exhaustion requirement as her request for injunctive relief because all hinge on whether "the prospective threat of future sanctions would remain following vacatur of the Public Warning." *Ante* at 198. Because I conclude that a credible threat of future sanctions would *not* remain following vacatur, I would hold that the claims are barred by the failure to exhaust.[3]

Finally, the judge seeks compensatory damages for the Commission's alleged past violations of TRFRA. TEX. CIV. PRAC. & REM. CODE § 110.005(a)(3), (b) (authorizing a person who successfully asserts a TRFRA claim to recover compensatory damages up to $10,000 for each controversy). I agree with the Court that an SCR's vacatur of the public warning would not have mooted the claim seeking redress for the burden of the warning during the time it was in effect. *Ante* at 196–97. But it would have significantly shortened that period and, in turn, lowered the amount of lost income attributable to the warning.

Unlike most civil litigation, judicial review of a Commission decision issued after an informal proceeding, as happened here, is a streamlined process. A judge who seeks such review must file a request with the Chief Justice of this Court for appointment of an SCR within thirty days after the Commission issues its decision. TEX. GOV'T CODE § 33.034(b). Within ten days of receiving the request, the Chief Justice must select "by lot" the justices that will serve on the SCR. *Id.* § 33.034(c). Within fifteen days after the SCR is appointed, the Commission must file a charging document that includes the sanction or censure. *Id.* § 33.034(d). Absent a continuance for good cause, which may not exceed a total of sixty days, the SCR must conduct a de novo hearing on the charging document within thirty days after the date the document is filed. *Id.* § 33.034(h). And the SCR must issue its decision within sixty days after the hearing. *Id.* At most, the process takes less than eight months from

start to finish. By contrast, the current lawsuit has already been pending for approximately four-and-a-half years.

**\*215** Utilizing available administrative remedies to minimize the damages that will ultimately be sought against a governmental unit is consistent with the purpose of requiring exhaustion. That is, such an approach ensures "an orderly procedure to enforce" a party's legal rights; it does not "deprive" the party of said rights. *Rhule*, 417 S.W.3d at 442. Further, exhaustion would (or at least could) have resulted in a more streamlined and efficient TRFRA lawsuit on the back end, lowering the amount of attorney's fees that will inevitably be sought against the Commission if the judge prevails. TEX. CIV. PRAC. & REM. CODE § 110.005(a)(4) (authorizing a person who successfully asserts a TRFRA claim to recover "reasonable attorney's fees, court costs, and other reasonable expenses incurred in bringing the action"). By failing to exhaust, she maximizes her damages and attorney's fees in derogation of the "orderly procedure" envisioned by the doctrine.

In sum, the judge could and should have engaged in the procedure provided by the Government Code for obtaining judicial review of the public warning, as nothing precluded her from bringing affirmative claims under TRFRA and the UDJA after exhausting that procedure. *See CPS Energy*, 671 S.W.3d at 620. Because she did not, the district court lacked jurisdiction and appropriately dismissed this suit. *Chaparral Energy*, 546 S.W.3d at 138 ("When an agency has exclusive jurisdiction, courts lack jurisdiction until the party has exhausted all administrative remedies before the agency.").

I express no opinion on the merits of the judge's TRFRA claims.[4] I would hold only that she failed to exhaust her administrative remedies before filing this suit, thereby depriving the district court of jurisdiction. Because the Court holds that exhaustion was not required, I respectfully dissent.

**All Citations**

692 S.W.3d 184, 67 Tex. Sup. Ct. J. 1369

---

### Footnotes

[1]  *See* TEX. CONST. art. XVI, § 1(a) ("All elected and appointed officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation: 'I, [name], do solemnly swear (or affirm), that I will faithfully execute the duties of the office of [name office] of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.' ").

[2]  *See* TEX. CODE JUD. CONDUCT, Canon 2(A), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. C ("A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."). We refer to the provisions of the Texas Code of Judicial Conduct as Canons.

[3]  *See Republican Party of Minn. v. White*, 536 U.S. 765, 788, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (holding that "prohibiting candidates for judicial election from announcing their views on disputed legal and political issues violates the First Amendment").

[4]  *See* TEX. CODE JUD. CONDUCT, Canon 4A ("A judge shall conduct all of the judge's extra-judicial activities so that they do not: (1) cast reasonable doubt on the judge's capacity to act impartially as a judge; or (2) interfere with the proper performance of judicial duties.").

**Hensley v. State Commission on Judicial Conduct, 692 S.W.3d 184 (2024)**

67 Tex. Sup. Ct. J. 1369

5     *See* TEX. CONST. art. V, § 1-a; TEX. GOV'T CODE §§ 33.001-33.051.

6     *See, e.g.*, TEX. R. CIV. P. 18a (motions to recuse); *id.* R. 18b(b) ("A judge must recuse in any proceeding in which: (1) the judge's impartiality might reasonably be questioned; (2) the judge has a personal bias or prejudice concerning the subject matter or a party ...."); *see also Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009) (holding that there is a federal due process right to recusal "when 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable' " (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975))).

7     A justice of the peace serves a county precinct. *See* TEX. CONST. art. V, § 18. Very generally, justice courts have civil jurisdiction over small claims involving up to $20,000 and criminal jurisdiction over misdemeanors punishable by fine only. *See* TEX. GOV'T CODE §§ 27.001-27.060. There are around 800 justices of the peace in Texas. *See* Office of Court Administration, ANNUAL STATISTICAL REPORT FOR THE TEXAS JUDICIARY: FY 2022, at v (2023).

8     *See* TEX. FAM. CODE § 2.202(a)(4), (b) (authorizing "a current, former, or retired federal judge or state judge", as defined by Section 25.025 of the Tax Code, to conduct a marriage ceremony); TEX. TAX CODE § 25.025 (a-1)(3)(c) (" 'State judge' means ... a justice of the peace ....").

9     *See* TEX. CONST. art. V, § 1-a(2); TEX. GOV'T CODE § 33.002(a-1) ("The commission is an agency of the judicial branch of state government and administers judicial discipline.").

10    State Comm'n on Jud. Conduct, *Public Warning: Honorable Dianne Hensley, Justice of the Peace, Precinct 1, Place 1, Waco, McLennan County, Texas*, CJC No. 17-1572 (Nov. 12, 2019) https://www.scjc.texas.gov/media/46780/hensley17-1572pubwarn111219.pdf.

11    *See* TEX. GOV'T CODE § 33.034.

12    TEX. CIV. PRAC. & REM. CODE §§ 110.001-110.012.

13    "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press." TEX. CONST. art. I, § 8.

14    683 S.W.3d 152 (Tex. App.—Austin 2022).

[15]  Hensley's requested declaration against the Commission (but not the commissioners) that Canon 4A violates the Free Speech Clause is barred by sovereign immunity, as discussed in Part III.C below.

[16]  McLennan County is in central Texas. Its estimated population is 268,583, and its county seat is Waco.

[17]  *See* TEX. CONST. art. I, § 32(a); TEX. FAM. CODE § 6.204(b).

[18]  576 U.S. 644, 680, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015).

[19]  *See* TEX. CONST. art. V, § 1-a(7) ("The Commission shall keep itself informed as fully as may be of circumstances relating to the misconduct or disability of [judges] ... and make such preliminary investigations as it may determine.").

[20]  The Commission may discipline a judge for "willful or persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice." *Id.* § 1-a(6)(A). Among other things, "the Commission may in its discretion issue a private or public admonition, warning, reprimand, or requirement that the person obtain additional training or education". *Id.* § 1-a(8).

[21]  "A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status ...." TEX. CODE JUD. CONDUCT, Canon 3B(6).

[22]  *See supra* note 4.

[23]  Under Rule 6 of the Commission's procedural rules, the Commission may offer a judge the opportunity to appear informally before the Commission terminates its investigation. Evidence is limited to the judge's testimony and documentary evidence, and the judge may be represented by counsel. Hensley had three lawyers present at her hearing.

[24]  TEX. GOV'T CODE § 33.034(a).

[25]  *Id.* § 33.034(b).

26    We refer to the defendants collectively as the Commission unless the context or an express statement indicates otherwise.

27    TEX. CIV. PRAC. & REM. CODE § 110.003(a)-(b).

28    *Id.* § 110.002(a).

29    *See id.* § 110.008(a) ("Subject to Section 110.006, sovereign immunity to suit and from liability is waived and abolished to the extent of liability created by Section 110.005 ....").

30    *Id.* § 110.005(a)-(b).

31    This provision authorizes a sanction for "willful or persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice." TEX. CONST. art. V, § 1-a(6)(A).

32    TEX. CIV. PRAC. & REM. CODE § 110.006.

33    *See* TEX. GOV'T CODE § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

34    *See id.* § 33.006(b)-(c) (providing that the Commission and commissioners are "not liable for an act or omission committed by the person within the scope of the person's official duties", and "[t]he immunity from liability provided by this section is absolute and unqualified and extends to any action at law or in equity").

35    *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019) ("[T]he UDJA ... provid[es] only a limited waiver for challenges to the validity of an ordinance or statute." (citing *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011))).

36    *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) ("To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act.").

37    "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).

38    683 S.W.3d at 152. The trial court also granted the plea to the jurisdiction on the bases that Hensley was seeking an advisory opinion and seeking to litigate unripe claims and granted the Commission's alternative plea of estoppel. The court of appeals did not address these additional reasons for granting the plea to the jurisdiction, nor did it address any reasons for granting the plea of estoppel.

Hensley moved for summary judgment on her claims. The trial court did not rule on her motion, and the court of appeals did not discuss her arguments that the motion should have been granted. Hensley and the Commission both brief the summary-judgment issues here, but we decline to address them in the first instance.

39    *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 617 (Tex. 2023) (citing *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018)); *see also* TEX. CONST. art. V, § 8.

40    *CPS Energy*, 671 S.W.3d at 617 (citing *Chaparral Energy*, 546 S.W.3d at 138).

41    *Id.* (quoting *Chaparral Energy*, 546 S.W.3d at 138).

42    *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 544 (Tex. 2016) (citing *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013)); *see also In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004); *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000).

43    *CPS Energy*, 671 S.W.3d at 617 (alteration in original) (quoting *Chaparral Energy*, 546 S.W.3d at 139).

44    *Id.* at 617-618.

45    *See id.* at 618-620; *Garcia v. City of Willis*, 593 S.W.3d 201, 211-212 (Tex. 2019); *City of Beaumont v. Como*, 381 S.W.3d 538, 540 (Tex. 2012); *Patel v. City of Everman*, 361 S.W.3d 600, 601-602 (Tex. 2012); *City of Dallas v. Stewart*, 361 S.W.3d 562, 579-580 (Tex. 2012); *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 235-237 (Tex. 2011).

46    A cursory reading of *CPS Energy* might suggest otherwise. *See* 671 S.W.3d at 620. That case addressed a scenario where the agency's determination on the issue within the area of its exclusive jurisdiction had the potential—but was not guaranteed—to moot the plaintiff's constitutional claims. Requiring exhaustion was appropriate there because the agency's determination could have eliminated the need for the independent suit, and constitutional claims could still be pursued following exhaustion if they weren't mooted by the agency's determination. *CPS Energy*

did not address a scenario where exhaustion had no potential to moot the plaintiff's constitutional claims *at all.*

47    *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212 (Tex. 2002) (holding that a party who did not challenge an agency's findings was not required to pursue the available remedy of an appeal before suing in district court); *see also Hous. Fed'n of Tchrs., Loc. 2415 v. Hous. Indep. Sch. Dist.,* 730 S.W.2d 644, 646 (Tex. 1987) ("Parties are not required to pursue the administrative process regardless of the price. If irreparable harm will be suffered and if the agency is unable to provide relief, the courts may properly exercise their jurisdiction in order to provide an adequate remedy.").

48    TEX. CONST. art. V, § 1-a(2) to (14).

49    *See, e.g.,* TEX. GOV'T CODE §§ 33.002, 33.021.

50    *Id.* §§ 33.0211-33.0212, 33.022.

51    *Id.* § 33.034.

52    *Id.* § 33.002(a-1).

53    *Id.*

54    TEX. CONST. art. V, § 1-a(2).

55    *Id.* § 1-a(3).

56    *Id.* § 1-a(7).

57    *See Hagstette v. State Comm'n on Jud. Conduct,* No. 01-19-00208-CV, 2020 WL 7349502, at *5 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, no pet.) (mem. op.) (holding that the trial court lacked jurisdiction over a suit by three judges to declare sanctions issued by the Commission void); *Schied v. Merritt,* No. 01-15-00466-CV, 2016 WL 3751619, at *6 (Tex. App.—Houston [1st Dist.] July 12, 2016, no pet.) (mem. op.) (holding that it lacked jurisdiction to adjudicate a claim that the trial judge's breached the Code of Judicial Conduct).

58    TEX. GOV'T CODE § 33.034(a)-(b).

59    *See In re Uzomba*, 683 S.W.3d 358, 363-364 (Tex. Spec. Ct. Rev. 2024) (per curiam) (noting "the recent opinion of another special court of review" that concluded "that the [SCR] may sua sponte determine that [a] Respondent violated additional canons", but nevertheless sustaining the Respondent's "objections to the additional charges" that "were not included in [the Commission's] charging document").

60    See Rule 9(d) of the Procedural Rules for the State Commission on Judicial Conduct.

61    *See* TEX CONST. art. V, § 1 ("The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."). In line with this, the SCR has interpreted its own jurisdiction exceedingly narrowly. *See In re Jenevein*, 158 S.W.3d 116 (Tex. Spec. Ct. Rev. 2003); *In re Keller*, 357 S.W.3d 413 (Tex. Spec. Ct. Rev. 2010). For example, in *Jenevein*, the SCR dismissed an appeal from a Commission order of public censure because it had resulted from "formal", not "informal", proceedings. 158 S.W.3d at 119. The Legislature subsequently found it necessary to amend the governing statute to provide a statutory right to appeal formal "censures" to the SCR. *Keller*, 357 S.W.3d at 420 n.9 (citing TEX. GOV'T CODE § 33.034).

62    *See* TEX. CIV. PRAC. & REM. CODE § 110.004 ("A person whose free exercise of religion has been substantially burdened in violation of [TRFRA] may assert that violation as a defense in a judicial or administrative proceeding without regard to whether the proceeding is brought in the name of the state or by any other person.").

63    Were Hensley requesting reversal of the Public Warning in her current action, the request would be barred by her failure to seek review of the Public Warning in the SCR. When the Legislature specifies procedures for obtaining judicial review of an agency decision, the appeal of that decision must be taken in compliance with those procedures. *See Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 891-892 (Tex. 1986) (concluding that a statute's requirement for an appeal to be taken in a particular court meant that "[t]he decision to appeal is optional, but the place of trial is jurisdictional"), *overruled on other grounds by Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000).

64    TRFRA does not necessarily require that a plaintiff file suit while the substantial burden is still in place. *See* TEX. CIV. PRAC. & REM. CODE § 110.007(a) ("A person must bring an action to assert a claim for damages under this chapter not later than one year after the date the person knew or should have known of the substantial burden on the person's free exercise of religion."). However, if the agency that caused the burden alleviates that burden before the burdened party files suit, the aggrieved party may not bring a TRFRA claim. *Id.* § 110.006(c) ("A *government agency* that receives a notice under Subsection (a) may remedy the substantial burden on the person's free exercise of religion." (emphasis added)); *id.* § 110.006(e) ("A person with respect to whom a substantial burden on the person's free exercise of religion has been cured by a remedy implemented under [Section 110.006(c)] may not bring an action under Section 110.005."). Because the SCR—not the Commission itself—would have vacated the Public Warning, the *government agency* that caused Hensley's burden would not have alleviated that burden and Hensley would not be foreclosed from bringing a TRFRA action. *See Keller*, 357 S.W.3d at 431 ("vacat[ing] the Commission's order" and "dismiss[ing] the ... charging document"); *In re Ginsberg*, 630 S.W.3d 1, 20 (Tex. Spec. Ct. Rev. 2018)

("revers[ing] the Commission's public admonition of the [judge] and dismiss[ing] the charges against him without sanction").

65     A declaration under the UDJA "has the force and effect of a final judgment or decree." TEX. CIV. PRAC. & REM. CODE § 37.003(b). Such "judgment or decree will terminate the controversy or remove an uncertainty." Id. § 37.003(c). "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." Id. § 37.011.

66     TRFRA's prohibition against a government agency substantially burdening a person's exercise of religion expressly "applies to any ordinance, rule, order, decision, practice, or other exercise of governmental authority." TEX. CIV. PRAC. & REM. CODE § 110.002(a). Hensley does not argue, and we need not decide, whether TRFRA thus preempts a requirement of exhaustion of administrative remedies.

67     It is undisputed that the Commission is a state agency that is entitled to immunity. The State Commission on Judicial Conduct is a constitutionally created agency composed of judges, attorneys, and citizens from the State of Texas. See TEX. CONST. art. V, § 1-a(2); TEX. GOV'T CODE § 33.002(a-1) ("The commission is an agency of the judicial branch of state government and administers judicial discipline."). As a state agency, the Commission is entitled to sovereign immunity. See Miranda, 133 S.W.3d at 224; Hagstette, 2020 WL 7349502, at *4. When a governmental entity challenges jurisdiction on immunity grounds, the plaintiff's burden of affirmatively demonstrating jurisdiction includes establishing a waiver of immunity. Swanson, 590 S.W.3d at 550.

68     TEX. CIV. PRAC. & REM. CODE § 110.008(a).

69     Id. § 110.006(a).

70     See Barr v. City of Sinton, 295 S.W.3d 287 (Tex. 2009) (holding that an ordinance passed to ban halfway houses operated as part of a religious ministry burdened religious freedom from the moment it was passed, even though it was never enforced).

71     The court of appeals held that TRFRA does not waive the Commission's immunity because Hensley has not shown that she has a "successful" claim. 683 S.W.3d at 161. But Hensley need not prove her claim for immunity to be waived. The district court would lack jurisdiction over Hensley's action if she failed to plead facts supporting claims for which immunity is waived. See Miranda, 133 S.W.3d at 226. The Commission has not asserted that the facts Hensley alleges in her pleadings are insufficient to support her claims.

We have indicated that TRFRA's presuit notice requirement is not jurisdictional. In Barr, we acknowledged the trial court's finding of a "fail[ure] to give notice as required by [TRFRA]", but we did not engage in sua sponte review of our jurisdiction as we must whenever our jurisdiction is uncertain, and we concluded that plaintiffs were entitled to relief. 295 S.W.3d at 292 n.8, 308; see also Morgan v. Plano Indep. Sch. Dist., 724 F.3d 579, 591 (5th Cir. 2013) (Elrod, J., dissenting) (concluding that the Texas Supreme Court does not consider a plaintiff's failure to provide

proper notice under TRFRA to be a jurisdictional defect). *But see State v. Valerie Saxion, Inc.*, 450 S.W.3d 602, 615 n.11 (Tex. App.—Fort Worth 2014, no pet.) (citing the *Morgan* majority's proposition that "[T]RFRA's pre-suit notice requirement is jurisdictional").

72    TEX. GOV'T CODE § 33.006(c).

73    *See Tarrant County v. Bonner*, 574 S.W.3d 893, 900 (Tex. 2019) ("Immunity from liability and immunity from suit are distinct aspects of governmental immunity under common law. Immunity from liability protects governmental entities from judgments; immunity from suit protects those entities from the burdens of litigation altogether, absent legislative consent." (citations omitted)).

74    *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003).

75    The parties also dispute the relationship between Section 33.006 and the express waiver of sovereign immunity in TRFRA Section 110.008. We express no opinion on the matter in this case.

76    Hensley made other requests for declaratory relief against the Commission in the trial court that she has abandoned on appeal.

77    TEX. CIV. PRAC. & REM. CODE § 37.004(a).

78    TEX. GOV'T CODE § 2001.038(a).

79    *Id.* § 2001.003(6).

80    *Id.* § 2001.003(7)(c).

81    *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 76 (Tex. 2015).

82    *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 163 (Tex. 2016).

83    *Id.*

84    *Stewart*, 361 S.W.3d at 578-579.

85    TEX. CONST. art. V, § 1-a(8).

1    By my reading of the parties' pleadings in the district court and the way this appeal has been postured, there are likely multiple pathways by which the Court could validly address the merits of some or all of Hensley's claims if it chose to do so. I focus on the ultra vires claim because, at least in my mind, it provides the simplest and most well-worn avenue.

2    The Commission argues that the ultra vires claims fail for the additional reason that section 33.006 of the Government Code grants "immunity from liability" to the Commissioners that is "absolute and unqualified." TEX. GOV'T CODE § 33.006. If this argument were correct, then we would not need to reach the merits of the ultra vires claims. In my view, it is not correct. As we said in *City of El Paso v. Heinrich* and have repeated since then, the use in ultra vires claims of nominal defendants in their official capacity as stand-ins for the governmental entity is merely a "technical matter," because "the suit is, for all practical purposes, against the state." 284 S.W.3d 366, 372–73 (Tex. 2009); *see also Chambers–Liberty Cntys.*, 575 S.W.3d at 348–49. Although the Commissioners are nominal defendants, they face no genuine personal liability by virtue of this litigation, so section 33.006 does not apply. Yet even if I am wrong about section 33.006, then as indicated above, other procedural avenues available to the Court make it possible to address the merits now, including through the TRFRA claim against the Commission itself. I do not analyze those avenues in detail because, in my mind, the ultra vires claim provides a valid basis to reach the merits.

3    *See* TEX. CODE JUD. CONDUCT, Canon 8A, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B ("The Sections are rules of reason, which should be applied consistent with constitutional requirements, statutes, other court rules and decisional law and in the context of all relevant circumstances.").

4    TEX. CODE JUD. CONDUCT, Canon 4A ("A judge shall conduct all of the judge's extra-judicial activities so that they do not: (1) cast reasonable doubt on the judge's capacity to act impartially as a judge; or (2) interfere with the proper performance of judicial duties.").

5    Usually, judicial review of the Commission's interpretation of the Code of Judicial Conduct will take place through the procedures contained in the Government Code and the Constitution, by which sanctioned judges may seek redress in the courts. TEX. GOV'T CODE § 33.034 (authorizing a "special court of review" to review certain minor sanctions); TEX. CONST. art. V, § 1-a(9) (permitting review by this Court of a "review tribunal" decision in cases of removal from the bench). But in some cases, like Hensley's, the ongoing threat of further sanction hanging over the judge's head due to the Commission's unlawful position is a cognizable injury that can be remedied by a civil lawsuit initiated by the judge. As the Court holds, a judge cannot use a civil lawsuit to collaterally attack a prior sanction he has chosen not to administratively appeal, but he can use a civil lawsuit to attack the Commission's erroneous view of the law if pursuing the prior administrative appeal would not necessarily have alleviated the ongoing threat to the judge posed by the Commission's error. *Ante* at 198. In other words, a judge in Hensley's situation need not

reinstate her marriage-referral policy in defiance of the Commission's warning, wait for the Commission to impose an even greater sanction, and then appeal that sanction to the courts. She can instead seek to establish her rights through a civil lawsuit like this one, which seeks prospective relief from the threat of future sanction. And, because her religious-freedom rights are implicated, Judge Hensley may also pursue a TRFRA claim, by which the Legislature has authorized both retrospective and prospective relief that was not available in the administrative appeal Judge Hensley decided not to pursue. *See* TEX. CIV. PRAC. & REM. CODE §§ 110.001–.012.

[6]    If Judge Hensley's actions do not violate the Code of Judicial Conduct at all, then her other claims will either succeed *a fortiori* or become unnecessary. With respect to the TRFRA claim, there is no genuine question that the Commission's actions substantially burdened Judge Hensley's free exercise of religion. *See* TEX. CIV. PRAC. & REM. CODE § 110.003(a). The contested question is whether the Commission did so "in furtherance of a compelling governmental interest." *Id.* § 110.003(b)(1). There is obviously no compelling governmental interest in misapplying the Code of Judicial Conduct.

[7]    Just as *Obergefell* did not alter the Texas Code of Judicial Conduct, neither did *Bostock v. Clayton County*, 590 U.S. 644, 140 S.Ct. 1731, 207 L.Ed.2d 218 (2020).

[8]    The ellipses are a courtesy to our friend from earlier, the atheist judge. *Supra* at 206–07. The entire provision reads: "No religious test shall ever be required as a qualification to any office, or public trust, in this State; nor shall any one be excluded from holding office on account of his religious sentiments, *provided he acknowledge the existence of a Supreme Being.*" (emphasis added).

[9]    *Compare* Sir Edward Coke, Speaker of the Parliament of England, Three Petitions to the Queen in the House of Commons (Feb. 22, 1593), *reprinted in* 3 THE SELECTED WRITINGS AND SPEECHES OF SIR EDWARD COKE 7 (Steve Sheppard ed., 2003), https://oll-resources.s3.us-east-2.amazonaws.com/oll3/store/titles/913/Coke_0462-03_EBk_v6.0.pdf ("Now am I to make unto your maj. 3 Petitions, in the name of the Commons; 1st, That Liberty of Speech, and Freedom from arrests, according to the ancient custom of parl. be granted to your subjects ...."); *and* RHODE ISLAND ROYAL CHARTER (1663), *transcribed by* RHODE ISLAND STATE ARCHIVES, https://docs.sos.ri.gov/documents/civicsandeducation/teacherresources/RI-Charter-annotated.pdf ("Have therefore thought fit, and do hereby publish, grant, ordain and declare, that our royal will and pleasure is, that no person within the said colony, at any time hereafter shall be any wise molested, punished, disquieted, or called in question, for any differences in opinion in matters of religion, and do not actually disturb the civil peace of our said colony; but that all and every person and persons may, from time to time, and at all times hereafter, freely and fully have and enjoy his and their own judgments and consciences, in matters of religious concernments ...."); *and* U.S. CONST. art. VI, cl. 3 (1788) ("[N]o religious Test shall ever be required as a Qualification to any Office or public Trust under the United States."); *and* U.S. CONST. amend. I (1791); *and* TEX. CONST. art. I, §§ 4, 6, 8 (1876); *with Obergefell*, 576 U.S. at 681, 135 S.Ct. 2584 (decreeing a right to same-sex marriage in 2015).

[1]    We have also recognized an exception to the exhaustion requirement "when the claimant cannot obtain an adequate remedy through the administrative process and requiring the claimant to go through the process would cause the claimant irreparable harm." *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 141 (Tex. 2018) (citing *Hous. Fed'n of Tchrs., Loc. 2415 v. Hous. Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex. 1987)). The judge

does not argue that seeking judicial review in the SCR before filing this suit would have caused her irreparable harm.

[2]     The Court holds that this claim was correctly dismissed because it is barred by sovereign immunity, not because the judge failed to exhaust. *Ante* at 200–01.

[3]     The Court holds that the judge may also proceed with her claim for a declaration that her conduct did not violate Canon 3B(6) or Article V, Section 1-a(6)(A) of the Texas Constitution. *Ante* at 197–98. Again, I disagree. The Commission ultimately found only that the judge violated Canon 4A and issued the public warning solely on that basis. She cannot legitimately claim a credible threat that the Commission will sanction her in the future for violating canons that the Commission has already concluded she did *not* violate.

[4]     As neither the trial court nor the court of appeals has addressed the merits, the Court appropriately declines to do so in the first instance. *See In re Troy S. Poe Tr.*, 646 S.W.3d 771, 780 (Tex. 2022) ("As a court of last resort, it is not our ordinary practice to be the first forum to resolve novel questions, particularly ones of widespread import.").

---

                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    31

# APPENDIX 5

*Umphress v. State Commission on Judicial Conduct,* 500 F.Supp.3d 553 (N.D.Tex. 2020)

(Copy of Opinion), ROA.289-506.

KeyCite Blue Flag – Appeal Notification

Appeal Filed by UMPHRESS v. HALL, 5th Cir., December 11, 2020

500 F.Supp.3d 553
United States District Court, N.D. Texas, Fort Worth
Division.

Brian Keith UMPHRESS, Plaintiff,
v.
David C. HALL, in his official capacity as Chair of
the State Commission on Judicial Conduct et al.,
Defendants.

Civil Action No. 4:20-cv-00253-P
|
Signed 11/12/2020

**Synopsis**
**Background:** State court judge brought action against
State Commission on Judicial Conduct, seeking
declaratory and injunctive relief regarding several issues
related to his refusal to perform same-sex marriages based
on basis of his Christian faith and his contention that
same-sex marriage remained illegal under Texas law.
Commission moved to dismiss for lack of standing.

**Holdings:** The District Court, Mark T. Pittman, J., held
that:

[1] judge lacked Article III standing to sue Commission;

[2] judge's claims were not ripe for judicial review; and

[3] *Pullman* abstention from judge's suit was appropriate.

Motion granted.

Amending and superseding, 2020 WL 6583025.

**Procedural Posture(s):** Motion to Dismiss for Lack of
Standing.

West Headnotes (21)

**[1]**      **Federal Civil Procedure**⟐In general;  injury or
interest

**Federal Civil Procedure**⟐Causation;
redressability

Standing, at its irreducible constitutional
minimum, requires plaintiffs to demonstrate
that: they have suffered an injury in fact, the
injury is fairly traceable to the defendant's
actions, and the injury will likely be redressed
by a favorable decision. U.S. Const. art. 3, § 2,
cl. 1.

1 Case that cites this headnote

**[2]**      **Federal Civil Procedure**⟐In general;  injury or
interest

The party invoking federal jurisdiction bears the
burden of establishing each element of standing
in the same way as any other matter on which
the plaintiff bears the burden of proof, that is,
with the manner and degree of evidence required
at the successive stages of the litigation. U.S.
Const. art. 3, § 2, cl. 1.

**[3]**      **Federal Civil Procedure**⟐In general;  injury or
interest

To satisfy the injury-in-fact requirement for
standing, an allegedly forthcoming injury must
be certainly impending. U.S. Const. art. 3, § 2,
cl. 1.

**[4]**      **Federal Civil Procedure**⟐In general;  injury or
interest

Although imminence is a somewhat elastic

concept in the context of satisfying injury-in-fact requirement for Article III standing, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes. U.S. Const. art. 3, § 2, cl. 1.

---

**[5]**    **Federal Civil Procedure**⚷In general; injury or interest

Article III standing requires more than a speculative fear of prosecution, rather there must be a credible threat of prosecution. U.S. Const. art. 3, § 2, cl. 1.

1 Case that cites this headnote

---

**[6]**    **Federal Courts**⚷Injury, harm, causation, and redress

When plaintiffs do not claim that they have ever been threatened with prosecution or that a prosecution is likely they do not allege a dispute susceptible to resolution by a federal court. U.S. Const. art. 3, § 2, cl. 1.

1 Case that cites this headnote

---

**[7]**    **Federal Civil Procedure**⚷Pleading

Mere allegations of a subjective chill on exercise of constitutional rights are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm, required for Article III standing. U.S. Const. art. 3, § 2, cl. 1.

---

**[8]**    **Federal Courts**⚷Injury, harm, causation, and redress

To invoke a federal trial court's jurisdiction, a litigant must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. U.S. Const. art. 3, § 2, cl. 1.

---

**[9]**    **Federal Courts**⚷Nature of dispute; concreteness

The case or controversy requirement forecloses a federal court's consideration of abstract, hypothetical, and conjectural questions, and, indeed, of all matters save those involving parties who have a real dispute about a matter in which their interests are genuinely adverse. U.S. Const. art. 3, § 2, cl. 1.

2 Cases that cite this headnote

---

**[10]**    **Constitutional Law**⚷First Amendment in General

Allegation by state court judge that decision by State Commission on Judicial Conduct to issue a public warning of disciplinary action to a different judge in a different county for refusing to perform same-sex marriage ceremonies had a chilling effect on his First Amendment rights because he feared he would face disciplinary action if he continued to refuse to officiate at same-sex marriage ceremonies, or if he announced his opposition to same-sex marriage when he sought reelection, did not constitute a sufficiently imminent injury-in-fact, as required for Article III standing to sue Commission, especially since Commission asserted that there were no plans to investigate or discipline judge and that they would neither investigate nor

discipline him if he acted in the way that he claimed. U.S. Const. Amend. 1; U.S. Const. art. 3, § 2, cl. 1.

1 Case that cites this headnote
More cases on this issue

---

**[11]** **Judges**⚖️Jurisdiction or authority to remove or discipline

Texas Constitution expressly affords the Commission on Judicial Conduct oversight over a judicial candidate's conduct.

---

**[12]** **Constitutional Law**⚖️Post-Secondary Institutions

Universities are important forums where free speech and debate takes place. U.S. Const. Amend. 1.

---

**[13]** **Federal Courts**⚖️Nature of dispute; concreteness

Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements until a decision has been formalized and its effects felt in a concrete way by the challenging parties.

---

**[14]** **Federal Courts**⚖️Fitness and hardship

Determining whether an issue is ripe for judicial review requires considering the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

---

**[15]** **Constitutional Law**⚖️Ripeness; prematurity

Claims asserted by state court judge against State Commission on Judicial Conduct alleging that Commission's decision to issue public warning of disciplinary action to a different judge in a different county for refusing to perform same-sex marriage ceremonies had a chilling effect on his First Amendment rights because he feared he would face disciplinary action if he continued to refuse to officiate at same-sex marriage ceremonies, or if he announced his opposition to same-sex marriage when he sought reelection, were not ripe for judicial review, where judge planned to run for reelection in two years, and the Commission repeatedly disclaimed any plans to investigate or discipline him if he continued to act in the way he claimed. U.S. Const. Amend. 1; U.S. Const. art. 3, § 2, cl. 1.

More cases on this issue

---

**[16]** **Federal Courts**⚖️Pullman abstention

*Pullman* abstention from state court judge's suit against State Commission on Judicial Conduct alleging that Commission's decision to issue public warning of disciplinary action to a different judge in a different county for refusing to perform same-sex marriage ceremonies had a chilling effect on his First Amendment rights because he feared he would face disciplinary action if he continued to refuse to officiate at same-sex marriage ceremonies, or if he announced his opposition to same-sex marriage when he sought reelection, was appropriate; judge had a pending state court suit addressing the state law grounds on which his claims would

be decided, and should the state court decide the issues in judge's favor it would render any federal constitutional decision unnecessary. U.S. Const. Amend. 1.

More cases on this issue

---

**[17]    Federal Courts**👈**Pullman abstention**

For *Pullman* abstention to be appropriate federal action must involve (1) a federal constitutional challenge to state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal constitutional question.

1 Case that cites this headnote
More cases on this issue

---

**[18]    Federal Courts**👈**Pullman abstention**

Generally, *Pullman* abstention is appropriate only when there is an issue of uncertain state law that is fairly subject to an interpretation by a state court which will render unnecessary or substantially modify the federal constitutional question.

1 Case that cites this headnote
More cases on this issue

---

**[19]    Federal Courts**👈**Pullman abstention**

*Pullman* abstention doctrine is not an automatic rule to be applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers.

More cases on this issue

---

**[20]    Federal Courts**👈**Right to Decline Jurisdiction; Abstention**

Abstention is more appropriate when there is a direct route to obtaining an answer from the state's highest court rather than having to litigate through the entire state hierarchy of courts.

1 Case that cites this headnote

---

**[21]    Federal Courts**👈**Pullman abstention**

One of the important interests that *Pullman* abstention seeks to promote is harmonious relations between state and federal authority.

More cases on this issue

---

**Attorneys and Law Firms**

**\*555** Jonathan F. Mitchell, Austin, TX, Charles W. Fillmore, The Fillmore Law Firm LLP, Fort Worth, TX, David Lee Spiller, Mason Spiller, Reid Spiller, Spiller & Spiller, Jacksboro, TX, H. Dustin Fillmore, III, The Fillmore Law Firm LLP, Fort Worth, TX, Michael Dan Berry, Jeremiah Grant Dys, First Liberty Institute, Plano, TX, for Plaintiff.

John J. McKetta, III, Graves Dougherty Hearon & Moody, Austin, TX, David R. Schleicher, Schleicher Law Firm PLLC, Waco, TX, Roland K. Johnson, Harris Finley & Bogle, Fort Worth, TX, for Defendants.

---

**AMENDED MEMORANDUM OPINION AND ORDER**[1]

MARK PITTMAN, UNITED STATES DISTRICT JUDGE

Beginning with Chief Justice Roberts's dissent[2] and Justice Thomas's dissent[3] to **556** *Obergefell*, jurists have recognized that the fundamental rights of religious freedom and marriage (now including same-sex marriage) are on an inevitable collision course. *See Davis v. Ermold, et al.*, 592 U.S. ——, 141 S.Ct. 3, 208 L.Ed.2d 137 (2020) (Thomas, J., statement respecting the denial of certiorari) (recognizing that "[d]ue to *Obergefell*, those with sincerely held religious beliefs concerning marriage will find it increasingly difficult to participate in society without running afoul of *Obergefell* and its effect on other antidiscrimination laws"). The undersigned fully agrees that, at some point, a federal court will be called upon to resolve an actual controversy in which these rights are in direct conflict. This case is not that point.

*First*, Plaintiff Brian Keith Umphress, currently the County Judge of Jack County, Texas, simply has not alleged (and cannot allege) facts to demonstrate that he has standing to challenge Defendants David C. Hall, in his official capacity as Chair of the State Commission on Judicial Conduct; Ronald E. Bunch, in his official capacity as Vice-Chair of the State Commission on Judicial Conduct; David M. Patronella; Darrick L. McGill; Sujeeth B. Draksharam; Ruben G. Reyes; Valerie Ertz; Frederick C. Tate; Steve Fischer; Janis Holt; M. Patrick Maguire; and David Schenck, each in their official capacities as Members of the State Commission's ("Commission") application of Judicial Canon 4A(1) of the Texas Code of Judicial Conduct. Thus, the Constitution mandates that the Court dismiss this action as failing Article III's case or controversy requirement. *Second*, there is currently a Texas state-court case pending involving another Texas judge who was allegedly harmed by the Commission's application of Canon 4A(1) in the way that Judge Umphress complains of here. Because that case provides the most appropriate vehicle for the challenged state action to reach Texas's highest court, federalism compels the Court to abstain from considering the constitutionality of a state rule when the state's highest court has not yet had an opportunity review the matter.

Thus, as more fully explained below, the Court **GRANTS** the Commission's Motion to Dismiss for lack of jurisdiction.

## BACKGROUND

A few months before filing his complaint, Judge Umphress heard that the Commission had issued a "public warning" to Judge Diane Hensley, a Justice of the Peace in McClennan County, Texas, because she had a policy of recusing herself from officiating at same-sex marriage ceremonies on account of her Christian faith. First Amended Complaint ("FAC") at ¶ 22, ECF No. 9. The Commission found that this particular policy violated Canon 4A(1) of the Texas Code of Judicial Conduct, which holds that "[a] judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge ...." *Id. at* ¶ 23. In their warning, the Commission stated that Judge Hensley "should be publicly warned for casting doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation in violation of Canon 4A(l) of the Texas Code of Judicial Conduct." *Id.*

In response, Judge Hensley filed a class action lawsuit against the Commission asking for declaratory relief to the effect that justices of the peace do not violate Canon 4A(1) by (1) performing traditional weddings, but not same-sex weddings; (2) expressing **\*557** public disapproval of homosexual activity; or (3) affiliating with a church that opposes same-sex marriages. Judge Hensley's lawsuit is currently pending in Travis County. *See Hensley v. State Commission on Judicial Conduct et al.*, No. D-1-GN-20-003926 in the 459th District Court of Travis County, Texas, Petition ¶¶ 80–81.

Judge Umphress[4] asserts that he engages in numerous extrajudicial activities—namely, being a member and supporter of a church that "adheres to longstanding Christian teaching that marriage exists only between one man and one woman, and that homosexual conduct of any sort is immoral and contrary to Holy Scripture"—that expose him to discipline under the Commission's interpretation of Canon 4A(1) as expressed in Hensley's case. FAC at 2. Moreover, he alleges that although he officiates traditional weddings, he refuses to officiate same-sex weddings on the basis of his Christian faith and his contention that same-sex marriage remains illegal under Texas law. *Id.* Judge Umphress contends that because he plans to run for reelection in 2022 on the platform that *Obergefell* was wrongly decided, and because he intends to continue officiating traditional but not same-sex weddings, he is susceptible to discipline from the Commission. *Id.* at ¶ 26. Thus, Judge Umphress seeks declaratory and equitable relief against the Commission's **possible future** enforcement of Judicial Canon 4A(1) of the Texas Code of Judicial Conduct, claiming that the Commission's actions against a different judge located in a different county chilled his First Amendment rights. *Id.* at ¶¶ 37, 44, 54, 63, 74, 77.

In a Joint Status Report filed by the parties in this case, the Commission asserted, *inter alia*, that Judge Umphress

> is not, and has not been, the subject of any investigation or disciplinary proceeding ... [and] that neither the Commission [on Judicial Conduct] nor any Texas court has—to date—expressed the view that Canon 4A(1) would be violated by a judge's choice of church for worship, nor (without more), a judge's choice to decline to perform same-sex marriages, nor a judge's choice to campaign on a platform that opposes same-sex marriage and *Obergefell*.

Joint Status Report at 2–3; *see also* Habersham Declaration in Support of Defendants' Mt. to Dismiss or Transfer at ¶ 7, ECF No. 7-1. The parties later appeared for a hearing at which the Commission's counsel unequivocally confirmed that based on Judge Umphress's pleaded activities: (1) he faced no disciplinary action from the Commission; (2) the Commission does not plan to take any disciplinary action against him; (3), his choice to decline to perform same-sex marriages and to campaign on a platform that opposes same-sex marriage and *Obergefell* is not violative of the Commission's interpretation of Canon 4A(1); and (4) there is no allegation of facts that the Commission would take action against him. ECF No. 20. Importantly, Judge Umphress does not dispute the Commission's assertions. *See* **\*558** *generally*, Joint Status Report; FAC; ECF No. 20.

Now before the Court are two motions filed by Commission. The first is a Motion to Abstain and the second is a Motion to Dismiss Based on Lack of Subject Matter Jurisdiction ("Motion to Dismiss"), Abstention, and Lack of Standing. ECF Nos. 23, 25. The motions were fully briefed and are now ripe for review.

### ANALYSIS

Here, there is simply no case or controversy between the parties and, indeed, no credible indication that there will be a future case or controversy between the parties presenting the Court with a dispute to adjudicate. Judge Umphress is not running for office until 2022, he continues to engage in his allegedly chilled behavior, the Commission expressly stated that it has not and will not prosecute him for his allegedly chilled behavior, and there is a currently pending state court case involving another judge on precisely the same state-law issues at bar that would render a decision on the federal constitutional questions presented unnecessary. For the reasons explained below, the Court finds that Judge Umphress lacks standing and that his claims are unripe. Alternatively, even if the Court had jurisdiction over this action, it would abstain under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).[5]

### A. Judge Umphress lacks standing because the alleged injury lacks imminence and there is no credible threat of prosecution.

[1] [2]Standing, at its "irreducible constitutional minimum," requires plaintiffs "to demonstrate [that]: they have suffered an 'injury in fact'; the injury is 'fairly traceable' to the defendant's actions; and the injury will likely ... be redressed by a favorable decision." *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002) (cleaned up) (citing *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001) and quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "The party invoking federal jurisdiction bears the burden of establishing ... each element ... in the **\*559** same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (collecting cases).

[3] [4] [5] [6] [7]Significantly, an allegedly forthcoming injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient.") (Alito, J.) (emphasis in original) (cleaned up). "Although imminence is concededly a somewhat elastic concept, *it cannot be stretched beyond its purpose*, which is to ensure that the alleged injury is not too speculative for Article III purposes[.]" *Id.* (emphasis added). Further, standing requires more than a "speculative" fear of prosecution. *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (denying standing where plaintiffs claimed that they "feel inhibited" by the challenged law but as to whom no prosecution was

threatened). Rather, there must be "a credible threat of prosecution." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (citing *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973)). "When plaintiffs do not claim that they have ever been threatened with prosecution [or] that a prosecution is likely ... they do not allege a dispute susceptible to resolution by a federal court." *Id.* at 298–99, 99 S.Ct. 2301. Mere "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

[8]    [9]Simply put, "[t]o invoke a federal trial court's jurisdiction, a litigant 'must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.' " *KVUE, Inc. v. Moore*, 709 F.2d 922, 927 (5th Cir. 1983), *aff'd sub nom. Texas v. KVUE-TV, Inc.*, 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984) (quoting *Babbitt*, 442 U.S. at 298, 99 S.Ct. 2301). "The case or controversy requirement ... forecloses our consideration ... of abstract, hypothetical, and conjectural questions, and, indeed, of all matters save those involving parties who have a real dispute about a matter in which their interests are genuinely adverse." *Id.* at 927.

[10]Here, Judge Umphress's complaint mentions neither a currently nor imminently pending judicial disciplinary proceeding or investigation against him. Instead, his alleged injury is a "chilling effect" on his First Amendment rights stemming from the Commission's decision to issue a Public Warning to a different judge in a different county. FAC at ¶¶ 22–24, 31. Specifically, Judge Umphress fears that he will risk disciplinary action if he continues to refuse to officiate at same-sex marriage ceremonies or when he announces his opposition to same-sex marriage when he seeks reelection in 2022. *Id.* at ¶ 29.

However, the Commission asserts not only that there are no plans to investigate or discipline Judge Umphress but that they will neither investigate nor discipline him if he acts in the very way that he claims to be chilled against. Joint Report at 2–3; ECF No. 20; *see also* Habersham Declaration in Support of Defendants' Mt. to Dismiss or Transfer at ¶ 7, ECF No. 7-1. *See Christian Coal. of Alabama v. Cole*, 355 F.3d 1288, 1293 (11th Cir. 2004) (affirming district court's dismissal because "we would be overstepping our judicial authority if we were to rule on the constitutionality of the [Alabama Judicial Inquiry **\*560** Commission'] supposed 'enforcement policy' that is evidenced only by a withdrawn Advisory Opinion that was an interpretation of Canons that are currently being

reconsidered" and because there are "still unsettled questions of state law").

[11]    [12]Judge Umphress also does not appear to be chilled in his current actions. He continues to (1) attend the same church that he attended before he knew of the public warning to Judge Hensley and (2) engage in the same practice that he engaged in before concerning the performance of traditional wedding ceremonies but not same-sex ceremonies. FAC at ¶¶ 27, 28. Thus, a mere bare assertion of subjectively "chilled" activity to take place over a year and a half in the future falls outside the realm of "imminent" injury and remains well within that of the "speculative." *See Clapper*, 568 U.S. at 409, 133 S.Ct. 1138; *Laird*, 408 U.S. at 13–14, 92 S.Ct. 2318; *Younger*, 401 U.S. at 42, 91 S.Ct. 746. This applies especially in cases where, not only is there no "credible threat of prosecution," but the prosecuting entity expressly and exhaustively states that it has no plans to act against Judge Umphress for partaking in the allegedly chilled activity. *See Babbitt*, 442 U.S. at 298, 99 S.Ct. 2301; Joint Status Report at 2–3; ECF No. 20.[6]

**\*561** Thus, given that Judge Umphress's alleged injury is far from imminent and that the Commission has expressly disclaimed any intention of investigating or disciplining him for engaging in his desired activity, the Court finds that Judge Umphress's claims must be **DISMISSED** for lack of standing.

### B. Judge Umphress's claims are unripe for judicial consideration.

[13]    [14]"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements ... [until a] decision has been formalized and its effects felt in a concrete way by the challenging parties.' " *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). Determining whether an issue is ripe for judicial review requires considering "[t]he fitness of the issues for judicial decision and ... the hardship to the parties of withholding court consideration." *Id.* at 809, 123 S.Ct. 2026; *see Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' ") (quoting 13A C. WRIGHT, A. MILLER, & E. COOPER,

FEDERAL PRACTICE AND PROCEDURE § 3532 (1984)).

[15]As discussed above, Judge Umphress's alleged injury is speculative—he does not plan to run for reelection until 2022 and the Commission repeatedly disclaimed any plans to investigate or discipline him if he continues to act in the manner he deems chilled. *See* **\*562** *supra* at 558-60. On these facts, any adjudication of Judge Umphress's claims against the Commission is premature and as such unsuited for judicial decision. *Nat'l Park Hosp. Ass'n*, 538 U.S. at 811–12, 123 S.Ct. 2026 ("[W]e ... believe that further factual development would significantly advance our ability to deal with the legal issues presented.") (cleaned up).

Stated again, Judge Umphress does not appear to be chilled in his current actions and the Commission repeatedly disclaimed any plans to investigate or discipline him if he chose to act in the manner he deems chilled. *See supra* at 559-60. These facts strongly support that the parties will not undergo any meaningful hardship if the Court withholds consideration. *Nat'l Park Hosp. Ass'n*, 538 U.S. at 803, 123 S.Ct. 2026 (finding claims unripe where "[the law in question] d[id] not affect [the plaintiff's] primary conduct").

Finally, because the Commission repeatedly disclaimed any plans to investigate or discipline Judge Umphress, the future event that he fears (being subject to investigation or discipline) "may not occur as anticipated, or indeed may not occur at all." *Thomas*, 473 U.S. at 580–81, 105 S.Ct. 3325. Thus, because consideration of this matter is premature, because the parties will not undergo any meaningful hardship if the Court withholds consideration, and because the future events Judge Umphress fears may very well never occur, the Court finds that Judge Umphress's claims are unripe. *See Alaska Right to Life Political Action Committee v. Feldman*, 504 F.3d 840, 850 (9th Cir. 2007) (holding challenge to judicial canon was not fit for review under ripeness doctrine because "[t]he fact that Alaska's high court has not yet had an opportunity to construe the canons at issue here ... further militates in favor of declining jurisdiction" and explaining that "[d]eclining jurisdiction ... gives the Alaska Supreme Court the first opportunity to construe the canons in the context of judicial campaign speech"); *see also Poe v. Ullman*, 367 U.S. 497, 508–09, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (dispute was not ripe because there was no real threat of criminal prosecution of plaintiffs under a Connecticut statute regulating contraceptives); *Muskrat v. United States*, 219 U.S. 346, 362–63, 31 S.Ct. 250, 55 L.Ed. 246 (1911) (a lawsuit between Native Americans and the federal government was not justiciable merely because Congress had passed legislation authorizing suit

to resolve constitutional question when their interests were not adverse); *cf.* 3 CORRESPONDENCE AND PUBLIC PAPERS OF JOHN JAY 486-89 (H. Johnston ed., 1891) (the first justices of the Supreme Court refused to issue an opinion in response to President Washington's request for legal advice regarding a potential, future dispute).

Accordingly, Judge Umphress's claims must be **DISMISSED**.[7]

## **\*563 C. Even if Judge Umphress had standing and his claims were ripe, the Court would abstain under** *Pullman.*

[16] [17] [18]Alternatively, assuming *arguendo* that Judge Umphress had standing and that his claims were ripe, the Court would be compelled to abstain under *Pullman* doctrine and basic concepts of federalism. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In *Moore v. Hosemann*, the Fifth Circuit succinctly explained the dispute in *Pullman* as well as the Supreme Court's subsequent explication of the doctrine as follows:

> In *Pullman*, plaintiffs challenged, on both federal constitutional and state law grounds, the authority of the Texas Railroad Commission to issue a racially discriminatory order. The Supreme Court abstained from deciding the case, because it found that if Texas courts were to strike down the Commission's action on state law grounds, it would be unnecessary to decide the federal constitutional question.

> As the Court later explained, the moral of *Pullman* was that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided. By abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies.' " *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 104 S. Ct. 2321, 81 L.Ed.2d 186 (1984) (quoting *Pullman*, 312 U.S. at 500, 61 S. Ct. 643). "[F]or *Pullman* abstention to be appropriate ... it must involve (1) a federal constitutional challenge to state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal constitutional question." *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Committee*, 283 F.3d 650, 653 (5th Cir. 2002). In other words, "[g]enerally, *Pullman* abstention is appropriate only when there is an issue of uncertain state law that is fairly subject to an

interpretation [by a state court] which will render unnecessary or substantially modify the federal constitutional question." *Baran v. Port of Beaumont Nav. Dist.*, 57 F.3d 436, 442 (5th Cir. 1995).

591 F.3d 741, 745 (5th Cir. 2009).

In a recent decision from the Fifth Circuit that stayed a district court's preliminary injunction issued in regard to Texas state voting rules, Judge Costa concurred in judgment only because he believed it was a "textbook case" for *Pullman* abstention. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 417 (5th Cir. 2020) (Costa, J., concurring in judgment). In his view, the case warranted abstention because it involved: (1) an unsettled question of state law and the answer to the question from the state court could have obviated the need for a federal constitutional ruling; (2) an already pending state court proceeding that had reached the Texas Supreme Court; and (3) time for the federal court to **\*564** rule, if necessary, after the state court decision. *Id.* at 418.

Here, Judge Umphress makes federal constitutional challenges to state action. FAC at ¶¶ 37–54. Judge Hensley's currently pending state court suit addresses the state law grounds on which Judge Umphress's claims would be decided. *Hensley v. State Commission on Judicial Conduct et al.*, No. D-1-GN-20-003926 in the 459th District Court for Travis County, Texas, Petition ¶¶ 80–81. Should the Texas district court decide the issues in Judge Hensley's favor, it would render any federal constitutional decision by this Court unnecessary.

[19]While all hallmarks of *Pullman* abstention are undoubtedly present, the Court is mindful that the doctrine is not an "automatic rule to be applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt*, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). To that point, the Court believes that abstention in this case is not only available, it would be wholly appropriate. Indeed, a recent Supreme Court opinion affirmed that notion, albeit in a different context, when it stated that courts are "essentially passive instruments of government[,]" they "do not, or should not, sally forth each day looking for wrongs to right." *United States v. Sineneng-Smith*, ––– U.S. ––––, 140 S. Ct. 1575, 1579, 206 L.Ed.2d 866 (2020) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987)). In the context of *Pullman* abstention, federal courts do not sally forth each day hunting for theoretical constitutional issues to opine on when there is a real possibility that a pending state court proceeding will take the constitutionality of the state action off of the table. *Cf. Poe*, 367 U.S. at 526, 81 S.Ct. 1752 (Harlan, J.,

dissenting) ("[N]ormally this Court ought not to consider the Constitutionality of a state statute in the absence of a controlling interpretation of its meaning and effect by the state courts.").

[20] [21]The one aspect of this case that the Court believes at first blush does not favor abstention is that Judge Hensley's lawsuit is still at the trial-court level. Abstention is "more appropriate when there is a direct route to obtaining an answer from the state's highest court rather than having to 'litigate[ ] through the entire state hierarchy of courts.' " *Tex. Democratic Party*, 961 F.3d at 418 (quoting 17A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4242 (3d ed. 2020)). While this means that Judge Hensley's case may not reach the Texas Supreme Court in an expedient manner, the Court believes that it is still prudent to abstain given that Judge Umphress is seeking reelection in 2022, and he candidly states that he "intends to campaign for office as an opponent of same-sex marriage and the living constitution mindset that produced *Obergefell v. Hodges* [576 U.S. 644,] 135 S. Ct. 2584 [192 L.Ed.2d 609] (2015)." FAC at 3. In the Court's view, this reinforces that the focus of this lawsuit is an unsettled area of Texas law that may become a central issue in a Texas state election. Indeed, one of the important interests that *Pullman* abstention seeks to promote is "harmonious relation[s] between state and federal authority[.]" 312 U.S. at 501, 61 S.Ct. 643. Therefore, even this one aspect of the case that may not favor abstention does upon closer inspection.

Thus, the Court would invoke *Pullman* abstention and abate the case even if Judge Umphress had standing and ripe claims. *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented **\*565** by the record, if there is also present some other ground upon which the case may be disposed of."); *cf.* THE FEDERALIST No. 17 (Alexander Hamilton) (writing as "Publius") (explaining that under the Constitution, "the ordinary administration of criminal and civil justice" would be left to the states); Letter from Thomas Jefferson to James Madison (Mar. 15, 1789), in THE LIFE AND SELECTED WRITINGS OF THOMAS JEFFERSON 426 (Adrienne Koch & William Peden, eds., 2004 Modern Library Paperback ed.) (1944) (The federal "judiciary ... is a body, which, if rendered independent and kept strictly to their own department, merits great confidence for their learning and integrity.").

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commission's Motion to Dismiss (ECF No. 25), should be and is hereby **GRANTED**. Accordingly, Judge Umphress's claims against the Commission are **DISMISSED with prejudice**. Further, based on the Court's ruling on the Motion to Dismiss, the Commission's Motion to Abstain (ECF No. 23) is hereby

**DENIED as moot**.

**SO ORDERED** on this **12th day** of **November, 2020.**

**All Citations**

500 F.Supp.3d 553

---

**Footnotes**

[1]    This Amended Memorandum Opinion and Order supersedes the Memorandum Opinion and Order issued on November 10, 2020. ECF No. 38.

[2]    *Obergefell v. Hodges,* 576 U.S. 644, 711–12, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015) (Roberts, C.J., dissenting) ("Hard questions arise when people of faith exercise religion in ways that may be seen to conflict with the new right to same-sex marriage—when, for example, a religious college provides married student housing only to opposite-sex married couples, or a religious adoption agency declines to place children with same-sex married couples. Indeed, the Solicitor General candidly acknowledged that the tax exemptions of some religious institutions would be in question if they opposed same-sex marriage. There is little doubt that these and similar questions will soon be before this Court.").

[3]    *Id.* at 733–34, 135 S.Ct. 2584 (Thomas, J., dissenting) ("In our society, marriage is not simply a governmental institution; it is a religious institution as well. Today's decision might change the former, but it cannot change the latter. It appears all but inevitable that the two will come into conflict, particularly as individuals and churches are confronted with demands to participate in and endorse civil marriages between same-sex couples.").

[4]    It is worth noting that Judge Umphress's position is that of a constitutional county judge under the Texas Constitution. TEX. CONST. art. 5, § 15. The responsibilities of a constitutional county judge vary from those of a typical statutory judge. Their role is largely administrative and involves presiding over county affairs, but they also have limited jurisdiction over criminal misdemeanors punishable by fine, civil cases where the amount in controversy is $200 or less, and other small judicial matters as provided by Texas law. *Id.* at § 16, 18–19. In any event, even though their duties are largely executive, not judicial, Texas constitutional county judges fall under the Commission's jurisdiction. *Id.* at § 1-a.

[5]    This holding is in no way meant to disparage the weighty Constitutional issues presented by the parties. However, when federal judges take it upon themselves to actively make decisions in cases involving no real case or controversy and issue advisory opinions on far-reaching and important matters, they run the risk of disregarding the judiciary's role in our Republic as envisioned by the Founders. Indeed, they shake the foundations of our system of government.

In 1821, 45 years after he wrote the Declaration of Independence, Thomas Jefferson predicted:

It has long however been my opinion, and I have never shrunk from its expression, ... that the germ of dissolution

of our federal government is in the constitution of the federal judiciary; ... working like gravity by night and by day, gaining a little to-day and a little tomorrow, and advancing it's noiseless step like a thief, over the field of jurisdiction, until all shall be usurped from the states, and the government of all be consolidated into one. To this I am opposed; because whenever all government, domestic and foreign, in little as in great things, shall be drawn to Washington as the center of all power, it will render powerless the checks provided of one government on another, and will become as venal and oppressive as the government from which we separated.

Letter from Thomas Jefferson to Charles Hammond (August 18, 1821), *in* 15 THE WRITINGS OF THOMAS JEFFERSON 330–33 (Albert Ellery Bergh Ed.) (1905); *Cf.* GEN. DOUGLAS MACARTHUR, A SOLDIER SPEAKS: PUBLIC PAPERS AND SPEECHES OF GENERAL OF THE ARMY DOUGLAS MACARTHUR 38 (Maj. Vorin E. Whan, Jr., ed., 1st ed. 1965) ("Perhaps the greatest privilege of our country, which is indeed the genius of its foundation, is religious freedom. Religious freedom, however, can exist only so long as government survives.").

6    This case, involving a state judge's speech regulated by a state judicial commission, differs greatly from that in cases like *Speech First Inc. v. Fenves*, involving speech by students on a public university's campus. 979 F.3d 319 (5th Cir. 2020), as revised (Nov. 9, 2020). *First*, *Speech First* involved the University of Texas's tepid assertion that it would not enforce its rules against the students, and the students, in a facial challenge to the University's "Hate and Bias Incidents Policy" ("Policy") pointed to hundreds of incidents where the University previously enforced its Policy. *See Speech First*, 979 F.3d at 331-32; *cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (requiring that the future threat of enforcement of the challenged policy be substantial in as applied challenges). In contrast, Judge Umphress, in an as applied challenge to Canon 4(A)(1), only points to a singular incident involving the Commission issuing a warning to a different judge in a different county after the Commission repeatedly and exhaustively asserted that it would not discipline him if he acts in precisely the manner he desires. *See supra*; *compare Susan B. Anthony List*, 573 U.S. at 164–65, 134 S.Ct. 2334 (where plaintiffs had prior proceedings against them and were explicitly threatened with future prosecution) *with Speech First*, 979 F.3d at 331-32 (noting that there must be some evidence that a rule would be applied to the plaintiff in order for that plaintiff to bring an as-applied challenge). Thus, there is not only no "substantial" evidence (or any evidence) that Judge Umphress will be disciplined, but in fact there is *evidence directly to the contrary* in the Commission's multitude of assertions that it will not discipline him. *Accord Susan B. Anthony List*, 573 U.S. at 164, 134 S.Ct. 2334.

    *Second*, the Texas Constitution expressly affords the Commission oversight over a judicial candidate's conduct, and Texas is very far from being the only state that permits such regulation. *See, e.g., Republican Party of Minnesota v. White*, 536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (evaluating the application of Minnesota's Canons of Judicial Conduct to a Minnesota judicial candidate's First Amendment claims); *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010) (evaluating the application of Arizona's Canons of Judicial Conduct to an Arizona judicial candidate's First Amendment claims); *Christian Coal. of Alabama*, 355 F.3d 1288 (evaluating the application of Alabama's Canons of Judicial Conduct to an Alabama judicial candidate's First Amendment claims). It has long been recognized that states have an interest in promoting and protecting the impartiality (as well as the appearance of impartiality) of members of their judiciary. *See generally Republican Party of Minnesota*, 536 U.S. 765, 122 S.Ct. 2528 (discussing judicial impartiality); *see also Bracy v. Gramley*, 520 U.S. 899, 905, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (would violate due process if a judge was disposed to rule against defendants who did not bribe him in order to cover up the fact that he regularly ruled in favor of defendants who did bribe him); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822–25, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (judge violated due process by sitting in a case in which it would be in his financial interest to find against one of the parties); *Ward v. Monroeville*, 409 U.S. 57, 58–62, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) (judge violated due process by sitting in a case in which it would be in his financial interest to find against one of the parties); *Johnson v. Mississippi*, 403 U.S. 212, 215–16, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971) (per curiam) (judge violated due process by sitting in a case in which one of the parties was a previously successful litigant against him); *In re Murchison*, 349 U.S. 133, 137–39, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (judge violated due process by sitting in the criminal trial of defendant whom he had indicted); *Tumey v. Ohio*, 273 U.S. 510, 523, 531–34, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (judge violated due process by sitting in a case in which it would

be in his financial interest to find against one of the parties).

In contrast to state courts, universities are important forums where free speech and debate takes place. *See e.g.,* *Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*, 529 U.S. 217, 267–70, 120 S.Ct. 1346, 146 L.Ed.2d 193 (2000) (discussing the important role universities play as forums); *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829–832, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) (same). As the Fifth Circuit notes,

> [i]n our current national condition, however, in which institutional leaders [like this University President in this case], in a spirit of panicked damage control, are delivering hasty and disproportionate punishment instead of considered reforms, courts must be especially vigilant against assaults on speech in the Constitution's care. Otherwise, the people may not be free to generate, debate, and discuss both general and specific ideas, hopes, and experiences, to transmit their resulting views and conclusions to their elected representatives, to influence the public policy enacted by elected representatives, and thereby to realize the political and human common good.

*Speech First*, 979 F.3d at 339 (cleaned up). It seems apparent that some distinction must be made between the standard applied to a judicial candidate's electoral speech as legitimately regulated by a state's Judicial Canons of Conduct and that which is applied to speech taking place in the heart of modern American intellectual and political debate—university campuses.

[7]    Were the Court to assume jurisdiction and relax the standing and ripeness requirements, it fears that it would over-step the boundaries and limitations placed upon it by both the Constitution and long-standing precedent. *See United States v. Richardson*, 418 U.S. 166, 188, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (Powell, J., concurring); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (person injured by police "chokehold" could seek damages but had no standing to seek injunctive relief against future use of "chokehold" because he could not show sufficient likelihood of imminent personal harm and irreparable injury).

In *United States v. Richardson*, Justice Powell warned of the dangers to the Republic's structures when federal courts relaxed standing requirements:

> Relaxation of standing requirements is directly related to the expansion of judicial power. It seems to me inescapable that allowing unrestricted ... standing would significantly alter the allocation of power at the national level, with a shift away from a democratic form of government. I also believe that repeated and essentially head-on confrontations between the life tenured branch and the representative branches of government will not, in the long run, be beneficial to either. The public confidence essential to the former and the vitality critical to the latter may well erode if we do not exercise self-restraint in the utilization of our power to negative the actions of the other branches.

418 U.S. at 188, 94 S.Ct. 2940; *see also Hayburn's Case*, 2 U.S. (Dall.) 409, 1 L.Ed. 436 (1792) (declaring that it would be a violation of separation of powers principle for Supreme Court justices to *recommend* to the Secretary of War what amount of benefits should be paid to a veteran if the Secretary could refuse to follow Court's recommendation).

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Umphress v. Hall, 500 F.Supp.3d 553 (2020)**